# EXHIBIT A

06/17/2004 17:51    12127321199    WHITE ACRE                                    PAGE 02/03
GENERAL CAPITAL

General
Capital
Partners,
LLC

June 17, 2004

Jacob A. Frydman
President
White Acres Equities, LLC
111 Fulton Street, 4th Floor
New York, NY 10038

Dear Jacob,

On April 19, 2004, Liberty Village Associates, LP ("LVA"), an entity in which you have an interest and that is currently in Chapter 11 in the U.S. Bankruptcy Court for the Southern District of New York (Case # 04-11627), and General Capital Partners, LLC ("GCP") came to an agreement whereby GCP would sell the assets of LVA through the process of the United States Bankruptcy Court. As part of the Chapter 11 process, LVA filed a motion with the Court to retain GCP as LVA's exclusive agent in selling LVA's property located in Lynchburg, Virginia. Community National Bank ("CNB"), located in Martinsville, Virginia, is the largest creditor in LVA's Chapter 11 proceedings. CNB filed an objection to GCP's retention, and the Court has not yet ruled on whether LVA may retain GCP.

GCP has done a considerable amount of work in marketing LVA's assets for sale in anticipation of being retained and approved by the Court, including but not limited to making contact with the nation's largest senior community developers and builders, obtaining ten (10) executed confidentiality agreements, and conducting four (4) site visits. This work is anticipated to result in the creation of value to LVA and LVA's creditors.

In order to maximize LVA's asset value, GCP must continue its current pursuit of willing and eligible buyers. However, the uncertainty of GCP's retention in LVA's bankruptcy proceeding will make it difficult for GCP to continue its efforts until the Court enters an Order Approving the Retention of GCP.

In order to continue GCP's current efforts in selling the assets of LVA, the parties hereto agree as follows:

- In the event that GCP produces an offer to purchase the assets of LVA, during the exclusive period of this agreement, on terms and conditions which are acceptable to Jacob Frydman ("JF"), and approved in writing by JF, for a price of $14,999,999.99 or less, and the "GCP Fee" (as hereinafter defined) is not otherwise paid by LVA, CNB, the Purchaser, or any other person, then JF shall pay to GCP, at the Closing and funding of said transaction, a fee equal to $200,000 (the "GCP Fee")

- In the event that GCP produces an offer to purchase the assets of LVA, during the exclusive period of this agreement, on terms and conditions which are acceptable to JF, and approved in writing by JF, for a price of between $15,000,000.00 and $19,999,999.99 and the "GCP Fee" (as hereinafter defined) is not otherwise paid by LVA, CNB, the Purchaser, or any other person, then JF shall pay to GCP, at the Closing and funding of said transaction, a fee equal to $350,000 (the "GCP Fee").

06/17/2004  17:51    12127321199                    WHITE ACRE
06/16/2004  21:59    7202004501                      GENERAL CAPITAL                        PAGE  03/03

- In the event that GCP produces an offer to purchase the assets of LVA, during the exclusive period of this agreement, on terms and conditions which are acceptable to JF, and approved in writing by JF, for a price equal to or greater than $20,000,000.00, and the "GCP Fee" (as hereinafter defined) is not otherwise paid by LVA, CNB, the Purchaser, or any other person, then JF shall pay to GCP, at the Closing and funding of said transaction, a fee equal to $450,000 (the "GCP Fee").

- The GCP Fee shall only be due and earned upon a Closing and funding of a sale of the assets of LVA to a purchaser who had made an offer to purchase the LVA assets during the exclusive term of this agreement, the terms of which have been approved in writing by JF and which has obtained Court approval.

- In the event that JF is required to pay the GCP Fee, he shall pay GCP at such time that, and simultaneous with, a Closing and funding of the sale of LVA's assets.

