**EXHIBIT E**

## TRANSFER AGREEMENT

THIS TRANSFER AGREEMENT (the "**Agreement**") is made effective as of March 16, 2005, by and between Liberty Village Associates Limited Partnership, a Delaware limited partnership ("**Transferor**"), and American Heritage Communities/Liberty Village, LLC, a Delaware limited liability company ("**Transferee**").

### RECITALS:

A.      Transferor is the owner of (i) a parcel of land at Liberty Village, 5700 Candlers Mountain Road, Lynchburg, Virginia and comprised of approximately 140 acres, as more particularly described in **Exhibit A** attached hereto and made a part hereof (the land together with any improvements thereon are referred to herein collectively as the "**Parcel 1**"), (ii) an undeveloped parcel of land located adjacent to Parcel 1 and comprised of approximately 12 acres, as more particularly described in **Exhibit A-1** attached hereto and made a part hereof ("**Parcel 2**"; Parcel 1 and Parcel 2 being collectively referred to herein as the "**Real Property**"), (iii) all furniture, fixtures, and equipment, located if any, owned by Transferor and located at Parcel 1 (hereinafter, collectively, the "**FF&E**"), (iv) copies of architectural and civil drawings, plans and specifications, surveys and environmental reports in Transferor's possession, related to the Real Property or the improvements thereon along with professional service contracts that relate thereto, if any and to the extent assignable (the "**Property Documents**"), and (v) licenses, authorizations, permits and approvals issued by any governmental authority and relating to Transferor's ownership and operation of the Real Property, if any (to the extent assignable, the "**Licenses**") (the Real Property, the FF&E, the Property Documents and the Licenses and are referred to herein collectively as the "**Property**").

B.      On December 2, 2004, Transferor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York (the "**Bankruptcy Court**") that is pending as Case Number 04-11627-AGL (the "**Bankruptcy Case**"; Transferor continues to conduct its business and affairs as a debtor-in-possession. Copies of the Plan of Reorganization filed on December 2, 2004 and the Disclosure Statement filed on January 21, 2005 in connection with the Bankruptcy Case are attached hereto as **Exhibit B** and made a part hereof and are sometimes referred to herein collectively as the "**Plan**." Defined terms used herein not otherwise defined herein shall have the meanings ascribed to them in the Plan.

C.      Transferor will amend the Plan (the "**Amended Plan**") to reflect the pertinent provisions of the Agreement, including but not limited to, the transfer of substantially all of the Debtor's assets to Transferee and any agreements entered into between the principals of the Debtor and the Transferee. The Amended Plan will also reflect the substitution of Transferee for NuCo. The Amended Plan together with the Agreement will be filed with the Bankruptcy Court for the Court's approval and Confirmation.[1]

D.      Transferee desires to hereby assume the obligations of NuCo as contemplated under the Plan and, upon Confirmation of the Amended Plan, to satisfy those obligations as modified by the Amended Plan, provided however, that such obligations shall in no event exceed

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to such terms in the Amended Plan.

NYC/169068.7

the assumption of the Loan (as defined below) and payment of the full amount of the Approved Claims Amount (as defined below).

    E.    Subject to approval of the Bankruptcy Court in the manner contemplated herein, Transferor desires to reserve the right to convert the obligation to satisfy the aforesaid obligations to a straight purchase of the real estate, in which event Transferor would sell, and Transferee would purchase, the Property upon and subject to the terms and conditions hereinafter set forth.

## AGREEMENTS

    NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Transferor and Transferee agree as follows:

### ARTICLE I
### TRANSFER AND ASSUMPTION OF NUCO'S OBLIGATIONS; PURCHASE AND SALE

    1.01    Transferee hereby unconditionally assumes, and agrees to satisfy, all of the obligations of NuCo, provided however, that such obligations shall in no event exceed the assumption of the Loan (as defined below) and payment of the full amount of all of the Approved Claims Amount (as defined below).    Transferor hereby unconditionally agrees to amend the Plan to, among other things, reflect: (i) the replacement of NuCo with Transferee, (ii) the pertinent provisions of this Agreement; and (iii) any agreements entered into between the Debtor's principals and the Transferee.

    1.02    Notwithstanding Section 1.01, if Transferee timely sends Transferor a Conversion Notice (as defined in Section 11.01) (i.e., written notice sent prior to the expiration of the Conversion Election Period (as hereinafter defined) of Transferee's election to close on the acquisition of the Property as otherwise contemplated by this Agreement), Transferee shall have the right to purchase the Property in lieu of satisfying NuCo's obligations under the Amended Plan, in which event, Transferee agrees to purchase and acquire from Transferor, and Transferor agrees to sell and transfer to Transferee, the Property subject to the terms and conditions contained in this Agreement. Promptly following Transferor's receipt of the Conversion Notice, Transferor will modify the Amended Plan to reflect the conversion. Transferor agrees that it will not amend the Amended Plan to expand the obligations of NuCo (or Transferee as NuCo's replacement, if applicable) to exceed the amount necessary to satisfy or assume the Loan (as defined below) and payment of the full amount of the Approved Claims Amount (as defined below).

### ARTICLE II
### DEPOSIT AND PAYMENT OF PURCHASE PRICE

    2.01    DEPOSIT; PAYMENT OF PURCHASE PRICE.    The purchase price (the "Purchase Price") shall be as follows:  (i) if Section 1.01 applies, then Transferee agrees to assume the obligations as set forth in this Agreement as shall be reflected in the Amended Plan; or (ii) if Section 1.02 applies, Transferee agrees to:  (a) obtain a satisfaction in full of the Loan (as defined below) and (b) pay into Transferor's Confirmation Account the full amount of all

Allowed Claims, Mechanics' Lien Claims and Administrative Claims as such terms are commonly understood under applicable bankruptcy law (such claims collectively, the "**Approved Claims Amount**") which shall be disbursed to approved claimants in accordance with the Sale Order (defined below) and consistent with applicable bankruptcy law. The Purchase Price is payable as follows:

(a)    Contemporaneously with the execution hereof, Transferee shall deliver to Arent Fox PLLC ("**Escrowee**"), in escrow, Two Hundred Fifty Thousand Dollars ($250,000) (together with any interest earned thereon, the "**Initial Deposit**").

(b)    No later than 5:00 p.m. on the first Business Day after the expiration of the Conversion Election Period, TIME BEING OF THE ESSENCE, Transferee shall deliver to Escrowee, in escrow, an additional Seven Hundred Fifty Thousand Dollars ($750,000) (together with any interest earned thereon, the "**Additional Deposit**"; the Initial Deposit and the Additional Deposit, to the extent deposited, are collectively referred to herein as the "**Deposit**"). Transferee's failure to timely deliver the Additional Deposit shall be deemed a material default hereunder and, accordingly, trigger Transferor's right to terminate this Agreement and retain the Initial Deposit as liquidated damages.

(c)    The Deposit shall be (i) if Section 1.01 applies, transferred to the Confirmation Account within two (2) Business Days after the Confirmation Order (as defined below) is issued, or (ii) if Section 1.02 applies, applied against the Purchase Price at Closing in which event it shall also be deposited in the Confirmation Account and disbursed to approved claimants as provided in the Sale Order (defined below) and consistent with applicable bankruptcy law , (iii) refunded or returned to Transferee if (a) this Agreement is terminated as a result of a default by Transferor or (b) this Agreement or the Amended Plan (as the same may be modified by Transferor from time to time) is not approved by the Bankruptcy Court, or (iv) paid to Transferor and retained by Transferor as liquidated damages in the event of Transferee's default hereunder, and shall otherwise be nonrefundable unless expressly provided herein to the contrary.