- GCP shall use its best efforts to attempt to find the highest and best purchase price for LVA's assets. In addition, GCP, as a material inducement to JF, agrees to broadly market the assets of LVA, and to expend not less than $15,000.00 in marketing costs and expenses; for advertising, marketing, travel, and other expenses associated with the sale of LVA's assets. This amount shall be reimbursed to GCP by JF if not otherwise paid by LVA, CNB, the Purchaser, or any other person, upon Closing and funding of the sale of LVA's assets. The expenses of GCP are separate and in addition to GCP's Fee, as set forth herein. Such costs, up to $15,000, are to be reimbursed at the Closing with the payment of the GCP Fee.

- GCP also agrees to provide a weekly report to JF, on Friday of each week during the exclusive term hereof, in form substantially similar to the weekly report being provided by GCP to Lake Diamond Associates.

This agreement shall be superceded at any time that the Court approves the Agreement between GCP and LVA ("Agreement Between Debtor and General Capital Partners, LLC"). If the Court approves GCP's retention as LVA's exclusive agent to sell LVA's assets, this agreement shall be null and void, and neither party shall be liable to the other. In the interim, GCP shall act as Jacob Frydman's exclusive agent for a period of sixty (60) days from the time of execution of this agreement, or until the Court approves GCP's retention to sell LVA's assets. This agreement shall terminate at the end of sixty (60) days or at the time the Court approves GCP's retention to sell LVA's assets, which ever occurs first. Upon mutual written agreement of both parties the 60-day period may be extended.

If you agree to the terms of this letter agreement, please execute in the space provided and return a duplicate original of this letter to me.

Agreed to by Jacob Frydman:                          Agreed to by General Capital Partners, LLC

Jacob Frydman,                                       J. Gregory Barrow, for the Firm
President                                            Managing Director
111 Fulton St., 4th Floor                            5650 Greenwood Plaza Blvd. #135
New York, NY  10038                                  Greenwood Village, CO 80111

# EXHIBIT B

# FAX MEMORANDUM
## from: UniPart Capital, Ltd.

This facsimile is intended only for the use of the individual or entity to which it is addressed, and may contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering this facsimile to the intended recipient, any dissemination, distribution, or copying of this facsimile is strictly prohibited. If you have received this facsimile in error, please notify us immediately by telephone and return the original facsimile to us by mail.

| | | | |
|---|---|---|---|
| TO: | Greg Barrow | FROM: | Robert Gibbs  TO: HERB KAISER |
| # OF PAGES: (including cover) | 3 | CC: | |
| TEL: | | FAX: | 720-200-4501  732-758-1169 |
| DATE: | August 16, 2004 | RE: | Your Confidentiality Agreement |

Greg...

Please find attached the signed CA.

Regards,

Bob Gibbs

17 Park Way  Highlands , NJ  07732
Telephone: (732) 708 1946  Fax: (732) 708 1948
Mobile: (732) 768 0317  Email: rvgibbs@unipartcapital.com

1

General
Capital
Partners,
LLC

## NonCircumvention & Confidentiality Agreement

This Agreement, made and entered into August 16, 2004, between American Heritage Communities, Inc. (the "UNDERSIGNED") and General Capital Partners, LLC ("GCP"), shall obligate the parties to this Agreement, their partners, associates, employers, employees, affiliates, subsidiaries, representatives, successors, clients, and families jointly, severally, mutually and reciprocally to the terms and conditions expressly stated herein. The terms and conditions of this agreement apply to any exchange of information, written or oral, involving financial information, personal or corporate names, contracts initiated by or involving the parties, and any additional, renewal, extension, roll-over, amendment, renegotiation, or new agreement.

GCP is currently representing a **Senior Retirement Community Development** (the "COMPANY"). GCP is prepared to make certain information available to the Undersigned about the Company in connection with the Undersigned's consideration of a possible transaction (the "Transaction") involving an equity investment, loan, or financing to the Company, or asset acquisition from the Company. This information is considered to be of confidential or proprietary nature (the "Confidential Information"). The Confidential Information shall include the name and location of the Company, and highly confidential financial and corporate historical details.