(d)    No later than earlier to occur of, TIME BEING OF THE ESSENCE, (i) the one hundred twentieth (120th) day after the date hereof, and (ii) the fifth (5th) Business Day prior to the date initially scheduled for the hearing at which the Confirmation Order will be requested, Transferee shall deposit into an account (the "**Confirmation Account**") that Debtor will have established for the purpose of facilitating the confirmation process and for ensuring the implementation of the Amended Plan:  an amount equal to (i) if Section 1.01 applies, the Approved Claims Amount less the Deposit or (ii) if Section 1.02 applies, the Purchase Price balance (*i.e.*, the adjusted Purchase Price less the Deposit).  If the Bankruptcy Court denies confirmation of the Amended Plan and this Agreement terminates, Transferor shall direct the funds deposited by Transferee in the Confirmation Account to be returned to Transferee. Transferor agrees to promptly notify Transferee of the date initially scheduled for the confirmation hearing, which notice shall be at least ten (10) Business Days prior to the date of the hearing.

(e)    Upon Transferee's delivery of the Satisfaction Documents (as hereinafter defined), Transferee shall be deemed to have fulfilled its obligation to pay the amount described in clause (ii)(a) of Section 2.01 immediately above.

NYC/169068.7                                3

(f)    In the event that Section 1.01 hereof applies and Section 1.02 does not (*i.e.*, the sale of the Property contemplated hereby is not consummated) then the Purchase Price shall be deemed paid in full upon Transferee's satisfaction of all of its obligations as NuCo's successor under the Amended Plan, which the Deposit and the Confirmation Account funds deposited by Transferee shall be applied against.

**2.02    ALLOCATION OF PURCHASE PRICE.**    Transferor and Transferee acknowledge and agree that the personal property, if any, related to the Property constitutes but a de minimis percentage of the value of the Property and, accordingly no portion of the Purchase Price has been allocated thereto.

**ARTICLE III**
**TITLE**

**3.01**    Transferor shall deliver to the Transferee title to the Real Property as described in the title commitment attached hereto as Exhibit C (the "**Transferor's Commitment**"), subject only to the title exceptions set forth therein and no other title exceptions other than (i) the preprinted exceptions in the Title Commitment (defined below), (ii) any Title Commitment requirements that are Transferee's responsibility to fulfill hereunder (such as delivery of the Satisfaction Documents, as defined below) or as set forth in the Title Commitment (such as providing the Title Insurer with organizational and authorization documentation, satisfaction of the Loan) and (iii) any exceptions caused by the Transferee or its agents (collectively, the "**Permitted Exceptions**"). Transferor and Transferee acknowledge that it is contemplated that certain liens, claims and judgments Transferor shown on Transferor's Commitment will be removed in the ordinary course pursuant to the Sale Order (as defined below).

**3.02**    Transferee, at its sole cost and expense, shall promptly obtain an updated commitment (the "**Title Commitment**") for title insurance from a national title insurance company selected by Transferee and reasonably approved by Transferor (the "**Title Insurer**"). The Title Commitment shall be issued in the full amount of the purchase price and shall name Transferee as the proposed insured party. Transferee agrees to take title subject to each and every exception shown on the Title Commitment. With respect to any exceptions that are first raised by the Title Insurer after the expiration of the Conversion Election Period that will not be removed pursuant to the Sale Order and to which Transferee objects ("**Additional Exceptions**"), Transferee shall give Transferor notice of such Additional Exceptions by 5:00 p.m. eastern time on or prior to the fifth (5th) Business Day after the date of such supplemental report. Transferor shall have the right but not the obligation to remove any such Additional Exceptions on or prior to Closing. If Transferor elects to endeavor to cure any such Additional Exceptions, Transferor shall notify Transferee of such election on or prior to the fifth (5th) Business Day after receipt of Transferee's objection notice; Transferor's failure to send such notice shall be deemed an election by Transferor not to cure any such Additional Exceptions. If Transferor elects (or is deemed to have elected) not to cure any Additional Exceptions as provided in the immediately preceding sentence, the Additional Exceptions shall automatically be included within the definition of "Permitted Exceptions"; if, however, Transferor elects to endeavor to cure an Additional Exception(s), then in the event Transferor fails to cure the same at or prior to Closing, Transferee's sole remedy shall be either (i) to terminate this Agreement and receive a full refund of its Deposit, whereupon this Agreement shall terminate and neither party hereto shall have any

NYC/169068.7                                4

further obligations to the other except for obligations that expressly survive the termination hereof, or (ii) to accept title to the Real Property subject to the Additional Exceptions without any reduction in the Purchase Price and proceed to Closing. Without limiting the foregoing, the Transferor may use a portion of the Purchase Price at Closing to satisfy any such Additional Exceptions and deliver to the Transferee such instruments in recordable form and sufficient to satisfy any such Additional Exceptions of record together with the cost of recording or filing said instruments; or provided Transferor has made arrangements with the Title Insurer in advance of the Closing, the Transferor may deposit with the Title Insurer sufficient monies, acceptable to and required by such Title Insurer to enable it to obtain and record such satisfactions and issue title insurance to the Transferee either free of any such Additional Exceptions, or with insurance against enforcement of same out of the Real Property. Notwithstanding the foregoing to the contrary, Transferee shall have no right to object to (and correspondingly, no termination right with respect to) any Additional Exceptions that relate to the Loan or to any Allowed Claim (inclusive of mechanics liens), and any such Additional Exceptions shall be deemed a "Permitted Exception."

## ARTICLE IV
## POSSESSION, PRORATIONS AND CLOSING COSTS

**4.01    POSSESSION.** If Section 1.02 applies, possession of the Property shall be delivered to Transferee on the date title is conveyed by Transferor to Transferee, which shall be on or before the ten (10) days after issuance of the Sale Order; if Section 1.01 applies, the Closing shall occur ten (10) days after issuance of the Confirmation Order (as the case may be, the "Closing Date"). TIME IS OF THE ESSENCE with respect to the dates and time periods set forth in this Section 4.01.

**4.02    PRORATIONS.** In connection with the Closing on the sale of the Property pursuant to Section 1.02, the following items shall be adjusted as follows:

(a)    **TAXES.** General real estate taxes and personal property ad valorem taxes, if any, with respect to the Property (collectively, "Taxes") due and payable prior to the Closing Date and relating to the period of ownership prior to the Closing Date shall be paid by Transferor. Taxes that have accrued but are not yet due and payable as of the Closing Date shall be prorated between Transferor and Transferee on the basis of the most recently ascertainable Taxes and calculated based on the parties' respective periods of ownership relative to the period to which such taxes relate. If current year tax information is not available, the parties shall calculate such proration using the amount due and payable in the year immediately preceding the year of the Closing. Any such pro ration shall be final and no subsequent adjustments, refunds or additional payments shall be made. All tax adjustments shall be based on the fiscal year used by the taxing authority.

(b)    **UTILITIES.** All utility charges shall be prorated between Transferee and Transferor as of the Closing Date. To the extent feasible, Transferor shall arrange for meter readings of metered utilities at the Property on the Business Day immediately prior to the Closing Date. If such charges and expenses are unavailable, the parties shall calculate such proration using the amount due and payable in the month immediately preceding the month of

the Closing. Any such pro ration shall be final and no subsequent adjustments, refunds or additional payments shall be made.