The Undersigned agrees that it/he/she shall use the Confidential Information solely for evaluating the Transaction, and that the Undersigned shall not distribute, copy, or otherwise communicate any of the Confidential Information to any other person or entity except as permitted under this Agreement. The Undersigned may disclose Confidential Information to the Undersigned's directors, officers, employees, agents, or advisors (collectively, "Representatives") who in the Undersigned's reasonable judgment have the need to know such information in connection with the Transaction. The Undersigned will maintain records of the person to whom Confidential Information is distributed, will inform all such persons of the confidential nature of the Confidential Information, will direct them to treat such information in accordance with this Agreement, will exercise such precautions or measures as may be reasonable in the circumstances to prevent improper use of Confidential Information by them, and will be responsible for any breaches by them of the provisions of this Agreement. Neither GCP nor the Undersigned shall be held liable if, through no action or fault of GCP or the Undersigned the Confidential Information is released by the Company or third party.

The term "Confidential Information" does not include information that is or becomes publicly available (other than through a breach of this Agreement) or information that is or becomes available to the Undersigned on a nonconfidential basis, provided that the source of such information was not known by the Undersigned (after such inquiry as would be reasonable in the circumstances) to be bound by a confidentiality agreement or other legal or contractual obligation of confidentiality with respect to such information.

In the event that the Undersigned (or any of the Undersigned's Representatives) are requested or required by law or legal process to disclose any of the Confidential Information, the party required to disclose such information shall provide GCP with prompt oral and written notice before making any disclosure. In addition, Confidential Information may be disclosed to the extent required in the course of inspections or inquiries by federal or state regulatory agencies to whose jurisdiction the Undersigned are subject and that have the legal right to inspect the files that contain the Confidential Information, and the Undersigned will advise the Company promptly upon such disclosure.

No express or implied representation or warranty is made as to the accuracy or completeness of the Confidential Information.

Without the written consent of GCP, the Undersigned will have no discussions, correspondence, or other contact with any employee, representative or agent of the other persons or companies involved in the Transaction, and will direct all inquiries related to the Transaction to GCP. The Undersigned agrees that it shall not in any way participate in the Transaction in a manner whereby GCP shall not receive an amount equal to the compensation which it should receive under its agreements with the other parties involved in the Transaction. Similarly, the Undersigned shall not allow any Representative, affiliates, related parties or clients to not comply with this provision. The term

2

08/16/2004  17:42    16899242807    XPRESSRETURNS    PAGE  03

Transaction for purposes of this provision shall be broadly construed to avoid any circumvention of the provisions of this Agreement.

The Undersigned acknowledges that the restrictions contained in this Agreement are necessary for the protection of the business and goodwill of GCP and are considered by the Undersigned to be reasonable for such purpose. The Undersigned acknowledges that any breach of this Agreement or threatened breach will result in irreparable injury to GCP and that GCP will be entitled to all remedies available in law and equity.

This Agreement shall be valid for a minimum period of two (2) years from the date of the Agreement, and for two (2) years after completion of each transaction or exchange of information, whichever occurs later.

This is the entire Agreement between the parties with respect to the subject matters described herein and this Agreement may be signed in counterparts each of which will be deemed an original. This Agreement shall be construed and governed under the laws of Colorado. In the event of a breach of this Agreement and an amicable settlement cannot be agreed to by mutual discussion and/or mediation by a third party, each of the parties subject to the declared breach shall be responsible for their own legal expenses until a settlement is reached, provided, however, that the party found in default by a judgment shall compensate in full the aggrieved party for all of its legal expenses, not withstanding any other provisions of the judgment. If any provision of this Agreement is prohibited or unenforceable the remaining provisions hereof shall be enforceable to the maximum extent permitted at law.

Each representative signing this Agreement represents and warrants that the entity for which he/she is signing has duly authorized this Agreement and that he/she has the authority to sign on behalf of such entity.