(c) **GOVERNMENTAL, UTILITY AND SIMILAR DEPOSITS.** Transferor shall transfer any deposit, bond or letter of credit given by Transferor to secure any Licenses, utility services or other obligations in connection with the Property to Transferee at Closing.

(d) **OTHER ITEMS OF EXPENSE OR RECEIPT.** All other customarily prorated items of expense (including, without limitation, any License fees) or receipt shall be prorated between the parties hereto as of the Closing Date. Except with respect to items prorated at Closing and subject to the applicable provisions of the Bankruptcy Code, Transferor shall be responsible for payment of any and all bills or charges incurred on or prior to the Closing Date for work, services, supplies or materials, and Transferee shall be responsible for payment of any and all bills or charges for work, services, supplies or materials incurred from and after the Closing Date.

(e) **ADJUSTMENTS.** All revenue from the Property, utility charges and other operating expenses shall, notwithstanding anything contained herein to the contrary, be prorated at Closing effective as of 11:59 p.m. the day before the Closing Date. Prorations shall be accomplished by an adjustment in the Purchase Price due Transferor on the Closing Date. Each party's respective obligations under this Article IV to reimburse or pay the other party shall survive the Closing and shall not merge into any instrument of conveyance delivered at Closing. The parties shall work together to arrive at final adjustments as soon as practicable and shall remit any amounts owed promptly upon such determination.

**4.03 CLOSING COSTS.** Pursuant to the Sale Order (defined below) or the Confirmation Order (defined below), as the case may be, the sale of the Property is to be exempt from any and all municipal, state and county transfer taxes. Transferee shall pay all survey charges, title insurance charges and money-lender's escrow charges incurred in connection with any mortgage loans obtained by Transferee. Except as provided above, Transferee shall pay all charges customarily attributable to purchasers, and Transferor shall pay all closing costs customarily charged to sellers. The parties shall each be solely responsible for the fees and disbursements of their respective counsel and other professional advisors in closing the transaction contemplated by this Agreement.

**ARTICLE V**
**ESCROW**

**5.01** The parties, through their respective attorneys, shall establish an escrow for the Deposit with the Escrowee and into which Transferee shall cause the Initial Deposit (and if applicable, the Additional Deposit) to be deposited. Transferee shall direct the Escrowee to invest any cash portion of the Deposit in an interest bearing trust account , which interest shall, for the avoidance of doubt, be paid to the party entitled to receive the Deposit. The parties also agree to an escrow Closing, with document deliveries and the Purchase Price balance due at Closing to be made through the Title Insurer. Closing instructions shall be in the usual form of deed and money escrow agreement customarily used by the Title Insurer with such special

NYC/169068.7                    6

provisions added thereto as may be required to conform to the provisions of this Agreement and so as to provide for a so-called "New York style closing" requiring the simultaneous delivery of the Deed (defined in Section 13.02(a) below) to Transferee and disbursement of the Purchase Price proceeds to Transferor, as contemplated by Section 13.04 hereof. In the event of any inconsistencies between the terms and provisions of this Agreement and the terms and provisions of any escrow agreement or closing instruction letter, the terms and provisions of this Agreement shall govern and control. The Title Insurer's escrow costs and fees, if any, shall be paid by Transferee.

## ARTICLE VI
## BROKERAGE

6.01   Transferee and Transferor each hereby represents and warrants to the other that it has not dealt with any broker or finder in respect to the transaction contemplated hereby other than General Capital Partners, LLC ("Broker"). Transferee represents and warrants to Transferor that it shall pay the fee due to the Broker for the transaction (not to exceed Four Hundred Thousand Dollars ($400,000)) ("Broker Fee") pursuant to the terms of the Savoy Agreement (as defined below) and that Transferor shall have no liability or obligation for all or any portion thereof. Each party agrees to defend, indemnify and hold the other harmless from and against any and all loss, damage, cost and expense, including, without limitation, reasonable attorneys' fees and disbursements, occasioned by a breach of a representation or warranty made in this Article VI by such indemnifying party. The provisions of this Article VI shall survive the Closing.

## ARTICLE VII
## CASUALTY AND CONDEMNATION

7.01   CASUALTY.   If, prior to the Closing Date, the Real Property or the improvements, if any, thereon are destroyed or damaged by fire or other casualty, then neither Transferee nor Transferor shall have the right to terminate this Agreement, and the transaction hereby contemplated shall proceed to Closing as provided in this Agreement.

7.02   CONDEMNATION. If, prior to the Closing Date, any judicial, administrative or other proceeding relating to the proposed taking of any portion of the Real Property by condemnation or eminent domain or any act in the nature of eminent domain is instituted, Transferee hereby agrees to furnish Transferee written notification with respect to any such proceeding promptly after learning of the same, but neither Transferee nor Transferor shall have the right to terminate this Agreement as result of such proceeding, and the transaction contemplated hereby shall proceed as provided in this Agreement, and at Closing, Transferee shall be credited (against the Purchase Price if any proceeds or award has been paid to Transferor) or assigned all of Transferor's rights to the proceeds or award relating thereto, without reduction in the Purchase Price.

## ARTICLE VIII
## AFFIRMATIVE COVENANTS OF TRANSFEROR

**8.01   MAINTENANCE OF PROPERTY.**  From the date hereof to the Closing Date, Transferor shall use reasonable efforts to maintain the Property in its current state of repair, ordinary wear and tear excepted.  Subject to Closing, on the Closing Date, Transferor shall tender possession of the Property to Transferee in its then state of condition.

**8.02   INSURANCE.**  From the date hereof to the Closing Date, Transferor shall maintain or cause to be maintained all existing liability, casualty and other insurance upon and in respect to the Property.

**8.03   OPERATION AND MANAGEMENT.**  From the date hereof to the Closing Date, Transferor shall operate and manage the Property in substantially the same manner as it has been operated and managed heretofore.

## ARTICLE IX
## REPRESENTATIONS OF TRANSFEREE

**9.01   AUTHORITY, DUE ORGANIZATION.**  Transferee hereby warrants and represents to Transferor that it has the full right, power, and authority to purchase the Property as provided herein and to execute, deliver, and carry out all of the provisions of this Agreement and to otherwise consummate the transaction contemplated hereby.  The execution and delivery of this Agreement and any other documents required of Transferee hereunder and the performance and observance of all of its terms, conditions, and obligations, have been duly authorized by all necessary action of Transferee.

**9.02   NO CONFLICTING AGREEMENTS.**  Transferee hereby warrants and represents to Transferor that the purchase of the Property by Transferee as provided hereunder and the performance by Transferee of its obligations under this Agreement will not conflict with or result in the breach of any of the terms of any agreement or instrument to which Transferee is a party.

## ARTICLE X
## REPRESENTATIONS OF TRANSFEROR

**10.01  REPRESENTATIONS.**     Transferor hereby represents and warrants to Transferee as of the date hereof that:

(a)     **AUTHORITY, DUE REORGANIZATION.**  Subject to Confirmation of the Amended Plan or the Sale Order as the case may be, Transferor has the full right, power and authority to sell, convey, transfer, and assign the Property to Transferee as provided herein and under the Amended Plan and to execute, deliver, and carry out all of the provisions of this Agreement.  The execution and delivery by Transferor of this Agreement and any other documents required of Transferor hereunder and the performance and observance of all of its terms, conditions, and obligations, have been or will be duly authorized by all necessary action of Transferor.