On behalf of:                                             On behalf of:

Company:      American Heritage Communities, Inc.        **General Capital Partners, LLC**

Address:      3 College Avenue, Suite 3                   5650 Greenwood Plaza Blvd. #135

              Frederick, MD 21701                          Greenwood Village, CO 80111

Telephone:    732 708 1946                                720-200-4500

Facsimile:    732 708 1948                                720-200-4501

Name:         Robert V. Gibbs                             J. Gregory Barrow

Title:        Vice Chairman                               Managing Director

Signed:

Date:         August 16, 2004                             10-06-04

3

# EXHIBIT C

# American Heritage Communities, Inc.

*Adding life to years... and years to life*SM

October 14, 2004

Via Fax:

Liberty Village Associates, LP
C/o Mr. Greg Barrow
General Capital Partners, LLC
5650 Greenwood Plaza Boulevard
Suite 135
Greenwood Village, CO 80111

**RE: Liberty Village, Lynchburg, Virginia**

Dear Mr. Barrow:

The purpose of this Letter of Intent is to set forth certain of the basic business terms which we have discussed relating to a possible purchase by American Heritage Communities, Inc. of all of the assets of Liberty Village Associates, LP.

1. Purchaser: American Heritage Communities, Inc.

2. Seller: Liberty Village Associates, LP, except as to certain rights owned by others as set forth herein.

3. Property: Approximately 140 acres of land and all improvements thereon located in Campbell County, Virginia, and known as "Liberty Village," and all development rights, approvals, plans, personal property owned by Seller and used in connection with Liberty Village.

4. Purchase Price: Cash and other consideration as set forth herein:

   (a) A novation from Bank Services of Virginia, Martinsville, VA (Community National Bank, a subsidiary of Bank Services of Virginia) releasing Seller, as Borrower, and all guarantors in connection with that certain mortgage loan in the amount of $20,000,000 currently encumbering the property.

   (b) A payment of $1,000,000 to Savoy Senior Housing Corp., payable in cash at closing and a balance of $3,000,000 as set forth below in subparagraph (e), as consideration for the assignment of Savoy Senior Housing Corp.'s exclusivity agreement with the TRBC Ministries, LLC to the Purchaser or its nominee;

   (c) A payment of $2,600,000 to Liberty Village Associates, LP for distribution as follows: $2,000,000 to Community National Bank and $600,000 to unsecured creditors and administrative claims as set forth in the Bankruptcy filing;

   (d) Payment of the sales commission due to General Capital Partners, LLC, as their fees in connection with this sale in the amount of $400,000 in cash at closing;

   (e) The residual payment, totaling $3,000,000 in the form of unsecured promissory notes, will be payable in $3,000 increments per unit based on the sale or long-term lease of the first 1,000 units sold at Liberty Village by the Purchaser or any related party(ies).

3 College Avenue, Suite 3   Frederick, MD 21701
Tel: 301 668 5665   Fax: 301 668 5666
Email: info@americanheritagecommunities.net

5. Good Faith Deposit: $1,000,000 to be held in escrow by McElroy Deutsch Mulvaney & Carpenter, counsel for Purchaser, upon contract execution. Said deposit shall be fully refundable at the sole discretion of the Purchaser at any time during the Due Diligence Periods as set forth below, and will only become nonrefundable upon notification in writing by the Purchaser that it wishes to continue to pursue the transaction. In the event that the Purchaser does not notify the escrow agent in writing of its intent to continue to pursue the transaction, the escrow agent will automatically return the Good Faith Deposit in full to the Purchaser or its agent at the end of the Secondary Due Diligence Period and the transaction will become null and void between all parties.

6. Due Diligence:

    (a) Initial Due Diligence Period: Thirty (30) days from the signing of this Letter of Intent to the signing of the Purchase Contract.

    (b) Secondary Due Diligence Period: Sixty (60) days from the date of the fully executed Purchase Contract;

    (c) Materials and Documentation: Upon execution of this Letter of Intent, (i) the Seller will furnish Purchaser with all plans, surveys, reports, studies, leases, and other materials and documentation relating to the property that has been furnished to or prepared for the Seller, at no cost to the Purchaser; (ii) the Seller will authorize any and all professionals who have prepared such materials and documentation to furnish the same to Purchaser and to meet with Purchaser and its representatives, agents and consultants.

7. Subject To:

    (A) Seller's obligation to sell is subject to approval of the Bankruptcy Court to an executed contract evidencing the proposed transaction;

    (b) Seller will make no representations or warranties.