NYC/169068.7                               8

(b)    **NO CONFLICTING AGREEMENTS.** Upon Confirmation of the Amended Plan, the transfer and delivery by Transferor of the Property to Transferee as provided hereunder and the performance by Transferor of its obligations under this Agreement will not conflict with or result in the breach of any of the terms of any agreement or instrument to which Transferor is a party.

(c)    **FIRPTA.** Transferor is not a "foreign person" within the meaning of the United States tax laws and to which reference is made in Internal Revenue Code Section 1445(b)(2).

(d)    **LITIGATION.** Except for (i) the Bankruptcy Case, (ii) claims of related secured creditors, (iii) litigation fully covered by insurance policies (subject to customary deductibles), (iv) litigation filed in connection with adversarial proceedings related to the Bankruptcy Case that may have been referred to in the Plan or other documents filed in the Bankruptcy Case (*e.g.*, the DEC claim), (vi) claims made by USEPA and/or the Virginia Department of Quality Assurance relating to site work and/or stream disturbance, and to the Transferor's Actual Knowledge (defined below) there are no, existing or threatened, investigations, claims, causes of action or other litigation or proceedings pending with respect to Transferor's ownership of the Property.

(e)    **CONDEMNATION.** To Transferor's Actual Knowledge, Transferor has not received written notice from any person or entity with respect to any existing or pending condemnation of any part of the Real Property other than the condemnation threatened by the Campbell County regarding the 33-unit building partially constructed on Parcel 1.

(f)    **ENVIRONMENTAL MATTERS.** Except as disclosed in Section 10.01(d) hereof, to Transferor's Actual Knowledge, Transferor is and has at all times been in material compliance with all environmental laws governing the Property and there are no other environmental claims pending or to Transferor's Actual Knowledge threatened against the Transferor arising out of Transferor's ownership of the Property.

(g)    All representations and warranties contained herein are and shall be true and correct at the time of Closing.

                                              `[ Formatted ]`

**10.02 TRANSFEROR'S KNOWLEDGE.** The phrase "**Transferor's Actual Knowledge**" means the conscious awareness of Jacob Frydman, a principal of the general partner of Transferor, without inquiry, and does not mean implied, imputed or constructive knowledge.

**10.03 NO OTHER REPRESENTATIONS.** Except as expressly set forth in this agreement, it is understood and agreed that Transferor is not making and has not at any time made any warranties or representations of any kind or character, express or implied with respect to the Property, including, but not limited to, any warranties or representations as to habitability, merchantability, or fitness for a particular purpose, physical condition of the Property, presence or absence of hazardous or toxic materials or chemicals in, at, under or near the Property, or any other matter or thing regarding the Property.

NYC/169068.7

9

**ARTICLE XI**
**INSPECTION; CONVERSION RIGHT; RELEASE; WAIVER; CONDITION OF**
**PROPERTY**

**11.01  INSPECTION.** For a period of ninety (90) days from the date of this Agreement first written above (the "**Conversion Election Period**"), Transferee shall have the privilege of going on the Property for the purpose of making inspections and approval thereof. If Transferee desires to close on the acquisition of the Property pursuant to Section 1.02 in lieu of proceeding under Section 1.01, Transferee shall provide Transferor with written notice of such election (the "**Conversion Notice**") given no later than 5:00 p.m. eastern time on the last day of the Conversion Election Period, TIME BEING OF THE ESSENCE. If, however, Transferee, in its sole discretion, is dissatisfied with the results of such examination or otherwise decides not to exercise the aforesaid conversion right, for any other reason or no reason, the transaction shall remain as set forth in Section 1.01 (*i.e.*, Transferee shall assume and satisfy all of NuCo's obligations under the Amended Plan). For the avoidance of doubt, in no event shall Transferee have the right to elect to terminate this Agreement under this Section 11.01. Transferee's failure to send the Conversion Notice prior to the expiration of the Conversion Election Period shall be conclusive evidence of Transferee's waiver of the conversion right described above. If, however, Transferee fails to perform its obligations in connection with the Closing contemplated by Section 1.02, then notwithstanding that Transferee may have elected (or be deemed to have elected) to convert the transaction to a straight real estate acquisition pursuant to Section 1.02, the transaction shall automatically convert back to the structure set forth in Section 1.01.

**11.02  RELEASE.** Transferee waives its right to recover from, and forever releases and discharges, and covenants not to sue, Transferor, Transferor's affiliates, any asset manager of Transferor's, any lender to Transferor, the members, partners, trustees, shareholders, controlling persons, directors, officers, attorneys, employees and agents of each of them, and their respective heirs, successors, personal representatives and assigns (each a "**Transferor Party**," and collectively, the "**Transferor Parties**") with respect to any and all claims, whether direct or indirect, known or unknown, foreseen or unforeseen, that may arise on account of or in any way be connected with the Property including, without limitation, the physical, environmental, and structural condition of the related Real Property or any law or regulation applicable thereto, and any claim or matter relating to the use, presence, discharge or release of Hazardous Materials (defined below) on, under, in, above or about the Real Property; provided, however, Transferee does not waive its rights, if any, to recover from, and does not release or discharge or covenant not to sue Transferor for (i) any act that is found by a court of competent jurisdiction to constitute fraud, (ii) any breach of Transferor's representations or warranties set forth in Section 10.01, subject to the limitations, conditions and express rights provided in this Agreement, or (iii) any breach of Transferor's obligations set forth in this Agreement that expressly survive Closing. This Section 11.02 shall survive Closing for six (6) months.

**11.03  WAIVER BY TRANSFEREE.** If Transferee and/or its assignee, with knowledge of (i) a default in any of the covenants, agreements or obligations to be performed by Transferor under this Agreement and/or (ii) any breach of or inaccuracy in any representation or warranty of Transferor made in this Agreement nonetheless elects to proceed to Closing, then, upon the consummation of the Closing, Transferee and/or its assignee shall be deemed to have

NYC/169068.7                          10

waived any such default and/or breach or inaccuracy and shall have no claim against Transferor with respect thereto. This Section 11.03 shall survive Closing.

11.04 CONDITION OF PROPERTY. TRANSFEREE ACKNOWLEDGES AND AGREES THAT THE TRANSACTION CONTEMPLATED HEREBY IS, AND UPON CLOSING TRANSFEROR SHALL SELL AND CONVEY TO TRANSFEREE AND TRANSFEREE SHALL ACCEPT THE PROPERTY, "AS IS, WHERE IS, WITH ALL FAULTS." TRANSFEREE SHALL RELY SOLELY ON ITS OWN INVESTIGATION WITH RESPECT TO THE PROPERTY, INCLUDING THE PROPERTY'S PHYSICAL, ENVIRONMENTAL OR ECONOMIC CONDITION, COMPLIANCE OR LACK THEREOF WITH ANY ORDINANCE, ORDER, PERMIT OR RESOLUTION. THIS SECTION 11.04 SHALL SURVIVE CLOSING. NOTWITHSTANDING THE FOREGOING, TRANSFEROR HAS DISCLOSED ALL CONDITIONS THAT IT HAS ACTUAL KNOWLEDGE OF THAT COULD EFFECT THE USE OF THE PROPERTY AS AN ACTIVE ADULT COMMUNITY, RETIREMENT COMMUNITY OR CCRC.