8. Closing: The closing shall occur sixty (60) days after the Purchase Contract execution, time being of the essence, provided that the Purchaser has given written notice of its intent to purchase and Bankruptcy Court approval has been obtained to the satisfaction of the Purchaser by said date.

9. Lawsuits: At the closing, Seller shall dismiss and release all claims and suits against Community National Bank and TRBC Ministries, LLC, provided that reciprocal releases are executed.

10. Noncircumvention: Purchaser hereby agrees that it shall not enter into any agreement whatsoever with Community National Bank, its affiliates, successors, and assigns, nor TRBC Ministries, LLC, its affiliates, successors, and assigns, in any way relating to Liberty Village, the exclusivity rights or the mortgage loan, without the express prior written consent of Seller. Notwithstanding the foregoing, Purchaser may communicate with Community National Bank and/or TRBC Ministries, LLC, commencing on the date of execution of this Letter of Intent, and terminating upon termination of the contract, and during no other time whatsoever, to seek to enter into transactions which would conform to the terms of the transactions contemplated herein. Any such agreements must be subject to a closing hereunder. If this Letter of Intent or successor Purchase Contract is terminated for any reason, Purchaser, its officers, directors, affiliates, agents, employees, and lawyers shall not engage in any discussions with, nor enter into any agreements with, Community National Bank, its affiliates, successors, and assigns, nor TRBC Ministries, LLC, its affiliates, successors, and assigns, relating to Liberty Village. This noncircumvention clause shall remain in effect for a period of two (2) years from the date of the signing of this Letter of Intent.

11. Purchase Contract: Upon execution of this Letter of Intent, Seller will authorize its counsel to prepare the Purchase Contract. This contract shall contain such additional terms and conditions as deemed appropriate by Seller's and Purchaser's counsel and shall be finalized by the end of the 30-day Initial

Due Diligence Period. Should the Purchaser decide not to pursue the transaction prior to the end of the Initial Due Diligence period, the Purchaser will notify the Seller of its decision in writing. Once such notification is given, the terms and conditions of this Letter of Intent shall be null and void except as to Paragraph 10 above.

12. Legal Effect: This Letter of Intent is intended to set forth the basis of negotiations and is not intended to and does not constitute a legally binding agreement, except for Section 10 entitled Noncircumvention. No contract between the parties shall be effective unless or until the parties have signed and delivered a final Purchase Contract containing all essential terms of the proposed transaction. No party or signatory shall be under any liability or have any obligation to consummate the transaction contemplated herein until that time. The parties acknowledge that they have not set forth herein or agreed upon all essential terms of the proposed Purchase Contract.

If this Letter of Intent sets forth the terms and conditions pursuant to which you are willing to negotiate sale of the subject property, please (i) indicate the same by signing a copy of this letter below in the space provided for your signature and (ii) have your attorney prepare a Purchase Contract . A copy of this letter containing facsimile signatures shall be as binding as an original.

Very truly yours,

American Heritage Communities, Inc.

By: _Herbert E. Kaiser_
Title: _Secretary / Treasurer_
_Herbert E. Kaiser_

Seller: _____

By: _____
Name: _____
Title: _____

3 College Avenue, Suite 3    Frederick, MD 21701
Tel: 301 668 5665    Fax: 301 668 5666
Email: info@americanheritagecommunities.net

# EXHIBIT D

10/28/2004 TUE 12:18 FAX 002/003

Case 1:07-cv-00897-RBC Document 1-2    Filed 05/25/2007    Page 13 of 14

GENERAL CAPITAL
WHITE ACRE

10/26/2004 11:52    12127321199    PAGE 03/04

PAGE 02

October 22, 2004

Mr. Herbert Kaiser
American Heritage Communities, Inc.
3 College Avenue
Suite 3
Frederick, MD 21701

RE: Liberty Village, Campbell County, Virginia

Gentlemen:

As you know, we are exploring your involvement with us or our affiliates in the reorganization of Liberty Village, a 1,135-unit active adult community in Campbell County, Virginia, (the "Transaction"). In order to allow you to evaluate the Transaction, you have requested that we permit you an opportunity to discuss the Transaction with Community National Bank of Virginia (the "Bank") and TRBC Ministries, LLC, an affiliate of the Rev. Jerry Falwell ("Falwell"). You have advised that it is your intention to discuss a transaction with the Bank and Falwell substantially on the terms set forth in your letter to Mr. J. Gregory Barrow of October 14, 2004, and that if you were able to negotiate such a transaction, would proffer to us an offer/contract based thereon.