## ARTICLE XII
## CONDITIONS TO CLOSING

12.01 CONDITIONS TO TRANSFEROR'S OBLIGATION TO CLOSE. In addition to the other conditions set forth in this Agreement, including Section 17.01(b), a condition precedent to Transferor's obligation to close hereunder is that Transferee shall have observed and performed in all material respects all covenants and obligations on its part to be observed or performed at or prior to Closing.

12.02 CONDITIONS TO TRANSFEREE'S OBLIGATION TO CLOSE. In addition to the other conditions set forth in this Agreement, including Section 17.01 hereof, a condition precedent to Transferee's obligation to close hereunder shall be that Transferor shall have observed and performed in all material respects all covenants and obligations on its part to be observed or performed at or prior to Closing.

12.03 BANKRUPTCY COURT APPROVAL. In addition to the other conditions set forth in this Agreement, the following shall be conditions precedent to Transferor's and Transferee's ability to close hereunder:

(a) Notice of the Agreement and Amended Plan shall have been given to all creditors and such other parties (including applicable taxing authorities) as are entitled to notice thereof pursuant to Federal Rules of Bankruptcy Procedure; and

(b) The Bankruptcy Court shall have signed and entered an order confirming the Amended Plan as the same may have been further amended in accordance with this Agreement (the "Confirmation Order") and, if Section 1.02 applies, shall have issued an order authorizing the Transferor to sell, transfer and assign the Property to transferee pursuant to this agreement and the Bankruptcy Code, free and clear of monetary liens, claims, judgments and security interest of any nature and kind and determining that the sale of the Property is exempt from any and all municipal, state and county transfer taxes pursuant to 11 U.S.C. § 1146 (the "Sale Order").

(c)     The Confirmation Order becomes a final order.  Final orders are orders that are no longer appealable.

## ARTICLE XIII
## CLOSING

**13.01  TIME AND PLACE.**  The transaction contemplated hereby shall close (the "Closing") on the Closing Date (as the same may be extended pursuant to the express provisions of this Agreement), TIME BEING OF THE ESSENCE, at the offices of Transferor's counsel or on such other date and place as the parties may mutually agree at a time agreed upon by the parties; the parties hereby agree that the transaction may close in escrow as contemplated by Article V hereof, which escrow closing may be facilitated by mail.

**13.02  TRANSFEROR'S DELIVERIES.**  If the Closing on the sale is pursuant to Section 1.02, then at least one (1) Businesses Day prior to the Closing Date, Transferor shall deliver to the Escrowee, in escrow, the following Closing documents (all duly executed, and acknowledged and in recordable form, if and as appropriate) and other items:

(a)     a special warranty deed conveying to Transferee fee simple title to the Real Property subject only to the Permitted Title Exceptions (the "Deed");

(b)     a general assignment conveying to Transferee Transferor's right, title and interest in and to the Licenses in the form attached hereto as **Exhibit E** (the "**General Assignment**");

(c)     a bill of sale in the form attached hereto as **Exhibit G**;

(d)     original executed counterparts or duplicate originals (or, to the extent the foregoing are not available, certified copies) of all Licenses and Property Documents in Transferor's possession or control;

(e)     all keys to the Real Property, if any;

(f)     the Gap Undertaking (as defined in Section 13.04);

(g)     any required transfer tax returns or similar documentation;

(h)     a non-foreign affidavit complying with the requirements of Section 1445 of the Internal Revenue Code; the Closing settlement statement;

(i)     a certified copy of the Bankruptcy Court approved Sale Order referred to in Section 20.01, below;

(j)     an owner's affidavit, in the form attached hereto as **Exhibit F**, addressed to the Title Insurer; and

(k)     the Closing settlement statement.

**13.03  TRANSFEREE'S DELIVERIES.**  If the Closing on the sale is pursuant to Section 1.02, then at least one (1) Businesses Day prior to the Closing Date, Transferee shall deliver to the Escrowee, in escrow, the following documents (all duly executed and acknowledged and in recordable form, if and as appropriate) and other items:

    (a)    the balance of the adjusted Purchase Price

    (b)    the General Assignment;

    (c)    any required transfer tax returns or similar documentation;

    (d)    an assumption of any and all liabilities and obligations not otherwise assumed by Transferee, in accordance with any of the other documents hereinabove provided, relating to any liabilities or obligations relating to the Property for which Transferee has elected to accept and has received a proration credit from Transferor (which credit shall be clearly described and delineated on the settlement statement);

    (e)    evidence satisfactory to the Title Insurer, with copies to Transferor, authorizing the consummation by Transferee of the transaction contemplated hereby and the execution and delivery of the Closing documents on behalf of Transferee;

    (f)    the documentation and deliveries required pursuant to Section 17.04(f) hereof, if applicable; and

    (g)    the Closing settlement statement.

**13.04  NEW YORK STYLE CLOSING.**  The sale of the Property shall be closed by means of a so-called "New York style closing," with the concurrent delivery of the documents of title, transfer of interests, delivery of the Title Policy (or equivalent mark-up of the Title Commitment) and the disbursement to Transferor of the Purchase Price. Transferor shall provide any undertaking (the "Gap Undertaking") to the Title Insurer necessary to the New York style closing provided the Gap Undertaking will not cover encumbrances or title defects created by any party other than Transferor. Transferee shall be responsible for the service charge, if any, of the Title Insurer for such New York style closing.

**ARTICLE XIV**
**DEFAULT**

**14.01  DEFAULT BY TRANSFEROR.**  If Transferee is not then in default in its obligations or agreements hereunder and Transferor shall have failed to perform any of the material covenants or agreements contained in this Agreement to be performed by Transferor, Transferee may, at its option, as Transferee's sole and exclusive remedy either (i) terminate this Agreement by giving notice of termination to Transferor within two (2) Business Days after discovery of Transferor's default, whereupon (but subject to Section 14.03 below) the Deposit shall be promptly returned to Transferee or (ii) seek specific performance of this Agreement subject, however, to the necessary Bankruptcy Court approval. Transferee expressly waives all rights at law or in equity to seek monetary damages (including without limitation any and all consequential, speculative and punitive damages) for any default by Transferor hereunder.

NYC/169068.7

13

14.02  **DEFAULT BY TRANSFEREE.**  If Transferee fails to perform its obligations under this Agreement, Transferor may terminate this Agreement by written notice to Transferee, whereupon (but subject to Section 14.03 below) Transferor shall receive and retain the entire Deposit as full and complete liquidated damages (and not as a penalty or forfeiture), Transferor and Transferee hereby agreeing that actual damages will be difficult if not impossible to ascertain.  The parties acknowledge and agree that if Transferee defaults in its obligations hereunder and Transferee has converted the transaction pursuant to Section 1.02, then without limiting any of Transferor's rights and remedies, the transaction shall automatically revert back to the structure described in Section 1.01.

14.03  **NOTICE AND CURE.**  Neither Transferor nor Transferee shall avail itself of any remedy granted to it hereunder based upon an alleged default of the other party, unless and until written notice of the alleged default, in reasonable detail, has been delivered to the defaulting party by the non-defaulting party and the alleged default has not been cured on or before 5:00 p.m., eastern time, on the fifth (5th) Business Day next following delivery of said notice of default, TIME BEING OF THE ESSENCE.  This Section 14.03 shall not apply to funding obligations under this Agreement (*e.g.*, untimely delivery of any portion of the Deposit or the balance of the Purchase Price).