In order to allow you to undertake due diligence and communicate with the Bank and Falwell, you hereby agree that neither you nor any of your officers, partners, managers, and/or affiliates shall enter into any agreement whatsoever with the Bank, its affiliates, successors, and assigns, nor TRBC Ministries, LLC, its affiliates, successors, and assigns, in any way relating to Liberty Village, the exclusivity rights owned by Savoy Senior Housing Corporation ("Savoy"), or the mortgage loan secured by Liberty Village, without our express prior written consent. Notwithstanding the foregoing, you may communicate with the Bank and/or Falwell), commencing on the date hereof and ending on November 30, 2004, and during no other time whatsoever, to discuss the Transaction and conduct due diligence. If we have not extended, in writing, the November 30, 2004 date, neither you, your officers, directors, affiliates, agents, employees, and lawyers shall engage in any further discussions with, nor enter into any agreements with, the Bank, its affiliates, successors, and assigns, nor TRBC Ministries, LLC, its affiliates, successors, and assigns, relating to Liberty Village.

Moreover, all information furnished (irrespective of the forms of communication) to you, your employees, agents, or representatives, including but without limitation, attorneys, accountants, consultants, and financial advisors (collectively, "representatives"), by the Bank, Falwell, or by us or any of our representatives, and all analyses, compilations, data studies or other documents prepared by you or your representatives containing, or based in whole or in part on any such furnished information, are hereinafter collectively referred to as the "Information." In consideration of your being furnished with the Information, you also agree that:

1.    The Information will be kept confidential and will not, without the prior written consent of Savoy, be disclosed by you or your representatives, in any manner whatsoever, in whole or in part, and will not be used by you or your representatives directly for any purpose other than evaluating a Transaction or the

10/26/2004 TUE 12:19 FAX @003/003

Case 1:2004-cv-0897-RJS-GWG Document 1-2 GENERAL CASTRO/2007 Page 14 of 14 /04/04
10/26/2004 11:52 12127321199 WHITE ACRE PAGE 03

financing thereof. Moreover, you agree to transmit the Information only to those representatives or institutions who need to know the Information for the purpose of evaluating or financing the Transaction, who are informed by you of the confidential nature of the Information. You will be responsible for any breach of this Agreement by your firm's employees or representatives.

2.      You will not at any time, directly or indirectly, seek to acquire any interest in Liberty Village or any debt secured by the property owned by Liberty Village Associates, L.P. which is the subject matter of the Transaction. You agree that any interest in the Property or any debt secured by the Property acquired by you or your affiliates will only be pursuant to a written agreement with Liberty Village Associates and with all requisite approvals, and this provision may be enforced by Savoy on its own behalf or on behalf of Liberty Village Associates at any time.

3.      You understand that we have endeavored to include in the Information those materials which are believed to be reliable and relevant for the purpose of your evaluation, but you acknowledge that Savoy and its representatives make no representation or warranty as to the accuracy or completeness of the Information

4.      In the event of your breach of any term of this agreement, you hereby consent to the issuance of injunctive action against you, including, without limitation, a temporary and permanent restraining order without the requirement of the posting of bond, and shall be liable for actual damages as determined by a court of competent jurisdiction.

5.      This Agreement shall be binding for a period of three (3) years and shall be governed by and construed in accordance with the laws of the State of New York applicable to agreements to be performed within such State.

Please confirm your agreement with the foregoing by signing and returning to the undersigned.

Very truly yours,
SAVOY SENIOR HOUSING CORP.

By: _____, President

Date: October 22, 2004

Confirmed and agreed to:

By: Herbert E. Kaiser, Secretary/Treasurer
For American Heritage Communities, Inc.
and all of its affiliates