## ARTICLE XV
### DEED FULL PERFORMANCE

15.01  The acceptance of the Deed and other Closing Documents by Transferee from Transferor (in the case of a Section 1.02 Closing) or the Bankruptcy Court's Confirmation of the Amended Plan (in the case of a Section 1.01 Closing), as the case may be, shall be deemed full performance on the part of Transferor of all of Transferor's obligations under this Agreement that are to be performed on or prior to the Closing or Confirmation, except as to any such obligation which is expressly stated in this Agreement to survive the Closing.  Unless otherwise expressly provided in this Agreement, none of the provisions of this Agreement shall survive the Closing.

## ARTICLE XVI
### NOTICES

Any notice, demand or other communication which any party may desire or may be required to give to any other party shall be in writing and shall be deemed given (i) if and when personally delivered, or (ii) upon receipt if sent by a nationally recognized overnight courier, or (iii) when sent by confirmed facsimile, addressed to a party at its address set forth below or to such other address as the party to receive such notice may have designated to all other parties by notice in accordance herewith:

If to Transferor, to:          Liberty Village Associates Limited Partnership
                               c/o Mr. Jacob Frydman
                               111 Fulton Street, 4th Floor
                               New York, New York 10038
                               Facsimile: (212) 732-1199

NYC/169068.7                        14

with copies to:                Arent Fox PLLC
                               1675 Broadway
                               New York, New York 10019
                               Attention: Karen F. Candreva, Esq.
                               Facsimile: (212) 484-3990

and                            Arent Fox PLLC
                               1675 Broadway
                               New York, New York 10019
                               Attention: Robert E. Grossman, Esq.
                               Facsimile: (212) 484-3990

If to Transferee, to:          American Heritage Communities/Liberty
                                  Village, LLC
                               3 college Avenue, Suite 3
                               Frederick, Maryland 21701
                               Attention: Bruce E. Boyer
                               Facsimile: (301) 668-5666

with a copies to:              American Heritage Communities
                                14 Edgewood Road
                                Rumson, New Jersey 07760-1114
                                Attention: Herbert Kaiser
                               Facsimile: (732) 758-1169

and                            McElroy, Deutsch, Mulvaney & Carpenter, LLP
                               1300 Mount Kemble Avenue
                               Morristown, New Jersey 07962-2075
                               Attention: Edward Deutsch, Esq.
                               Facsimile: (973) 425-0161


## ARTICLE XVII
## RELATED TRANSACTIONS

### 17.01  LOAN SATISFACTION.

(a)    Transferor and Transferee acknowledge that Transferee is negotiating with Lender (defined below) for a new loan in favor of Transferee to be secured by a lien on the Property if and after Transferee takes title to the Property.

(b)    In any event, Transferee expressly agrees to cause the secured loan in the original principal amount of $20,000,000 (the "Loan") made by Community National Bank (together with successors and assigns, "Lender") to Transferor, as borrower, which Loan is evidenced by, *inter alia*, a Commercial Note dated May 7, 2001 made by Transferor, as borrower, and secured by a Credit Line Deed of Trust dated as of May 7, 2001 and recorded in the local land records in Book 010002930, Page 96, and by certain other security instruments described in the aforesaid Note and Deed of Trust and/or executed and delivered to Lender in

NYC/169068.7                        15

order to secure or otherwise evidence the Loan, to be satisfied (or in the event of a Closing under Section 1.01, to be assumed by Transferee) and the borrower released thereunder at or prior to Closing, which satisfaction (or assumption, as the case may be) and release shall be evidenced by an original executed, recordable instrument(s) reasonably satisfactory to Transferor and the Title Insurer (the "**Satisfaction Documents**").

(c)    Any fees, cost and expenses payable in connection with the satisfaction of the Loan or the new loan Transferee is currently negotiation with Lender shall be paid by Transferee solely at its expense, and Transferor shall have no responsibility or obligation therefor.

(d)    Transferor makes no representation or warranty to Transferee regarding the Loan, and Transferor and Transferee acknowledge and agree that neither Transferee's ability to finalize the terms of a new loan with Lender is not a condition precedent to Transferee's obligation to close the transaction contemplated hereby.

**17.02 SAVOY AGREEMENT.** Transferor and Transferee acknowledge that contemporaneously with the execution and delivery hereof, Transferee is entering into an agreement with Savoy Senior Housing Corporation and Savoy Liberty Village, LLC and/or certain of their affiliates or principals (collectively the "**Savoy Entities**"), both partners in Transferor, which agreement relates to, *inter alia*, the assignment and/or waiver of certain rights of the general partner in Transferor under the Transferor's partnership agreement and the sale of certain equity rights of Savoy Entities (the "**Savoy Agreement**").

**ARTICLE XVIII**
**ASSIGNABILITY**

**18.01** Transferee may not assign this Agreement without the prior, written consent of Transferor which consent shall not be unreasonably withhheld; provided however, that Transferee may assign the Agreement to an entity owned and controlled by the Transferee's principal without the prior written consent of Transferor (but with prior, written notice to Transferor) provided that Robert V. Gibbs remains a senior decision-maker of the assignee. The parties agree that any such assignment shall not relieve or release Transferee from any liability under this Agreement. Notwithstanding the foregoing, Transferee shall not assign this Agreement to any prospective purchaser bidding at the sale proposed in the Bankruptcy Motion.

**ARTICLE XIX**
**GENERAL**

**19.01 ENTIRE AGREEMENT, AMENDMENTS AND WAIVERS.** This Agreement contains the entire agreement and understanding of the parties in respect to the subject matter hereof (other than the Savoy Agreement and the existing confidentiality agreement between Transferee and Transferor and/or affiliates of Transferor), and the same may not be amended, modified or discharged nor may any of its terms be waived, except by an instrument in writing signed by the party to be bound thereby. The waiver of any term or provision of this Agreement shall not constitute a waiver of any other term or provision of this Agreement, nor shall the right to require any enforcement of any term or provision of this

NYC/169068.7                                    16

Agreement be permanently waived, if a continuing breach of any such term or provision arises. In the event of a conflict between this Agreement and the aforesaid confidentiality agreement, the provision that is most restrictive on Transferee shall govern.

19.02  **FURTHER ASSURANCES.**  The parties each agree to do, execute, acknowledge and deliver all such further acts, instruments and assurances and to take all such further action before or after the Closing as shall be necessary or desirable to perform this Agreement and consummate and effect the transactions contemplated hereby.  This Section 19.02 shall survive the Closing.

19.03  **EFFECTIVE DATE.**  This Agreement shall only be effective upon full execution by and delivery to the parties hereto.  Transferor's obligation to sell the Property to Transferee pursuant to Section 1.02 shall only be effective upon the Bankruptcy Court's entering of a final, non-appealable Sale Order.

19.04  **SURVIVAL.**  The representations, warranties and covenants in this Agreement shall not survive settlement and delivery of the Deed and shall be merged therein, except as may be specifically provided to the contrary as to certain specific provisions of this Agreement.

19.05  **INTERPRETATION.**  The headings and captions herein are inserted for convenient reference only, and the same shall not limit or construe the paragraphs or sections to which they apply or otherwise affect the interpretation hereof.

(a)  The term **"Business Day"** means a day that offices of state and local government are open for business in the State of Virginia and in the State of New York.

(b)  The terms **"hereby," "hereof," "hereto," "herein," "hereunder"** and any similar terms shall refer to this Agreement, and the term **"hereafter"** shall mean after, and the term **"heretofore"** shall mean before, the date of this Agreement.

(c)  Words of the masculine, feminine or neuter gender shall mean and include the correlative words of other genders, and words importing the singular number shall mean and include the plural number and vice versa.

(d)  Words importing persons shall include firms, associations, partnerships (including limited partnerships), trusts, corporations, limited liability companies and other legal entities, including public bodies, as well as natural persons.

(e)  The terms **"include," "including"** and similar terms shall be construed as if followed by the phrase "without being limited to."

(f)  This Agreement and any document or instrument executed pursuant hereto may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(g)  Whenever under the terms of this Agreement the time for performance of a covenant or condition falls upon a Saturday, Sunday or holiday, such time for performance

NYC/169068.7

17

shall be extended to the next Business Day. Otherwise, all references herein to "**days**" shall mean calendar days.

(h)    If any provision hereof or the application of any such provision to any particular person or circumstance is held to be invalid or unenforceable, such invalidity or unenforceability shall not affect the validity or enforceability of any other provision hereof or the application of such provision to different person(s) or circumstance(s), as the case may be.

(i)    The terms and provisions of this Agreement represent the results of negotiations between the parties, each of whom has been represented by counsel of its own selection, and neither of whom has acted under duress or compulsion, whether legal, economic or otherwise. Consequently, the terms and provisions of this Agreement shall be interpreted and construed in accordance with their usual and customary meanings, and the parties hereby expressly waive and disclaim in connection with the interpretation and construction of the Agreement, any rule of law or procedure requiring otherwise, including, without limitation, any rule of law to the effect that ambiguous or conflicting terms or provisions contained in this Agreement shall be interpreted or construed against the party whose attorney prepared this Agreement or any earlier draft of this Agreement.

**19.06  CONSENTS AND APPROVALS.** Whenever consents or approvals are required under the terms of this Agreement, said consents or approvals shall be in writing.

**19.07  ATTORNEYS' FEES.** Except as otherwise expressly set forth in this Agreement or any of the documents and instruments to be executed by the parties, or either of them, and delivered at Closing pursuant to this Agreement, the prevailing party in any litigation or other dispute resolution process conducted by or between the parties shall be entitled to recover, as a part of its judgment, award or relief, reasonable attorneys' fees and the costs of such proceeding. The obligations of Transferee and Transferor under this Section 19.07 shall survive Closing.

**19.08  SUCCESSORS AND ASSIGNS.** Except as otherwise provided herein, the provisions and covenants contained herein shall inure to and be binding upon the heirs, successors and assigns of the parties hereto.

**19.09  PUBLICITY.** In no event shall Transferee, on the one hand, or Transferor, on the other hand, issue any press release or otherwise disclose any non-public information regarding this Agreement or the transaction unless the other party has consented thereto in writing and to the form and substance of any such statement or disclosure; provided, however, that nothing herein shall be deemed to limit or impair in any way any party's ability to disclose the details of or information concerning this Agreement, the transaction or the Property to such party's attorneys, accountants or other advisors to the extent such party reasonably deems necessary or desirable in connection herewith, or pursuant to any court or governmental order or applicable securities or other laws or regulations or bankruptcy proceedings or requirements (including pursuant to the Bankruptcy Case and the bid procedures described in Section 20.01 below) or financial reporting requirements, or as may be reasonably necessary in order to obtain any third party consents necessary to consummate the transaction or in conjunction with any future anticipated financing of the Property. Further, Transferor may disclose any information regarding this Agreement or the transaction to its direct or indirect constituent partners, members

NYC/169068.7                              18

or shareholders, as the case may be (and to counsel for the same) and as otherwise necessary to comply with the terms of this Agreement. The provisions of this Section 19.09 shall terminate upon the Closing.

**19.10 NO THIRD PARTY BENEFICIARIES.** There are no third party beneficiaries to this Agreement other than the guarantor(s) of the Loan.

**19.11 GOVERNING LAW.** This Agreement shall be governed by and construed according to the laws of the State of New York. For so long as Transferor is subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any dispute between Transferor and Transferee arising under or in connection with this Agreement, and consent to the jurisdiction of, the Bankruptcy Court. After Transferor is no longer subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any dispute between Transferor and Transferee arising under or in connection with this Agreement, and consent to the jurisdiction of, the Federal and state courts of the State of New York.

**19.12 FACSIMILE SIGNATURES.** Any party to this Agreement may deliver an executed copy of this Agreement by facsimile or other electronic transmission to the other party, and any such delivery shall have the same force and effect as delivery of an original, signed counterpart of this Agreement.

## ARTICLE XX
## SPECIAL BANKRUPTCY PROVISIONS

**20.01 BANKRUPTCY COURT APPROVAL.** Transferor agrees that it will not seek Confirmation of the Amended Plan by the Bankruptcy Court prior to the one hundred twenty-first (121st) day after the date of this Agreement without Transferee's prior written consent; from and after the one hundred twenty-first (121st) day after the date of this Agreement, Transferor may seek Confirmation of the Amended Plan by the Bankruptcy Court at Transferor's sole and absolute discretion. Upon the Bankruptcy Court's entry of the Confirmation Order and the aforesaid Confirmation Order becoming final and non-appealable, Transferee shall promptly make all final payments required thereunder and hereunder.

**20.02 RETENTION AND ACCESS TO DOCUMENTATION.** Transferee covenants to cooperate, at no cost or expense, with any reasonable requests by Transferor regarding Transferor's Bankruptcy Case and ancillary proceedings thereto, including but not limited to, allowing Transferor and its agents or representatives, reasonable access to documentation relating to the operation of the Property which documentation has been delivered to Transferee at, prior to, or after Closing. Transferee covenants to retain such documentation until the date the Bankruptcy Case and any ancillary proceedings are closed. This provision shall survive Closing but will terminate the date the Bankruptcy Case and any ancillary proceedings are closed.

**20.03 ADMINISTRATIVE EXPENSE.** In the event Transferor shall consummate a transaction with any party other than Transferee, Transferor will not challenge an application by Transferee to have Transferee's expenses associated with undertaking this Transfer Agreement

NYC/169068.7                                19

deemed an administrative expense claim to be paid under any confirmed plan or liquidation in the Bankruptcy Case. In the event an alternative transaction is undertaken, Transferor shall incorporate a recognition of the status of Transferee's expenditures as an administrative expense claim to be paid pursuant to applicable bankruptcy law in any documentation concerning such alternative transaction, including any plan, and shall support recognition of such status before the Court.

## ARTICLE XXI
## ADDITIONAL ESCROW PROVISIONS

21.01 ESCROWEE LIABILITY, DUTIES AND INDEMNITY. In addition to the other provisions contained herein regarding the Deposit and/or the Escrowee, Transferor and Transferee hereby acknowledge and agree as follows:

(a) Escrowee shall not be or become liable in any way or to any person for its refusal to comply with any adverse claim or demand being made for all or portion of the Deposit. Escrowee shall not be responsible for any act or failure to act on its part nor shall it have any liability under this Agreement or in connection herewith except in the case of its own willful default or gross negligence. Upon Escrowee's delivery or deposit of the Deposit in accordance with the provisions of this Agreement, Escrowee shall be automatically released from all obligation, responsibility and liability hereunder.

(b) It is expressly understood that Escrowee is acting hereunder for the convenience and accommodation of the parties hereto and as a depository only and is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness or validity of any instrument received by or deposited with it, or for the form of execution of such instruments, or for the identity, authority or right of any person executing or depositing the same, or for the terms and conditions of any instrument pursuant to which Escrowee may act.

(c) The duties of Escrowee are purely ministerial. Escrowee shall not have any duties or responsibilities except those set forth in this Agreement and shall not incur any liability in acting upon any signature, notice, request, waiver, consent, receipt or other paper or document believed by Escrowee to be genuine, and Escrowee may assume that any person purporting to give it any notice on behalf of any party in accordance with the provisions hereof has been duly authorized to do so.

(d) Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and by and with the advice of counsel which may be selected by it. Escrowee shall have the right to assign all of its obligations hereunder to a third party reasonably acceptable to both Transferor and Transferee provided (a) Escrowee delivers the Deposit to such third party and (b) such third party assumes all of Escrowee's obligations hereunder in writing.

(e) Transferor and Transferee hereby jointly and severally agree to indemnify and save Escrowee harmless from and against any and all loss, damage, claim, liability, judgment and other cost and expense of every kind and nature which may be incurred by Escrowee by reason of its acceptance of, and its performance under, this Agreement (including,

NYC/169068.7                                      20

without limitation, reasonable attorneys' fees, disbursements and court costs), except in the case of Escrowee's own willful default or gross negligence.

    **21.02** This Article XXI shall survive Closing or the earlier termination of this Agreement.

[Signatures follow on next page]

21

**IN WITNESS WHEREOF,** the parties hereto have executed this Agreement as of the day and year first above written.

<u>**TRANSFEROR:**</u>

Liberty Village Associates Limited Partnership

By:     Savoy Senior Housing Corporation, general partner

       By: _____

          Name:

          Title:

By:     Savoy Liberty Village, LLC, limited partner

       By: _____

          Name:

          Title:

<u>**TRANSFEREE:**</u>

American Heritage Communities/Liberty Village, LLC

By: _____

   Name:

   Title:

## LIST OF EXHIBITS

**EXHIBIT A**      LEGAL DESCRIPTION OF REAL PROPERTY

**EXHIBIT A-1**  LEGAL DESCRIPTION OF ADJACENT PROPERTY

**EXHIBIT B**      INTENTIONALLY OMITTED

**EXHIBIT C**      TITLE COMMITMENT

**EXHIBIT D**      INTENTIONALL OMITTED

**EXHIBIT E**      FORM OF GENERAL ASSIGNMENT

**EXHIBIT F**      FORM OF OWNER'S AFFIDAVIT

**EXHIBIT G**      FORM OF BILL OF SALE

NYC/169068.7

## EXHIBIT A

## LEGAL DESCRIPTION OF REAL PROPERTY

**To be attached.**

## EXHIBIT A-1

## LEGAL DESCRIPTION OF ADJACENT PROPERTY

To be attached.

A-1-1

**EXHIBIT B**

**Intentionally omitted.**

**EXHIBIT C**

**TITLE COMMITMENT**

To be attached.

C-1

**EXHIBIT D**

**Intentionally omitted.**

NYC/169068.7                    **D-1**

**EXHIBIT E**

**FORM OF GENERAL ASSIGNMENT**

THIS GENERAL ASSIGNMENT (this Assignment) is made as of _____ ___, 2005

(the Effective Date) by and between _____, a _____ _____

_____ _____ (Assignor), and _____, a _____ _____

_____ _____ (Assignee).

For good and valuable consideration, the receipt and sufficiency of which are

acknowledged, Assignor sells, transfers and assigns unto Assignee all of Assignor's right, title

and interest in, to and under the following items, if any, relating to that certain real property

located in the _____, _____ and more particularly described in Schedule A

attached hereto and incorporated herein by this reference (the "Real Property"):

any transferable guarantees, governmental licenses, applications, approvals, certificates, permits, development orders, development rights and entitlements, and contractor warranties relating exclusively to the Real Property or any improvements located thereon, all to the extent assignable without the consent of third parties and any rights that Transferor has to the name of the Real Property (the Licenses).

Assignee accepts the foregoing assignment and agrees to assume, pay, perform and

discharge all obligations of Assignor in connection with the Licenses from and after the Effective

Date accruing on and after the Effective Date.

Assignee agrees to indemnify, protect, defend and hold Assignor harmless from and

against any and all claims, demands, liabilities, losses, costs, damages or expenses (including,

without limitation, reasonable attorneys' fees and costs) arising out of or resulting from any

breach or default by Assignee in connection with the Licenses from and after the Effective Date.

The provisions of this Assignment shall be binding upon, and shall inure to the benefit of,

the parties hereto and their respective successors and assigns.

NYC/169068.7                        E-1

Any party to this Agreement may deliver an executed copy of this Agreement by facsimile or other electronic transmission to the other party, and any such delivery shall have the same force and effect as delivery of an original, signed counterpart of this Agreement.

IN WITNESS WHEREOF, Assignor and Assignee have caused their duly authorized representatives to execute this Assignment as of the date first above written.

[insert signature blocks and schedules]

NYC/169068.7                                   2

**EXHIBIT F**

**FORM OF OWNER'S AFFIDAVIT**

STATE OF              )
                         ) ss:

COUNTY OF         )

_____, _____ of _____ ("Owner") the Owner of the premises described in Title Commitment No. _____ (the "Title Commitment") being first duly sworn, deposes and states as follows:

1.    That Owner is the owner of, or has an ownership interest in, the real estate described in <u>Schedule A</u> of the Title Commitment (the "Premises").

2.    That Owner has owned real estate described herein, continuously since _____, ____.

3.    That Owner's possession of the real estate has been peaceable and undisturbed, and that, to the undersigned's knowledge, title to the real estate has not been disputed or questioned during Owner's ownership of the Premises.

4.    That there has [not] been any new construction or major repair work performed on the real estate for at least [one hundred twenty-five (125)] days. That the Owner has not contracted for any labor to be supplied to the premises, or for any materials to be delivered thereto, that might become the subject of a lien upon the premises and that have not been paid for. That there are not any unpaid bills or claims for labor, services, or materials.

5.    The only tenants occupying the Premises are as set forth on Exhibit "A" annexed hereto.

                    BY:_____

Sworn to before me this
_____ day of _____, 200_

_____
(Notary Public)

NYC/169068.7                   F-1

**EXHIBIT G**

**FORM OF BILL OF SALE**

**BILL OF SALE**

_____, a _____ _____ _____ _____, having a principal office at _____ _____ ("Transferor"), in consideration of Ten Dollars ($10.00) and other good and valuable consideration paid to Transferor by _____, a _____ _____ _____ _____, having an address _____ _____, _____ _____, _____ ("Transferee"), the receipt and sufficiency of which are hereby acknowledged, hereby sells, conveys, assigns, transfers, delivers and sets over to Transferee all fixtures, furniture, furnishings, equipment, machinery, inventory, appliances and other articles of tangible personal property, if any, owned by Transferor and that are located at and/or used or usable in connection with the real property located at _____ and including but not limited to the items listed on Schedule A attached hereto and made a part hereof.

TO HAVE AND TO HOLD unto Transferee and its successors and assigns to its and their own use and benefit forever.

This Bill of Sale is made by Transferor without recourse and without any expressed or implied representation or warranty whatsoever.

IN WITNESS WHEREOF, Transferor has caused this Bill of Sale to be executed as of this _____ day of _____, 2005.

_____

By: _____, its

_____

By: _____
Name:
Title:

NYC/169068.7