# EXHIBIT J

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
In re                                                                    Chapter 11

LIBERTY VILLAGE ASSOCIATES LIMITED                    Case No. 04-11627  (ALG)
PARTNERSHIP,

                                        Debtor.
-----------------------------------------------------x

### FINDINGS OF FACT, CONCLUSIONS OF LAW, ORDER, AND FINAL JUDGMENT CONFIRMING FIRST PLAN OF LIQUIDATION

Liberty Village Associates Limited Partnership (the "Debtor"),[1] having filed with the

Court the "First Plan of Liquidation" (the "Plan") dated October 5, 2005 and the "Disclosure

Statement for First Plan of Liquidation" (the "Disclosure Statement"), dated October 5, 2005;

and by Order dated October 12, 2005 (the "Disclosure Statement Order"), this Court having (i)

approved the Disclosure Statement and (ii) scheduled a hearing for March 2, 2006 (the

"Confirmation Hearing") to consider confirmation of the Plan; and the (A) Notice of Date and

Time of (I) Hearing to Consider Confirmation of the Plan; (II) Deadline for Filing Ballots to

Accept or Reject the Plan; and (III) Deadline for Filing Objections to the Plan; (B) Order (I)

Approving Disclosure Statement; (II) Scheduling a Hearing on Confirmation of the Plan and

Approving Form of Notice Thereof and Related Notice Procedures; (III) Establishing Plan

Solicitation, Voting, and Vote Tabulation Procedures; and (IV) Approving Form of Ballot and

Instructions; (C) Disclosure Statement with Respect to First Plan of Liquidation (which included,

among other things, the Plan); (D) Letter of Transmittal from Arent Fox (both voting and non-

voting); and (E) Ballot, Instructions and a pre-addressed return envelope for Classes 1, 2 and 4

---

[1] Capitalized terms not otherwise defined herein have the meanings assigned to such terms in the First Plan of Liquidation dated October 5, 2005.

having been provided to all holders of claims against the Debtor as provided in the Disclosure Statement Order (collectively, the "Solicitation Materials"); and upon the affidavits of service of the Solicitation Materials; and the solicitation of acceptances from the Impaired Creditors having been performed in the manner required by the Disclosure Statement Order; and acceptances of the Plan having been received by the Debtor and the "Declaration of Robert Grossman, Certifying Voting On and Tabulation of Ballots Accepting and Rejecting the First Joint Plan of Liquidation Pursuant to Local Bankruptcy Rule 3018-1 with Respect to Ballots and Voting on the Plan" (the "Certification of Ballots") having been filed with this Court on February 13, 2006; and the Confirmation Hearing having been held before this Court on March 2, 2006; and at the Confirmation Hearing the Debtor having appeared by their counsel, Arent Fox PLLC and Community National Bank (the "Bank") having appeared by its counsel, Hunton & Williams LLP, in support of confirmation of the Plan and the Bank's objection having been resolved at the Confirmation Hearing, and upon the record and minutes taken at the Confirmation Hearing; and upon all prior proceedings held herein;

**NOW, THEREFORE,** based upon the Court's review of the Plan, the Certification of Ballots and with the Court and upon (i) all the evidence proffered or adduced and arguments of counsel made at the Confirmation Hearing and (ii) the entire record of this Chapter 11 case, and after due deliberation thereon and good cause appearing therefore;

### FINDINGS OF FACT AND CONCLUSIONS OF LAW[2]

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157, 1334(a), 1408 and 1409). This Court has jurisdiction over this chapter 11 case pursuant to 28 U.S.C. §§ 157

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. See Fed. R. Bankr. P. 7052.

and 1334. Venue is proper before the Court pursuant to 28 U.S.C. §§1408 and 1409.

Confirmation of the Plan is a core proceeding under 28 U.S.C. § 157(b)(2), and this Court has

exclusive jurisdiction to determine whether the Plan complies with the applicable provision of

the Bankruptcy Code and should be confirmed.

B.    Judicial Notice.  This Court takes judicial notice of the docket of this chapter 11

case maintained by the clerk of the Court and/or its duly-appointed agent, including, without

limitation, all pleadings and other documents filed, all orders entered, and all evidence and

arguments made, proffered or adduced at the hearings held before the Court during this chapter

11 case, including, without limitation, the hearing to consider the adequacy of the Disclosure

Statement.

C.    Burden of Proof.  The Debtor, as proponent of the Plan, has the burden of proving

the applicable elements and standards of section 1129 of the Bankruptcy Code by a

preponderance of the evidence and the Debtor has met the burden as further found and

determined herein.

D.    Transmittal and Mailing of Material; Notice.  The Solicitation Packages were

transmitted and served in compliance with the Disclosure Statement Order, the Bankruptcy

Code and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient.

Adequate and sufficient notice of the Confirmation Hearing and other dates and hearings

described in the Disclosure Statement Order was given in compliance with the Bankruptcy

Rules, the Bankruptcy Code and the Disclosure Statement Order, and no other or further notice

is or shall be required.

E.    Voting.  Votes to accept or reject the Plan have been solicited and tabulated fairly,

in good faith and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the

3

Disclosure Statement Order and industry practice.   All of the impaired classes of Claims voting

under the Plan have voted to accept the Plan, with the requisite holders (in number and amount)

of Classes 1, 2 and 4 having voted to accept the Plan.

     F.     <u>Plan Compliance with the Applicable Provisions of the Bankruptcy Code (11</u>

<u>U.S.C. §1129(a)(1))</u>.  As set forth below, the Plan complies with the applicable provisions of the

Bankruptcy Code thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

     i.     <u>Proper Classification of Claims and Interests (11 U.S.C. §§ 1122,</u> <u>1123(a)(1))</u>.  With the exception of Administrative Claims and claims based on Statutory Fees and Professional Fees, which need not be classified, the Plan designates five (5) classes of Claims and Interests. The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in such Class. Valid business, factual and/or legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, and, therefore, the Plan does not unfairly discriminate among holders of Claims or Interests. Thus, the Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

     ii.     <u>Specification of Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. The Plan specifies that Class 3 is not impaired, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

     iii.     <u>Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3))</u>.  The Plan designates Classes 1, 2 and 4 as impaired and specifies the treatment of Claims and interests in this Class, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

     iv.     <u>Equal Treatment Within Classes (11 U.S.C. § 1123(a)(4))</u>.  The Plan provides for the same treatment by the Debtor for each Claim or Interest in a particular Class unless the holder of a particular Claim or Interest in such Class has agreed to a less favorable treatment of its Claim or Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

     v.     <u>Implementation of Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan provides adequate and proper means for implementation of the Plan, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

vi.    Rule 3016(a) of the Bankruptcy Rules. The Plan is dated and identifies the entities submitting it, thereby satisfying Rule 3016(a) of the Bankruptcy Rules.

vii.    Rule 3016(c) of the Bankruptcy Rules. The Plan describes in specific and conspicuous italicized language all acts to be enjoined and identifies the entities that would be subject to the injunction.

G.    Debtor's Compliance with the Applicable Provisions of the Bankruptcy Code (11 U.S.C. §1129(a)(2)). The Debtor has complied with the applicable provisions of the Bankruptcy Code thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

i.    the Debtor is a proper Debtor under section 109 of the Bankruptcy Code and proper proponents of the Plan under section 1121(a) of the Bankruptcy Code;

ii.    the Debtor has complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by Orders of the Court; and

iii.    the Debtor has complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Disclosure Statement Order and the Solicitation Packages and in soliciting and tabulating votes on the Plan.

H.    Plan Proposed In Good Faith (11 U.S.C. §1129(a)(3)). The Debtor has proposed the Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the Bankruptcy Code. In determining that the Plan has been proposed in good faith, the Court has examined the totality of the circumstances surrounding the filing of this chapter 11 case and the formulation of the Plan.

I.    Payments for Services or Costs and Expenses (11 U.S.C. §1129(a)(4)). Except as otherwise provided or permitted by the Plan or any payment made or to be made by the Debtor for services or for costs and expenses in or in connection with this chapter 11 case, or in connection with the Plan and incident to these chapter 11 cases, have been approved by, or are

5

subject to the approval of, the Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

J.      No Rate Changes (11 U.S.C. §1129 (a)(6)).  The Plan does not provide for any rate changes.  Thus, section 1129 (a)(6) of the Bankruptcy Code is not applicable in the instant case.

K.      Best Interest of Creditors Test (11 U.S.C. §1129(a)(7)).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The evidence proffered or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence or challenged and (iii) establishes that each holder of a Claim or Interest in an impaired Class either (x) has accepted the Plan or (y) will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date of the Plan, that is not less than the amount that such holder would receive if the Debtor was liquidated under chapter 7 of the Bankruptcy Code.

L.      Treatment of Priority Claims (11 U.S.C. §1129(a)(9)).  The Plan's treatment of Allowed Administrative Claims and Allowed Priority Claims satisfies the requirements of sections 1129(a)(9)(A), (B) and (C) of the Bankruptcy Code, respectively, under the Plan.  Holders of Allowed Priority Claims under Sections 507(a) and 502(f) of the Bankruptcy Code will receive cash equal to the full amount of Allowed Priority Claims.  The Plan also provides for payment in full of Allowed Administrative Claims.

M.      Acceptance of at Least One Impaired Class (11 U.S.C. §1129(a)(10)).  Classes 1, 2 and 4 have each voted to accept the Plan, thereby satisfying section 1129(a)(10) of the Bankruptcy Code.

N.    <u>Feasibility (11 U.S.C. §1129(a)(11))</u>.  The Disclosure Statement and the evidence proffered or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence or challenged and (iii) establish that the Plan is feasible, thus satisfying the requirement of section 1129(a)(11) of the Bankruptcy Code.  In particular and without limitation, the Court's findings and conclusions stated below regarding the Plan Fund (defined below) establish and support the feasibility of the Plan.

O.    <u>Payment of Certain Fees (11 U.S.C. §1129(a)(12))</u>.  All fees payable on or before the Effective Date under 28 U.S.C. § 1930 either have been paid or will be paid ten days after the Effective Date pursuant to the Plan.  Accordingly, the Plan satisfies section 1129(a)(12) of the Bankruptcy Code.

P.    <u>Continuation of Retiree Benefits (11 U.S.C. §1129(a)(13))</u>.  The evidence proffered or adduced at the Confirmation Hearing establishes that the Debtor is not obligated, now or in the future, to pay retiree benefits.  Thus section 1129(a)(13) of the Bankruptcy Code is inapplicable to these chapter 11 cases.

Q.    <u>Only One Plan (11 U.S.C. §1129(c))</u>.  Other than the Plan (including previous versions thereof), no other plan has been filed in this chapter 11 case.  Accordingly, the requirements of section 1129(c) have been satisfied.

R.    <u>Principal Purpose of the Plan (11 U.S.C. §1129(d))</u>.  The principal purpose of the Plan, as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

S.    <u>Good Faith Solicitation (11 U.S.C. §1129(e))</u>. Based upon the record before this Court, the Debtor has solicited votes on the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code and are entitled to the protections afforded by

section 1129(e) of the Bankruptcy Code and the exculpatory and injunctive provisions set forth in the Plan (as limited by this Confirmation Order).

      T.     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases</u>.  Article V of the Plan governing the assumption and rejection of the executory contracts and unexpired leases satisfies the requirement of section 365(b) of the Bankruptcy Code.

      U.     <u>Releases, Exculpation and Injunctions</u>.  Based upon the facts and circumstances of this chapter 11 case, the release, exculpation and injunction provisions contained in the Plan are fair and equitable, are an essential component of the agreement among the parties in interest, and are in the best interests of the Debtor and its chapter 11 estate, and such provisions shall be effective and binding upon all persons and entities as provided in the Plan and this Confirmation Order, and are hereby approved.

      V.     <u>Satisfaction of Confirmation Requirements</u>.  The Plan satisfies the applicable requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

      W.     <u>Retention of Jurisdiction</u>.  The Court may properly retain jurisdiction over the matters set forth in Article X of the Plan.

      X.     <u>The Asset Sale and Plan Fund</u>.  As stated in the Disclosure Statement, pursuant to an agreement by and among the Debtor, Community National Bank (the "Bank"), and American Heritage Communities/ Liberty Village, LLC ("AHC"), AHC is acquiring the Project[3] free and clear of all liens except the liens of the Bank (the "Asset Sale").  Accordingly, pursuant to the Asset Sale, the Project (including the real estate plus all improvements thereon, as well as all plans, permits, and governmental approvals as more particularly set forth in Exhibit <u>A</u> annexed hereto) shall be transferred to American Heritage Communities/ Liberty Village, LLC ("AHC"),

---

[3]    The Project is defined in the Disclosure Statement as a full service senior retirement community to be constructed on 140 acres in Lynchburg, Virginia.

free and clear of all liens (including the Mechanics' Liens) except the liens of the Bank, including the Bank Note (which may be modified by agreement between the Bank and AHC) on the Effective Date. In consideration for this acquisition, AHC has agreed to provide the money for the plan fund (the "Plan Fund") which shall consist of: (a) monies previously provided by AHC in the approximate amount of $250,000.00 currently held in escrow by Arent Fox PLLC; (b) an amount equal to all court-approved Professional Fees, Administrative Claims, Priority Claims, and United States Trustee Fees that are owed through the date the Chapter 11 Case is closed, which amount shall be designated for payment of these fees and claims; and (c) an amount equal to either 20% of all Allowed Claims of Class 2 and Class 4 creditors or $1 million dollars, whichever is less, which amount shall be designated for payment to Class 2 and Class 4 creditors. The Plan Fund will also consist of (a) monies, if any, from the recovery from the Best/L.T. Falwell Litigation which will be prosecuted by the Debtor and (b) monies held by Todtman, Nachamie, Spizz & Johns, P.C. in the amount of $10,000.00 previously funded by AHC. Further, with respect to the Asset Sale:

        (a)     The Court has the substantive and procedural authority to approve the Asset Sale, including, among other things, transferring the Project free and clear of all liens, claims, encumbrances pursuant to Bankruptcy Code §363 upon the Effective Date.

        (b)     AHC is providing the funds for the Plan Fund to the Debtor, as reorganized under the Plan and this Confirmation Order (the "Reorganized Debtor"), in good faith, and AHC is entitled to all of the approvals and adjudications provided in this Confirmation Order in relation to the Asset Sale.

(c)    It is advantageous for the Reorganized Debtor to consummate the Asset Sale because it will provide the Plan Fund for distribution to Allowed Claims as provided for in this Plan.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** without limiting the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the applicable provisions of the Plan, that:

1.    The record of the Confirmation Hearing is closed.

2.    The findings of this Court as set forth above shall constitute findings of fact pursuant to Bankruptcy Rule 7052, which is applicable to these cases pursuant to Bankruptcy Rule 9014.

3.    The Debtor is hereby approved and appointed as the Disbursing Agent ("Disbursing Agent").

4.    In accordance with the relevant provisions of the Plan, and the priority in distribution required pursuant to § 507 of the Bankruptcy Code, the Disbursing Agent is authorized to disburse, issue and distribute, or cause to disburse, issue and distribute, monies to the holders of Allowed Claims in the Debtor's Chapter 11 case.

5.    Confirmation and Effective Date.  The Plan (a copy of which is annexed hereto as Exhibit B), is approved and confirmed under section 1129 of the Bankruptcy Code, as amended by this Confirmation Order.  The Effective Date of the Plan shall be May 15, 2006 subject to the conditions set forth in the Plan.

6.    Provisions of Plan and Order Nonseverable and Mutually Dependent.  The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent.

10

7.    <u>Plan Classification Controlling</u>.  The classification of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtor's creditors and equity holders in connection with voting on the Plan (i) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (ii) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims or Interests under the Plan for distribution purposes, and (iii) shall not be binding on the Debtor or its estate.

8.    <u>Binding Effect</u>.  Pursuant to section 1141 of the Bankruptcy Code, effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, and except as expressly provided in the Plan or this Confirmation Order, the provisions of the Plan (including the exhibits to, and all documents and agreements executed pursuant to, the Plan) and the Confirmation Order shall be binding on (i) the Debtor, (ii) all holders of Claims against and Interests in the Debtor, whether or not impaired under the Plan and whether or not, if impaired, such holders accepted the Plan and (iii) each person acquiring property under the Plan.

9.    <u>Injunction</u>.  Except as otherwise provided in the Plan or as expressly provided in this Confirmation Order, from and after the Confirmation Date all persons who have held, hold or may hold Claims against or Interests in the Debtor, including, without limitation, any of their present and future employees, agents, principals, shareholders, directors, partners, representatives, financial advisors, attorneys and accountants, and all affiliates or associates of such parties, are permanently enjoined from taking any of the following actions against the Debtor, the Debtor's estate, any of the parties set forth in this paragraph, or any of their respective properties on account of such Claims or Interests:  (a) commencing or continuing, in

11

any manner or in any place, any action or other proceeding; (b) enforcing, attaching, collecting

or recovering in any manner any judgment, award, decree or order; (c) creating, perfecting or

enforcing any Lien or encumbrance; and (d) commencing or continuing, in any manner or in any

place, any action that does not comply with or is inconsistent with the provisions of the Plan;

provided, however, that nothing contained herein shall preclude such persons from exercising

their rights pursuant to and consistent with the terms of the Plan; provided further, that (i)

notwithstanding anything to the contrary in the Plan or this Confirmation Order, confirmation of

the Plan shall not affect the setoff and recoupment rights of the United States, if any, in respect

of any future payments that may be payable to the Debtor, nor shall confirmation of the Plan

affect any defenses the Debtor may have to such setoff or recoupment rights, and (ii) all parties

remain liable under the Note, including the Debtor and Guarantor, and Savoy is not relieved

from any claim of the Bank, subject to any and all defenses now existing or which may arise in

the future other than the transactions contemplated under the Debtor's Plan, and (iii) nothing in

the Plan or this Confirmation Order shall be deemed to discharge, release, exculpate or relieve

any party from any liability arising under §§ 1104-1109 and 1342(d) of the Employee Retirement

Income Security Act of 1974, as amended.  Nothing in the Plan or this Confirmation Order shall

enjoin the United States Government or any of its agencies from pursuing any claim against any

person or entity other than the Debtor arising under (a) the Internal Revenue Code, or any state,

city or municipal tax code; (b) the environmental laws of the United States, any state city or

municipality; or (c) any criminal laws of the United States, any state, city or municipality, and no

non-debtor shall be released from any such liabilities.

     10.    Debtor's Release of AHC.  The Debtor hereby releases and forever discharges, as

of the Effective Date, AHC and its current and former parents, agents, directors, officers,

shareholders, members, employees, divisions, subsidiaries, affiliates, attorneys and their

successors and assigns ("RELEASEES") from any and all actions, claims, causes of action,

arbitrations, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties,

covenants, contracts, controversies, agreements, promises, variances, trespasses, damages,

judgments, extents, executions, claims, rights, proceedings and demands whatsoever, in law, at

common law, or equity, whether state or federal, contractual, legal, equitable or regulatory in

nature, known or unknown, suspected or unsuspected, disclosed or undisclosed, absolute or

contingent, based in any manner on events or circumstances prior to the date hereof which

against the RELEASEES the Debtor ever had, now have or hereafter can, shall or may have, for,

upon, or by reason of any matter, cause or thing from the beginning of the world to the date of

this Order.

      11.   <u>Transfer of Claims</u>.  Jacob Frydman, Savoy Senior Housing Corporation

("Savoy") [4] and Savoy Liberty Village, L.L.C. hereby agree to transfer any and all claims that

they may have against AHC or its affiliates to the Debtor upon entry of this confirmation order

(the "Transferred Claims").  The only party who has the right to bring the Transferred Claims is

a Chapter 7 Trustee.  The Transferred Claims will be released by the Debtor on the Effective

Date.  Mr. Frydman's claim for indemnification from AHC (the "Indemnification Claim") shall

not be transferred to the Debtor but shall be released on the Effective Date.  AHC does not admit

the validity of the Indemnification Claim.  Upon entry of this Order, mutual releases shall be

executed by the parties, held in escrow by Arent Fox PLLC, subject to an acceptable Escrow

Agreement, and released on the Effective Date.

---

[4]    Savoy is the Debtor's General Partner.

12.    <u>Continuation of Automatic Stay</u>. Except as otherwise provided in this

Confirmation Order, all injunctions or stays provided for in this chapter 11 case under sections

105, 362 or 525 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation

Date, shall remain in full force and effect until the Effective Date, and thereafter shall be

annulled.

13.    <u>Standstill Agreement with the Bank</u>. If AHC terminates the transaction to acquire

the Project prior to consummation of the Asset Sale or the Debtor is unable to consummate the

Asset Sale by April 15, 2006, and within 90 days after such earlier date (the "Grace Period") the

Debtor does not close on a similar transaction with another party acceptable to the Bank, then the

Bank shall receive relief from the automatic stay of § 362 of the Bankruptcy Code without

further order of the Court and the Bank shall be entitled to exercise all of its rights with respect

to its collateral under its loan agreements with the Debtor, including but not limited to its right to

proceed with the non-judicial foreclosure of the Project in Campbell County, Virginia, and any

related actions against the Debtor in the Circuit Court of Campbell County, Virginia. If the

Debtor, Savoy or Jacob Frydman ("Frydman") desire a longer period of time than the 90 days,

the Bank would agree not to enforce its rights for up to an additional ten (10) months, provided

that interest is paid to the Bank monthly, in advance, on the amounts outstanding under the Note.

14.    <u>Covenant Not to Sue</u>. The Debtor and/or its affiliates and/or its principals of the

Debtor or its affiliates covenant not to sue AHC and/or any of its potential investors during the

period from the entry of this Order to the Effective Date in relation to AHC's efforts to confirm

the Plan.

15.    <u>Rejected Contracts and Leases</u>. Except as otherwise provided in the Plan, on the

Effective Date, pursuant to section 365 of the Bankruptcy Code, all executory contracts will be

14

rejected. The entry of the Confirmation Order by the Court shall constitute approval of such rejection pursuant to sections 365 of the Bankruptcy Code, as of the Effective Date. **Notice of such rejection must be given to the counterparty of such rejected contract and the counterparty shall have 30 days from the date of such notice to file a proof of claim.**

16.    General Authorizations; Plan Modifications. Pursuant to section 1142(b) of the Bankruptcy Code, (i) the Debtor, and (ii) all other necessary parties are authorized and empowered to (x) execute and deliver any instrument, agreement or document and (y) perform any act that is necessary, desirable or required to comply with the terms and conditions of the Plan and consummation of the Plan, and are authorized and empowered, without limitation, to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instrument, and other agreements or documents created in connection with the Plan. After entry of this Confirmation Order, the Debtor may, without further order of the Court, make non-material amendments or modifications to the Plan or remedy any defect or omission or reconcile any inconsistency in the Plan, in such manner as may be necessary to carry out the purpose and intent of the Plan, as confirmed, **provided all such amendments and modifications are filed with the Court.**

17.    Corporate Action. Any corporate action required to be taken by the Debtor in respect of any of the matters provided or under the Plan and this Confirmation Order shall, as of the Effective Date, be deemed to have been taken and shall be effective as provided herein, and such corporate action shall be authorized and approved in all respects without any requirement of further action by general or limited partner of the Debtor.

18.    Exemption From Transfer Taxes. Pursuant to section 1146(c) of the Bankruptcy Code, any transfer from the Debtor or otherwise pursuant to the Plan, including but not limited to

the Asset Sale, shall not be subject to any stamp tax or similar tax, and all appropriate state or

local governmental officials or agents are hereby directed to forego the collection of any such tax

and to accept for filing and recordation any of the foregoing instruments or other documents

without the payment of any such tax.

19.    Bar Date for Administrative Claims.  Holders of Administrative Claims that have

not been paid shall file a request for payment of Administrative Claims with the Court and serve a

copy of such request upon counsel to the Debtor such that it is received no later than thirty (30)

days of the Effective Date (the "Effective Date").  The Debtor shall give notice of the Effective

Date **and of the Administrative Claim bar date** to all creditors by mail within three (3) business

days thereof.  If an Administrative Claim is not timely filed by the Administrative Bar Date then

such Administrative Claim shall be forever barred and shall not be enforceable against Debtor, its

successors, assigns or its property.  The foregoing shall not apply to the Professional Fee Claims.

An objection to an Administrative Claim filed pursuant to this provision must be filed within forty-

five (45) days following the Administrative Claims Bar Date.  The Debtor shall have the right to

seek an extension of the time to object.  The following persons or entities need not file a proof of

Administrative Claim:

> i.    any person who, or entity which, has already filed a proof of
> Administrative Claim against the Debtor with the clerk of the
> Court; and
>
> ii.    any holder of an Administrative Claim that has heretofore been
> **paid or** deemed Allowed under the Plan or been Allowed by Order
> of the Court.

~~20.~~    Professional Compensation and Reimbursement Claims.  Compensation and

approval of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code

shall be subject to the approval of the Bankruptcy Court.  ~~Final Fee Applications shall be filed by~~

~~all Professionals within thirty (30) days after the Effective Date.~~

16

21.    The Court shall rule on each request for payment of Professional Fees before the fees will be paid. For all Professional Fees, the Professional in question shall file and serve a properly noticed fee application and the Court shall rule on the application. Only the amount of fees allowed by the Court will be owed and required to paid under the Plan; provided that nothing herein shall be deemed a waiver by the Professionals of the unpaid portions of their Allowed but unpaid Professional Fee Claims.

22.    Except as otherwise provided by Order of the Court for a specific Professional, Professionals or other entities requesting compensation or reimbursement of expenses pursuant to sections 327, 328, 330, 331, 503(b) and 1103 of the Bankruptcy Code for services rendered prior to the Effective Date must file and serve, pursuant to the notice provisions of the Bankruptcy Code, an application for final allowance of compensation and reimbursement of expenses by no later than thirty (30) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Court. All parties requesting compensation or reimbursement of expenses that do not file such requests by the applicable bar date shall be forever barred from asserting such claims against the Debtor or its successors, assigns or its property. Any objection to Professional Fee Claims shall be filed on or before the date specified in the application for final compensation.

23.    Payment of Fees. All fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date. Payments after the Effective Date shall be made as required by statute and shall be paid by the Debtor.

24.    Failure to Consummate Plan. If the Effective Date does not occur, the Debtor may seek to have this Confirmation Order vacated and the Plan revoked and withdrawn provided,

17

however, that neither the vacation of the Confirmation Order nor the revocation or withdrawal of the

Plan shall affect the rights of the Bank as set forth in paragraph 13 above.

    25.    <u>Retention of Jurisdiction</u>.  Except as otherwise provided in the Plan, the Court

shall retain and have exclusive jurisdiction over any matter arising under the Bankruptcy Code,

arising in or related to this chapter 11 case and the Plan. The Court shall also have exclusive

jurisdiction:

        i.      to resolve any matters related to the rejection of any executory contract or unexpired lease to which the Debtor was a party or with respect to which the Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan;

        ii.     to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, transactions and other agreements or documents created in connection with the Plan;

        iii.    to determine any and all motions, adversary proceedings, applications and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Debtor after the Effective Date;

        iv.    to ensure that Distributions to Holders of Allowed Claims arc accomplished as provided in the Plan;

        v.     to hear and determine any timely objections to Administrative Claims or to proofs of Claims and Interests filed, both before and after the Effective Date, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate or establish the priority of, or secured or unsecured status of, any Claim, in whole or in part;

        vi.    to enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, reversed or vacated;

        iii.    to issue orders in aid of execution of the Plan;

vii.    to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Court, including the Confirmation Order;

viii.   to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date;

ix.     to hear and determine disputes arising in connection with or relating to the Plan, the interpretation, implementation or enforcement of the Plan, or the extent of any entity's obligations incurred in connection with or released under the Plan;

x.      to issue injunctions, enter and implement other orders or take such other actions as may be necessary or appropriate to restrain interference by any entity with consummation or enforcement of the Plan;

xi.     to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or the Disclosure Statement;

xii.    to hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

xiii.   to hear any other matter or for any purpose specified in the Confirmation Order that is not inconsistent with the Bankruptcy Code, including the allowance or disallowance and classification of late-filed proofs of claim in accordance with Rule 9006(b) of the Bankruptcy Rules;

xiv.    to enter a Final Decree closing this chapter 11 case; and

xv.     to hear and determine any matter relating to or arising out of any action or act taken or omission in connection with or related to the formulation, preparation, dissemination, implementation, administration confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

26.     <u>Acceptance by Governmental Units</u>.  Each and every federal, state and local governmental agency or department is hereby directed to accept any and all documents and

instruments necessary and appropriate to consummate the transactions contemplated by the Plan including, without limitation, documents and instruments for recording in county and state offices where any document may need to be filed in order to effectuate the Plan, including any documents executed by the Debtor.

27.    References to Plan Provisions.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed in its entirety.

28.    Confirmation Order Controlling.  If there is any conflict between the Plan and this Confirmation Order, the terms of this Confirmation Order shall control.

29.    Reversal. If any or all of the provisions of this Confirmation Order are hereafter reversed, modified or vacated by subsequent Order of this Court or any other court, such reversal, modification or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtor's receipt of written notice of any such Order. Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

30.    Applicable Non-Bankruptcy Law.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan, and the Plan Documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

31.     Rule 7062.  Notwithstanding Bankruptcy Rule 7062, this Order shall be effective and enforceable immediately upon entry.

32.     Exculpation.  Pursuant to Section 11.10 of the Plan, neither the Debtor nor any of its respective present or former members, partners, officers, directors, employees, advisors, or attorneys shall have or incur any liability to any Holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, including, without limitation, the formulating, negotiating or implementing of the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct, and in all respects such parties shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities in the Chapter 11 Case and under the Plan.

~~33.     References to Plan Provisions.  The failure to specifically include or reference to any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Plan be confirmed and approved in its entirety.~~

34.     No Waiver of Rights.  Unless otherwise agreed to in writing, no distribution on account of any Claim, whether allowed on or after the Effective Date shall be deemed to waive the rights of the Debtor in connection with any causes of action against the Holder of any Claim receiving such distribution, including without limitation, any rights of action or any other causes of action under Chapter 5 of the Bankruptcy Code.

35.    <u>Technical Adjustments</u>.  Prior to the Effective Date, the Debtor, with the

reasonable consent of the Bank and AHC may make appropriate technical adjustments and

modifications to the Plan without further order or approval of this Bankruptcy Court, provided

that such technical adjustments and modifications do not adversely affect in a material way the

treatment of Holders of Claims or Interests **and are filed with the Court**.

36.    <u>Binding Effect</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code

and the provisions of this Confirmation Order, the Plan shall apply and be enforceable

notwithstanding any otherwise applicable non-bankruptcy law.


Dated:  New York, New York
        March 6, 2006


                                    _*/s/ Allan L. Gropper*_____
                                    UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT A

Assets also being transferred to AHC by non-debtor Savoy and Debtor, as applicable, which are integral to the success of the Project include:

1.  Exclusivity Enforcement Rights under Section 10.13 of the Partnership Agreement to prevent TRBC Ministries from engaging in any business related to a Senior Housing Community (as defined in the Partnership Agreement) located within 25 miles of Lynchburg, Virginia and a waiver by Savoy of its Exclusivity Enforcement Rights.

2.  The agreement between Savoy, the Debtor and TRBC Ministries contained in Section 6.05 of the Partnership Agreement relating to the obligation of TRBC Ministries to market the Project.

The definition of the Project as provided in the Plan, which Project is being transferred by Debtor to AHC, shall also include:

(i) a parcel of land at Liberty Village, 5700 Candlers Mountain Road, Lynchburg, Virginia and comprised of approximately 140 acres together with any improvements thereon are referred to herein collectively as the **"Parcel 1"**), (ii) an undeveloped parcel of land located adjacent to Parcel 1 and comprised of approximately 12 acres, **("Parcel 2"**; Parcel 1 and Parcel 2 being collectively referred to herein as the **"Real Property"**), (iii) all furniture, fixtures, and equipment, located if any, owned by Debtor and located at Parcel 1, (iv) copies of architectural and civil drawings, plans and specifications, surveys and environmental reports in Debtor's possession, related to the Real Property or the improvements thereon along, if any, and (v) licenses, authorizations, permits and approvals issued by any governmental authority and relating to Debtor's ownership and operation of the Real Property, if any.

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

In re

LIBERTY VILLAGE ASSOCIATES
LIMITED PARTNERSHIP

      Debtor.

Chapter 11

Case No. 04-11627-ALG

---

## FIRST PLAN OF LIQUIDATION OF
## DEBTOR LIBERTY VILLAGE ASSOCIATES LIMITED PARTNERSHIP

ARENT FOX PLLC
Robert E. Grossman (RG-3602)
Beth Green Kibel (BG-1826)
1675 Broadway, 32nd Floor
New York, NY 10019
phone: (212) 484-3900
fax: (212) 484-3990

           Attorneys for the Debtor and Debtor-in-Possession

October 5, 2005

NYC/226873.7

Liberty Village Associates Limited Partnership is the debtor-in-possession (the "Debtor") in this Chapter 11 bankruptcy case pending before the United States Bankruptcy Court for the Southern District of New York. This document is the First Plan of Liquidation (the "Plan") proposed by the Debtor. Sent to you in the same envelope as this document is the Disclosure Statement which has been approved by the United States Bankruptcy Court for the Southern District of New York (the "Court"), and which is provided to help you understand the Plan.

Pursuant to an agreement with between Debtor, Community National Bank (the "Bank"), and American Heritage Communities/ Liberty Village, LLC ("AHC"), AHC is acquiring the Project free and clear of all liens except the liens of the Bank. Accordingly, the Project (including the real estate plus all improvements thereon, as well as all plans, permits, and governmental approvals) shall be transferred to American Heritage Communities/ Liberty Village, LLC ("AHC"), free and clear of all liens (including the Mechanics' Liens) except the liens of the Bank, including the Bank Note (which may be modified by agreement between the Bank and AHC.)[1] In consideration for this acquisition, AHC has agreed to provide the money for the plan fund (the "Plan Fund").

This is a liquidating plan. In other words, the Debtor seeks to accomplish payments under the Plan by placing monies contributed to the Estate by American Heritage Communities/ Liberty Village, LLC ("AHC") in a fund, from which creditors will be paid some of the amounts owed by the Debtor to each such creditor. In addition, the Debtor shall continue to prosecute the Best/L.T. Falwell Litigation as described below. Any such recovery from the Best/L.T. Falwell Litigation will be applied as a set-off to the outstanding claims filed by the parties to the Best/L.T. Falwell Litigation. If any amount of the recovery in the Best/L.T. Falwell Litigation remains following the set-off described above, the remainder of the recovery in the Best/L.T. Falwell Litigation will be deposited into the Plan Fund for pro rata distribution to creditors pursuant to the terms of the Plan. The Effective Date of the proposed Plan is as defined herein.

## Article I

## DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF TIME AND GOVERNING LAW

### A. Scope of Definitions; Rules of Construction

For purposes of this Plan, except as expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

---

[1]  There will not be a true modification of the Bank Note, but an assumption by AHC of part of the debt through three new notes.

## B. Definitions

"**Administrative Claim**" means a Claim for payment of an administrative expense of a kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to section 507(a)(1) of the Bankruptcy Code, including, but not limited to, (a) the actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Estate and operating the business of the Debtor rendered after the commencement of the Chapter 11 Case, (b) Professional Fee Claims; and (c) all Allowed Claims that are entitled to be treated as Administrative Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2)(A) of the Bankruptcy Code.

"**Affiliate**" means any Person who, directly or indirectly, is in control of, is controlled by or is under common control with the party for whom an affiliate is being determined.

"**AHC**" means American Heritage Communities/Liberty Village, LLC, a Virginia limited liability company, with its principal place of business at 3 College Avenue, Suite 3, Frederick, Maryland 21701, and/or its designee or Affiliate.

"**Allowed Claim**" means a Claim or any portion thereof (a) that has been allowed by a Final Order, or (b) as to which, on or by the Effective Date, (i) no proof of claim has been filed with the Bankruptcy Court and (ii) the liquidated and noncontingent amount of which is Scheduled, other than a Claim that is Scheduled at zero, in an unknown amount, or as disputed, or (c) for which a proof of claim in a liquidated amount has been timely filed with the Bankruptcy Court pursuant to the Bankruptcy Code, any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and as to which either (i) no objection to its allowance has been filed within the periods of limitation fixed by the Plan, the Bankruptcy Code or by any order of the Bankruptcy Court or (ii) any objection to its allowance has been settled or withdrawn, or has been denied by a Final Order, or (d) that is expressly allowed in this Plan.

"**Allowed Class . . . Claim**" means an Allowed Claim in the particular Class described.

"**Ballots**" means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in Section 3.1 of this Plan, in connection with the solicitation of acceptances of the Plan.

"**Bank**" means Community National Bank, a Virginia corporation with its principal place of business at 1300 Kings Mountain Road, Martinsville, Virginia 24112.

"**Bank Claim**" means the Claim filed by the Bank.

"**Bank Note**" see Note.

"**Bank Litigation**" means the adversary proceeding filed by the Debtor against the Bank, styled *Liberty Village Associates Limited Partnership v. Community National Bank, et al.*, pending in the United States Bankruptcy Court for the Southern District of New York as Case No.: 04-2956-ALG.

- 2 -

"**Bankruptcy Code**" means the Bankruptcy Reform Act of 1978, as codified in title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as now in effect or hereafter amended.

"**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York, or such other court as may have jurisdiction over the Chapter 11 Case.

"**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the Official Bankruptcy Forms, as amended, the Federal Rules of Civil Procedure, as amended, as applicable to the Chapter 11 Case or proceedings therein, and the Local Rules of the Bankruptcy Court, as applicable to the Chapter 11 Case or proceedings therein, as the case may be.

"**Bar Date(s)**" means August 2, 2004 and September 7, 2004 the dates designated by the Bankruptcy Court as the last dates for filing proofs of Claim or Interest against the Debtor.

"**Best/L.T. Falwell Litigation**" means the adversary proceeding filed by the Debtor against the Best G.C., Inc. and Lewis T. Falwell, styled *Liberty Village Associates Limited Partnership v. Best G.C., Inc. a/k/a Best Grading and Lewis T. Falwell*, pending in the United States Bankruptcy Court for the Southern District of New York as Case No.: 04-4404-ALG

"**Best/L.T. Falwell Litigation Recovery**" means any and all amounts the Debtor is awarded by the Court as a final resolution of the Best/L.T. Falwell Litigation.

"**Business Day**" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Fed. R. Bankr. P. 9006(a)), on which commercial banks are open for business in New York, New York.

"**Cash**" means legal tender of the United States or equivalents thereof.

"**Chapter 11 Case**" means the chapter 11 case of the Debtor.

"**Claim**" means a claim against the Debtor, whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

"**Claims Objection Deadline**" means the last day for filing objections to Disputed Claims, which day shall be ninety (90) days after the Effective Date, unless such date is extended by the Bankruptcy Court upon request by the Debtor.

"**Class**" means a category of holders of Claims or Interests, as described in Article II of this Plan.

"**Collateral**" means any property or interest in property of the Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable law.

"**Confirmation**" means entry by the Bankruptcy Court of the Confirmation Order.

- 3 -

"**Confirmation Date**" means the date of entry by the clerk of the Bankruptcy Court of the Confirmation Order.

"**Confirmation Hearing**" means the hearing to consider confirmation of the Plan under section 1128 of the Bankruptcy Code.

"**Confirmation Order**" means the order entered by the Bankruptcy Court confirming the Plan.

"**Creditor**" means any Person who holds a Claim against the Debtor.

"**Cure**" means the distribution of Cash from the Plan Fund, or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

"**Debtor**" means Liberty Village Associates Limited Partnership in its capacity as debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

"**Disclosure Statement**" means the written disclosure statement that relates to the Plan, as amended, supplemented, or modified from time to time, and that is prepared and distributed in accordance with section 1125 of the Bankruptcy Code and Fed. R. Bankr. P. 3018.

"**Disbursing Agent**" means the Debtor or any party designated by the Debtor to serve as disbursing agent under the Plan.

"**Disputed Claim**" means any Claim that has not been Allowed pursuant to the Plan or a Final Order of the Bankruptcy Court, and

(a) if no Proof of Claim has been filed by the applicable Bar Date, a Claim which has been listed on the Schedules as unliquidated, contingent, or disputed, or in zero or unknown amount, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court;

(b) if a Proof of Claim has been filed by the applicable Bar Date, a Claim designated on such Proof of Claim in zero or unknown amount, and which has not been resolved by written agreement of the parties or an order of the Bankruptcy Court;

(c) if a Proof of Claim has been filed by the applicable Bar Date (i) a Claim designated on such Proof of Claim as unliquidated, contingent or disputed; and (ii) as to which a Debtor has timely filed an objection or request for estimation in accordance with the Plan, the Bankruptcy Code, the Bankruptcy Rules, and any orders of the Bankruptcy Court, or which is otherwise disputed by the Debtor in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn, or determined by a Final Order;

- 4 -

(d) for which a Proof of Claim was required to be filed by order of the Bankruptcy Court, but as to which a Proof of Claim was not timely or properly filed;

(e) or that is disputed in accordance with the provisions of this Plan.

"**Disputed Claim Amount**" means (a) if a liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) the liquidated amount set forth in the Proof of Claim relating to the Disputed Claim; (ii) an amount agreed to by the Debtor and the holder of such Disputed Claim; or  (iii) if a request for estimation is filed by the Debtor, the amount at which such Claim is estimated by the Bankruptcy Court; (b) if no liquidated amount is set forth in the Proof of Claim relating to a Disputed Claim, (i) an amount agreed to by the Debtor and the holder of such Disputed Claim or (ii) the amount estimated by the Bankruptcy Court with respect to such Disputed Claim; or (c) if the Claim was listed on the Schedules as unliquidated, contingent or disputed and no Proof of Claim was filed, or deemed to have been filed, by the applicable Bar Date and the Claim has not been resolved by written agreement of the parties or an order of the Bankruptcy Court.

"**Distribution Date**" means the date, occurring as soon as practicable after the Effective Date, upon which distributions are made by the Debtor, to holders of Allowed Claims entitled to receive distributions under this Plan.

"**Distribution Record Date**" means the record date for purposes of making distributions under the Plan on account of Allowed Claims, which date shall be the Confirmation Date or such other date designated in the Confirmation Order.

"**Effective Date**" means the Business Day on which all conditions to the consummation of the Plan as set forth in Article IX of this Plan have been satisfied or waived as provided in Section 9.3 of this Plan and is the effective date of the Plan.

"**Estate**" means the estate of the Debtor in the Chapter 11 Case created pursuant to section 541 of the Bankruptcy Code.

"**Face Amount**" means (a) when used in reference to a Disputed Claim, the full stated amount claimed by the holder of such Claim in any proof of Claim timely filed with the Bankruptcy Court or otherwise deemed timely filed by any Final Order of the Bankruptcy Court or other applicable bankruptcy law, and (b) when used in reference to an Allowed Claim, the allowed amount of such Claim.

"**Final Order**" means an order or judgment, the operation or effect of which has not been reversed or stayed, is no longer subject to appeal, *certiorari* proceeding or other proceeding for review, reargument, or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review, reargument, or rehearing has been requested or is then pending and the time to file any such appeal, *certiorari* proceeding or other proceeding for review, reargument, or rehearing has expired or as to which any right to appeal, petition for *certiorari*, reargue, or seek rehearing shall have been waived in writing in form and substance satisfactory to the Debtor.

- 5 -

"**General Unsecured Claim**" means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Other Priority Claim, Bank Claim, Mechanics' Lien Claim, or Subordinated Claim.

"**Governmental Authorities**" means any government of any nation, state or other political subdivision thereof and any entity exercising executive, legislative, judicial, regulatory or administrative functions of or pertaining to government, and includes the Bankruptcy Court.

"**Guarantor**" shall mean Jacob Frydman.

"**Guaranty**" means that certain guaranty executed on May 7, 2001 by Jacob Frydman in favor of CNB.

"**Impaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Lien**" means a charge against or interest in property to secure payment of a debt or performance of an obligation.

"**Litigation Claims**" means the claims, rights of action, suits, or proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any Person, which are to be retained by the Debtor pursuant to Article VII and VIII and Section 4.7 of this Plan.

"**Local Rules**" means the Local Rules of the United States Bankruptcy Court for the Southern District of New York.

"**Mechanics' Liens**" means any lien asserted against the assets of the Estate and that purports to comply with the requirements of VA. CODE ANN. § 43-3 (Michie 2004).

"**Mechanics' Lien Claim**" means any claim for a lien asserted against the assets of the Estate and that purports to comply with the requirements of VA. CODE ANN. § 43-3 (Michie 2004).

"**Net Available Unsecured Creditor Proceeds**" means all proceeds of the Plan Fund remaining after payment in full of all Allowed Mechanics' Lien Claims, Cure payments, and any other costs and expenses related to the consummation and implementation of this Plan.

"**Note**" means the May 7, 2001 Commercial Note, Addenda and Security Agreement by and between the Bank and the Debtor, with a face amount of twenty million dollars ($20,000,000) and a maturity date of June 1, 2006.

"**Other Priority Claim**" means a Claim entitled to priority pursuant to section 507(a) of the Bankruptcy Code other than a Priority Tax Claim or an Administrative Claim.

"**Partnership Agreement**" means the Limited Partnership Agreement of Liberty Village Associates Limited Partnership among Savoy Senior Housing Corporation as General Partner,

- 6 -

Savoy Liberty Village, LLC as Limited Partner, and TRBC Ministries, LLC as Limited Partner, dated April 14, 2000.

"**Person**" means Person as defined in section 101(41) of the Bankruptcy Code.

"**Petition Date**" means March 11, 2004.

"**Plan**" means the Debtor's Plan of Liquidation, as amended, supplemented, or modified from time to time.

"**Plan Exhibit**" means any exhibit or schedule attached hereto.

"**Plan Fund**" means: (i) the Cash consideration provided to the Estate by AHC, which shall consist of: (a) an amount equal to all Professional Fees, Administrative Claims, Priority Claims, and United States Trustee Fees that are owed through the date the Bankruptcy Case is closed, which amount shall be designated for payment of these fees and claims; and (b) an amount equal to either 20% of all Allowed Claims of Class 2 and Class 4 creditors or $1 million dollars, whichever is less, which amount shall be designated for payment to Class 2 and Class 4 creditors, and (ii) the recovery from the Best/L.T. Falwell Litigation (after a set-off is applied as described herein).

"**Plan Proponent**" means the Debtor.

"**Priority Tax Claim**" means a Claim that is entitled to priority pursuant to section 507(a)(8) of the Bankruptcy Code.

"**Professional**" means any professional employed in the Chapter 11 Case pursuant to sections 327 or 1103 of the Bankruptcy Code or otherwise and any professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

"**Professional Fee Claim**" means a Claim of a Professional for compensation or reimbursement of costs and expenses relating to services rendered after the Petition Date and prior to and including the Effective Date.

"**Pro Rata**" means, at any time, the proportion that the Face Amount of a Claim in a particular Class bears to the aggregate Face Amount of all Claims (including Disputed Claims) in such Class, unless the Plan provides otherwise.

"**Project**" means the full service retirement community that was to be constructed on 140 acres on top of Candler Mountain in Lynchburg, Virginia, including the real estate and all improvements thereon, as well as all plans, permits, and governmental approvals.

"**Proof of Claim**" means the proof of claim that must be filed by a holder of an Impaired Unsecured Claim by the Bar Date pursuant to section 501 of the Bankruptcy Code.

"**Savoy**" means Savoy Senior Housing Corporation.

- 7 -

"**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs, if any, filed in the Bankruptcy Court by the Debtor as such schedules or statements as may be amended or supplemented from time to time in accordance with Fed. R. Bankr. P. 1009 or orders of the Bankruptcy Court.

"**Secured Claim**" means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.  For purposes of classification and treatment, the definition of Secured Claim shall exclude the Bank Claim.

"**Standstill Agreement**" means that certain agreement dated as of September ___, 2005, between Community National Bank, on behalf of itself and the participating banks, Jacob Frydman, and Savoy Senior Housing Corporation.

"**Unimpaired**" means, when used with reference to a Claim or Interest, a Claim or Interest that is not impaired within the meaning of section 1124 of the Bankruptcy Code.

"**Unimpaired Claim**" means a Claim that is not an Impaired Claim.

"**Voting Record Date**" means the voting record date for voting to accept or reject this Plan, as determined by order of the Bankruptcy Court.

## C.  Rules of Interpretation

For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, or other agreement or documents being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in the Plan to sections, articles, schedules, and exhibits are references to sections, articles, schedules, and exhibits of or to the Plan, (d) the words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan, (e) captions and headings to articles and sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan, and (f) the rules of construction set forth in section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

## D.  Computation of Time

In computing any period of time prescribed or allowed by the Plan, the provisions of Fed. R. Bankr. P. 9006(a) shall apply.

## E.  Governing Law

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of New York shall govern the

construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan. The laws of the Commonwealth of Virginia will govern all disputes involving Mechanics' Lien Claims asserted against the real or personal property owned by the Debtor.

## Article II

## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

### 2.1 Unclassified Claims.

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified, and the respective treatment of such unclassified claims is set forth immediately below.

#### (a) Administrative Claims

Each holder of an Administrative Claim shall be paid from the Plan Fund in full satisfaction, settlement, release, and discharge of and in exchange for such Administrative Claim Cash equal to the unpaid portion of such Administrative Claim.

#### (b) Priority Tax Claims

Each holder of a Priority Tax Claim shall be paid from the Plan Fund in full satisfaction, settlement, release, and discharge of such claim.

#### (c) Fees Owing Pursuant to 28 U.S.C. § 1930(a)

All outstanding fees owing pursuant to 28 U.S.C. § 1930(a) due and owing as of the Confirmation Date shall be paid from the Plan Fund. After Confirmation, AHC shall pay such fees in full until a final decree is entered closing this case.

### 2.2 Classified Claims and Interests.

**Summary.**

The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, confirmation, and distribution pursuant to the Plan and pursuant to §§ 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Interest shall be deemed classified in a particular Class only to the extent that the Claim or Interest qualifies for the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Interest qualifies for the description of such different Class. A Claim or Interest is in a particular Class only to the extent that such Claim or Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date.

NYC/226873.7

(a) **The classification of Claims and Interests against the Debtor pursuant to this Plan is as follows:**

| | | Class | Status | Voting Rights |
|---|---|---|---|---|
| Class 1 | -- | Bank Claim | Impaired | entitled to vote |
| Class 2 | -- | Mechanics' Lien Claims | Impaired | entitled to vote |
| Class 3 | -- | Other Priority Claims | Unimpaired | not entitled to vote |
| Class 4 | -- | General Unsecured Claims | Impaired | entitled to vote |
| Class 5 | -- | Interests and Subordinated Claims | Impaired | not entitled to vote |

**2.3 Classification and Treatment of Claims against Debtor.**

(a) Class 1 –Bank Claim

(i) **Classification:** Class 1 consists of the Bank Claim against the Debtor.

(ii) **Treatment:** The Debtor will transfer the Property to AHC, subject to the liens of the Bank, including the existing Note. AHC will assume liability for the Note pursuant to a separate agreement that AHC shall reach with the Bank. AHC is only assuming part of the obligations under the Bank Note through three new notes, and the Debtor and the Guarantor shall remain liable to the Bank under the Bank Note, subject to any and all defenses now existing or which may arise in the future other than the transactions contemplated under the Debtor's Plan.

(iii) **Voting:** Class 1 is impaired and Class 1 is entitled to vote to accept or reject the Plan. However, the Bank has agreed to vote in favor of the Plan if: (a) the Bank is able to reach an agreement with AHC regarding a modification of the Bank Note; (b) the Effective Date is conditioned on the Bank and AHC signing definitive loan documents; (c) the execution of the Standstill Agreement; and (d) the Debtor and the Guarantor shall remain liable to the Bank under the Bank Note, subject to any and all defenses now existing or which may arise in the future other than the transactions contemplated under the Debtor's Plan.

(b) Class 2 – Mechanics' Lien Claims

(i) **Classification:** Class 2 consists of all Mechanics' Lien Claims against the Debtor. The Project will be transferred to AHC free and clear of Mechanics' Liens'; all Mechanics' Lien Claims shall attach to the amounts designated for payment to Class 2 and Class 4 creditors in the Plan Fund.

- 10 -

NYC/226873.7

(ii)    **Treatment:**  On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date, (ii) the date such Claim becomes an Allowed Class 2 Claim, or (iii) the date such Class 2 Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Class 2 Claim, each holder of any Allowed Class 2 Claim shall receive, its pro rata share of Cash, from the Plan Fund, or (y) such other treatment as to which the Debtor and such holder shall have agreed upon in writing.

(iii)    **Voting.**  Class 2 is impaired and is entitled to vote to accept or reject the Plan.

(c) Class 3 -- Other Priority Claims against the Debtor

(i)    **Classification:**  Class 3 consists of all Other Priority Claims against the Debtor.

(ii)    **Treatment:**  On the Confirmation Date, AHC shall pay each holder of an Other Priority Claim in full in satisfaction, settlement, release, and discharge of such claim.

(iii)    **Voting:**  Class 3 is not impaired and the holders of Allowed Class 3 Claims are conclusively deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, the holders of Allowed Class 3 Claims are not entitled to vote to accept or reject the Plan.

(d) Class 4 -- General Unsecured Claims.

(i)    **Classification:**  Class 4 consists of all General Unsecured Claims against the Debtor.

(ii)    **Treatment:**  On, or as soon as reasonably practicable after, the latest of (i) the Distribution Date, (ii) the date such Claim becomes an Allowed Class 4 Claim, or (iii) the date such Class 4 Claim becomes payable pursuant to any agreement between the Debtor and the holder of such Class 4 Claim, each holder of any Allowed Class 4 Claim shall receive, its pro rata share of Cash, from the Plan Fund, or (y) such other treatment as to which the Debtor and such holder shall have agreed upon in writing.

(iii)    **Voting:**  Class 4 is impaired and is entitled to vote to accept or reject the Plan.

(e) Class 5 -- Interests and Subordinated Claims.

(i)    **Classification:**  Class 5 consists of all Interests and Subordinated Claims against the Debtor.

(ii)    **Treatment:**  The holders of Class 5 Interests and Subordinated Claims against the Debtor shall not receive a distribution under the Plan.

- 11 -

(iii)    **Voting**.  Class 5 will be deemed to have voted against confirmation of this Plan.

### 2.4 Reservation of Rights Regarding Claims.

Except as otherwise explicitly provided in the Plan and the Standstill Agreement, nothing shall affect the Debtor's rights and defenses, both legal and equitable, with respect to any Claims, including, but not limited to, all rights with respect to legal and equitable defenses to alleged rights of setoff or recoupment.

## Article III

## ACCEPTANCE OR REJECTION OF THE PLAN

### 3.1 Impaired Classes of Claims and Interests Entitled to Vote.

The votes of holder of Claims in Classes 1, 2, and 4 will be solicited with respect to this Plan.  Holders of Class 5 Interests and Subordinated Claims against the Debtor will not be entitled to vote on the Plan.

### 3.2 Acceptance by an Impaired Class.

In accordance with section 1126(c) of the Bankruptcy Code and except as provided in section 1126(e) of the Bankruptcy Code, an Impaired Class of Claims shall have accepted the Plan if the Plan is accepted by the holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the Allowed Claims of such Class that have timely and properly voted to accept or reject the Plan.

### 3.3 Presumed Acceptances by Unimpaired Classes.

Class 3 is Unimpaired by the Plan.  Under section 1126(f) of the Bankruptcy Code, such Claim holders are conclusively presumed to accept the Plan, and the votes of such Claim holders will not be solicited.

### 3.4 Summary of Classes Voting on the Plan.

The votes of holders of Claims in Classes 1, 2, and 4 will be solicited with respect to this Plan.

### 3.5 Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code.

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan, the Plan Proponent will request confirmation of the Plan, as it may be modified from time to time, under section 1129(b) of the Bankruptcy Code.

- 12 -

## Article IV

## MEANS FOR IMPLEMENTATION OF THE PLAN

### 4.1 Funding of the Plan Fund on the Effective Date.

AHC shall provide the money for the Plan Fund, which will be held by the Debtor in escrow for the purposes of and pursuant to the terms of the Plan. As the consideration for which AHC is providing the money for the Plan Fund, the Project shall be transferred to AHC subject to the Bank Note and the Bank Liens, and the retention of liability under the Bank Note by all parties who may be liable under the Bank Note including the Debtor and the Guarantor, subject to any and all defenses now existing or which may arise in the future other than the transactions contemplated under the Debtor's Plan.

The Debtor has authority to transfer the Project pursuant to this Plan, or in the alternative, pursuant to Section 363 of the Bankruptcy Code, and the transfer is free and clear of all liens except the Bank's liens.

### 4.2 Sources for Plan Distributions.

(a) Distributions

All Cash necessary for the Debtor or the Disbursing Agent to make disbursements pursuant to the Plan shall be obtained from the Plan Fund.

(b) Distribution of Best/L.T. Falwell Recovery

The Debtor shall continue to prosecute the Best/L.T. Falwell Litigation. Any Best/L.T. Falwell Litigation Recovery will be applied as a set-off to the outstanding Claims filed by the parties to the Best/L.T. Falwell Litigation. If any amount of the Best/L.T. Falwell Litigation Recovery remains following the set-off described above, the remainder of the Best/L.T. Falwell Litigation Recovery will be deposited into the Plan Fund for distribution pursuant to the terms of this Plan.

### 4.3 Effectuating Documents; Further Transactions

Any officer or General Partner of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 4.4 Section 1146 Exemption From Certain Transfer Taxes

Pursuant to section 1146(c) of the Bankruptcy Code, any issuance, transfer, or exchange of assets under the Plan, or the making or delivery of an instrument of transfer under this Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment, and the Confirmation Order shall direct the

- 13 -

appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

### 4.5 Injunction Related to Releases

As further provided in Article 11.9 of this Plan, the Confirmation Order will enjoin the prosecution, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, liability or interest released, discharged or terminated pursuant to the Plan.

### 4.6 Preservation Of Rights Of Action

Except as otherwise provided in this Plan, the Confirmation Order, the Standstill Agreement, or in any contract, instrument, release, indenture or other agreement entered into in connection with the Plan, in accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce, sue on, settle, or compromise all Litigation Claims that the Debtor or the Estate may hold against any Person or entity, including, but not limited to, the Best/L.T. Falwell Litigation.

## Article V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 5.1 Executory Contracts And Leases

All executory contracts and unexpired leases to which the Debtor is a party are hereby rejected, except for an executory contract or unexpired lease that (a) has been assumed or rejected pursuant to a Final Order of the Bankruptcy Court, or (b) is the subject of a separate motion filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

### 5.2 Rejection Claims

In the event that the rejection of an executory contract or unexpired lease results in damages to the non-Debtor party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced filed by a proof of claim, shall be forever barred and shall not be enforceable against the Debtor, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before the date that is thirty (30) days after the later of the Effective Date or the date of such rejection.

## Article VI

## PROVISIONS GOVERNING DISTRIBUTIONS

### 6.1 Distributions For Claims Allowed As Of The Effective Date

Except as otherwise provided in this Plan or as ordered by the Bankruptcy Court, all distributions to holders of Allowed Claims as of the Effective Date shall be made on the

- 14 -

NYC/226873.7

Distribution Date. Distributions on account of Claims that first become Allowed Claims after the Effective Date shall be made pursuant to Section 4.3 of this Plan.

### 6.2 Interest On Claims

Unless otherwise specifically provided for in this Plan or the Confirmation Order, or required by applicable bankruptcy law, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim shall be entitled to interest accruing on or after the Petition Date on any Claim. Interest shall not accrue or be paid upon any Disputed Claim in respect of the period from the Petition Date to the date a final distribution is made thereon if and after such Disputed Claim becomes an Allowed Claim. However, the Note will continue to carry interest for purposes of the guarantor under the Note and AHC. Nothing in the Plan shall release any claims of the Bank against Savoy, including claims for interest on such claims, subject to any and all defenses now existing or which may arise in the future other than the transactions contemplated under the Debtor's Plan.

### 6.3 Distributions by Disbursing Agent

(a) The Disbursing Agent shall make all distributions required under this Plan.

(b) If the Disbursing Agent is an independent third party designated by the Debtor to serve in such capacity, such Disbursing Agent shall receive, without further Bankruptcy Court approval, reasonable compensation for distribution services rendered pursuant to the Plan and reimbursement of reasonable out-of-pocket expenses incurred in connection with such services from the Debtor on terms acceptable to the Debtor. The Disbursing Agent shall be required to give a bond or surety for the performance of its duties.

### 6.4 Means Of Cash Payment

Cash payments made pursuant to this Plan shall be in U.S. funds, by the means agreed to by the payor and the payee, including by check or wire transfer, or, in the absence of an agreement, such commercially reasonable manner as the payor shall determine in its sole discretion.

### 6.5 Delivery Of Distributions

(a)    Distributions to holders of Allowed Claims shall be made by the Disbursing Agent (a) at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Debtor have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim, or (c) at the addresses reflected in the Schedules if no Proof of Claim has been filed and the Disbursing Agent has not received a written notice of a change of address. If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Disbursing Agent is notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. Amounts in respect of undeliverable distributions made by the Disbursing Agent, shall be returned to the Debtor until such distributions are claimed. All claims for undeliverable distributions made by the Disbursing

- 15 -

Agent must be made on or before the first (1st) anniversary of the Effective Date, after which date all unclaimed property shall revert to the Debtor free of any restrictions thereon and the claims of any holder or successor to such holder with respect to such property shall be discharged and forever barred, notwithstanding any federal or state escheat laws to the contrary. Nothing contained in the Plan shall require the Debtor, the Debtor, or the Disbursing Agent to locate any holder of an Allowed Claim.

### 6.6 Setoffs

The Debtor may, but shall not be required to, set off against any Claim not deemed an Allowed Claim under the Plan, and the payments or other distributions to be made pursuant to the Plan in respect of such Claim, claims of any nature whatsoever that the Debtor may have against the holder of such Claim.

### Article VII

### PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT THERETO

#### 7.1 Prosecution Of Objections to Claims

(a) Objections to Claims

All objections to Claims must be filed and served on the holders of such Claims by the Claims Objection Deadline.  If an objection has not been filed to a Proof of Claim or a scheduled Claim by the Claims Objection Deadline, the Claim to which the Proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been previously allowed.

(b) Authority to Prosecute Objections

After the Confirmation Date, the Debtor will have the authority to file objections, settle, compromise, withdraw or litigate to judgment objections to Claims.  Except as provided below, from and after the Effective Date, the Debtor may settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

#### 7.2 Prosecution of Mechanics' Liens

The Debtor will have the authority to investigate and file suits in the Bankruptcy Court challenging the validity of all Mechanics' Lien Claims.  In addition, the Debtor will have the authority to settle, compromise, withdraw or litigate to judgment objections to all Mechanics' Liens Claims.  The Project shall be transferred to AHC free and clear of the Mechanics' Lien Claims;  all Mechanics' Lien Claims shall attach to the amount designated for payment to Class 2 and Class 4 creditors in the Plan Fund.

- 16 -

### 7.3 Treatment of Disputed Claims

Notwithstanding any other provisions of the Plan, no payments or distributions will be made on account of a Disputed Claim, or, if less than the entire Claim is a Disputed Claim, the portion of a Claim that is disputed, until such Claim becomes an Allowed Claim.

## Article VIII

## LITIGATION CLAIMS

### 8.1 Prosecution of the Bank Litigation

Upon the Effective Date, the Debtor shall dismiss with prejudice all claims against TRBC Ministries, LLC provided that prior to the Effective Date, TRBC Ministries, LLC withdraws the proof of claim that it filed in the Bankruptcy Case and provides the Debtor with releases releasing all claims now existing or which may exist at any time in the future, which TRBC Ministries, LLC may have against the Debtor, and its general and limited partners, and all of its officers, managers, and members. The Bank Litigation shall be dismissed without prejudice. The parties shall not initiate litigation based on the claims made in the Bank Litigation except in accordance with the Standstill Agreement.

### 8.2 Prosecution of Best/L.T. Falwell Litigation

The Debtor shall continue to prosecute the Best/L.T. Falwell Litigation.

### 8.3 Distribution of Proceeds from the Best/L.T. Falwell Litigation

The Best/L.T. Falwell Litigation Recovery shall be distributed pursuant to the terms of Article 4 of this Plan.

## Article IX

## CONDITIONS PRECEDENT TO CONFIRMATION
## AND CONSUMMATION OF THE PLAN

### 9.1 Conditions To Confirmation

The following are conditions precedent to the occurrence of the Confirmation Date:

(a) the entry of an Final Order finding that the Disclosure Statement contains adequate information pursuant to section 1125 of the Bankruptcy Code; and

(b) .The Bank and AHC have signed the necessary definitive loan documents for the loan and the Standstill Agreement has been signed. These conditions shall be non-waivable.

- 17 -

**9.2 Conditions To Effective Date**

The following are conditions precedent to the occurrence of the Effective Date, each of which must be satisfied or waived in writing in accordance with Section 9.3 of this Plan:

(a)  The Confirmation Order shall have been entered and become a Final Order, in form and substance reasonably satisfactory to the Debtor;

(b)  all Plan Exhibits shall be in form and substance reasonably acceptable to the Debtor, and shall have been executed and delivered by all parties' signatory thereto;

(c)  the Debtor shall be authorized and directed to take all actions necessary or appropriate to enter into, implement and consummate the contracts, instruments, leases, and the agreements or documents created in connection with the Plan;

(d)  the Project shall have been transferred to AHC; and

(e)  all actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

**9.3 Waiver Of Conditions**

Except as set forth in Section 9.1(b) of the Plan, each of the conditions set forth in Section 9.1 and 9.2 of the Plan may be waived in whole or in part by AHC, but only with the written consent of the Debtor, which consent shall not be unreasonably withheld.  The failure of a party to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right that may be asserted at any time.

**Article X**

**RETENTION OF JURISDICTION**

Under sections 105(a) and 1142 of the Bankruptcy Code, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a)  allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Interest not otherwise allowed under the Plan, including the resolution of any request for payment of any Administrative Claim, the resolution of any objections to the allowance or priority of Claims or Interests, and the resolution of any challenges to alleged Mechanics' Liens;

(b)  hear and determine all applications for compensation and reimbursement of expenses of Professionals under the Plan or under sections 330, 331, 503(b), 1103 and 1129(a)(4) of the Bankruptcy Code; *provided, however,* that from and after the Effective Date,

- 18 -

the payment of the fees and expenses of the retained Professionals of the Debtor shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court;

(c) hear and determine all matters with respect to the assumption or rejection of any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable, including, if necessary, the nature or amount of any required Cure or the liquidation or allowance of any Claims arising therefrom;

(d) effectuate performance of and payments under the provisions of the Plan;

(e) hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters arising out of, under, or related to, the Chapter 11 Case, including, but not limited to, the Bank Litigation and the Best/L.T. Falwell Litigation;

(f) enter such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(g) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan, including disputes arising under agreements, documents or instruments executed in connection with the Plan;

(h) consider any modifications of the Plan, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(i) issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any entity with implementation, consummation, or enforcement of the Plan or the Confirmation Order;

(j) enter and implement such orders as may be necessary or appropriate if the Confirmation Order is for any reason reversed, stayed, revoked, modified, or vacated;

(k) hear and determine any matters arising in connection with or relating to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, or other agreement or document created in connection with the Plan, the Disclosure Statement or the Confirmation Order;

(l) enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Case;

(m) except as otherwise limited herein, recover all assets of the Debtor and property of the Debtor's Estate, wherever located;

(n) hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

NYC/226873.7

(o) hear and determine all disputes involving the existence, nature, or scope of the Debtor's discharge;

(p) hear and determine such other matters as may be provided in the Confirmation Order or as may be authorized under, or not inconsistent with, provisions of the Bankruptcy Code; and

(q) enter a final decree closing the Chapter 11 Case.

## Article XI

## MISCELLANEOUS PROVISIONS

### 11.1    Professional Fee Claims

All Professional Fee Claims in this Chapter 11 Case shall be paid from the Plan Fund.

### 11.2    Administrative Claims Bar Date

All requests for payment of an Administrative Claim must be filed with the Bankruptcy Court and served on counsel for the Debtor no later than thirty (30) days after the Effective Date. Unless the Debtor objects to an Administrative Claim within forty-five (45) Business Days after receipt, such Administrative Claim shall be deemed allowed in the amount requested.  In the event that the Debtor objects to an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

All Administrative Claims in this Chapter 11 Case shall be paid from the Plan Fund.

### 11.3    Payment Of Statutory Fees

All fees payable pursuant to section 1930 of Title 28 of the United States Code as of the Confirmation Date shall be paid from the Plan Fund and shall thereafter be paid by AHC in full until a final decree is entered closing this case.

### 11.4    Modifications and Amendments

The Plan may be altered, amended or modified by the Debtor under section 1127(a) of the Bankruptcy Code at any time prior to the Confirmation Date.  After the Confirmation Date and prior to substantial consummation of the Plan, as defined in section 1101(2) of the Bankruptcy Code, the Debtor, may, under section 1127(b) of the Bankruptcy Code, institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, and such matters as may be necessary to carry out the purposes and effects of the Plan and such proceedings do not materially adversely affect the treatment of holders of Claims under the Plan; *provided, however*, that prior notice of such proceedings shall be served in accordance with the Bankruptcy Rules or order of the Bankruptcy Court.

- 20 -

### 11.5    Conflicts

To the extent that any provision of the Disclosure Statement or the Confirmation Order (or any exhibits, schedules, appendices, supplements or amendments to the foregoing) conflict with or are in any way inconsistent with the terms of the Plan, the Confirmation Order shall govern and control.

### 11.6    Successors And Assigns

The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

### 11.7    Compromises and Settlements After Confirmation

After Confirmation, but prior to the Effective Date, pursuant to Fed. R. Bankr. P. 9019(a), the Debtor may compromise and settle various Claims against it and/or claims that it may have against other Persons.  The Debtor expressly reserves the right (with Bankruptcy Court approval, following appropriate notice and opportunity for a hearing) to compromise and settle Claims against it and claims that it may have against other Persons up to and including the Effective Date.

### 11.8    Discharge Of The Debtor

(a)  Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waiver, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, rights and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against the Debtor; *provided, however,* that nothing in any section of this Plan shall effect a release in favor of any Person other than the Debtor with respect to any debt owed to the United States Government, any state, city, or municipality for any liability arising under (i) the Internal Revenue Code, or any state, city, or municipality tax code, (ii) the environmental laws of the United States, any state, city, or municipality or (iii) any criminal laws of the United States, any state, city, or municipality.  All parties who may be liable under the Note shall remain liable under the Note, and the Plan shall have no impact on the Guaranty or the Standstill Agreement.  In addition, liabilities of Savoy, if any, to the Bank are not being discharged, subject to any and all defenses now existing or which may arise in the future other than the transactions contemplated under the Debtor's Plan.

### 11.9    Injunction

(a)  Except as otherwise agreed to by the Debtor, AHC, and the Bank, or as otherwise provided in the Plan or the Standstill Agreement, the Confirmation Order shall provide, among other things, that from and after the Confirmation Date all Persons who have held, hold or may hold Claims against or Interests in the Debtor are permanently enjoined from

- 21 -

taking any of the following actions against the Estate, or any of its property on account of any such Claims or Interests:  (A) commencing or continuing, in any manner or in any place, any action or other proceeding; (B) enforcing attaching, collecting or recovering in any manner any judgment, award, decree or order; (C) creating, perfecting or enforcing any lien or encumbrance; (D) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (E) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan. However, all parties who may be liable under the Note shall remain liable under the Note, including the Debtor and the Guarantor, and Savoy is not released from any claims of the Bank, subject to any and all defenses now existing or which may arise in the future other than the transactions contemplated under the Debtor's Plan.

(b) By accepting distributions pursuant to the Plan, each holder of an Allowed Claim will be deemed to have specifically consented to the injunctions set forth in this Section 11.9.

## 11.10  Exculpation And Limitation Of Liability

(a) Except as otherwise provided in the Standstill Agreement, neither the Debtor, nor any of its respective present or former members, officers, directors, advisors, or attorneys shall have or incur any liability to any holder of a Claim or an Interest, or any other party in interest, or any of its respective agents, managers, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of, the Chapter 11 Case, formulating, negotiating or implementing the Plan, the solicitation of acceptances of the Plan, the pursuit of confirmation of the Plan, the confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, except for their gross negligence or willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  However, all parties who may be liable under the Note shall remain liable under the Note, including the Debtor and the Guarantor, and Savoy is not being released from any claims of the Bank, subject to any and all defenses now existing or which may arise in the future other than the transactions contemplated under the Debtor's Plan.

(b) The foregoing exculpation and limitation on liability shall not, however, limit, abridge, or otherwise affect the rights, if any, of the Debtor to enforce, sue on, settle, or compromise the Litigation Claims retained pursuant to this Plan.

(c) Nothing in this section shall (i) be construed to exculpate any entity from fraud, gross negligence, willful misconduct, malpractice, criminal conduct, misuse of confidential information that causes damages, or *ultra vires* acts or (ii) limit the liability of the professionals of the Debtor to its clients pursuant to DR 6-102 of the Code of Professional Responsibility.

## 11.11  Binding Effect

The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims against and Interests in the Debtor, their respective successors and assigns, including, but not limited to, the Debtor, and all other parties-in-interest in this Chapter 11 Case.

### 11.12    Effect of Non-Consummation

If either Confirmation or consummation of the Plan does not occur, then (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (x) constitute or be deemed to constitute a waiver of release of any Claims by or against, or any Interests in, the Debtor or any other Person, (y) prejudice in any manner the rights of the Debtor or any Person in any further proceedings involving the Debtor, or (z) constitute an admission of any sort by the Debtor or any other Person.

### 11.13    Plan Exhibits

Any and all Plan Exhibits, or other lists or schedules not filed with the Plan shall be filed with the Clerk of the Bankruptcy Court at least five (5) Business Days prior to date of the commencement of the Confirmation Hearing. Upon such filing, such documents may be inspected in the office of the Clerk of the Bankruptcy Court during normal court hours. Holders of Claims or Interests may obtain a copy of any such document upon written request to the Debtor in accordance with Section 11.14 of the Plan.

### 11.14    Notices

Any notice, request, demand, waiver or consent required or permitted to be made or provided to or upon the Debtor under the Plan shall be (a) in writing, (b) served by (i) certified mail, return receipt requested, (ii) hand delivery, (iii) overnight delivery service, (iv) first class mail, or (v) facsimile transmission, and (c) deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

ARENT FOX PLLC
1675 Broadway
New York, NY 10019
Att'n: Beth N. Kibel, Esq.
Telephone:    (212) 484-3915
Facsimile:    (212) 484-3990

### 11.15    Term of Injunctions or Stays

Unless otherwise provided herein or in the Confirmation Order, all injunctions or stays provided for in the Chapter 11 Case under sections 105 or 362 of the Bankruptcy Code or otherwise, and extant on the Confirmation Date (excluding any injunctions or stays contained in

this Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.

### 11.16   No Modifications

Except as expressly provided for in the Plan, and any and all related documents, nothing herein shall in any way modify, change, or alter the rights and obligations of the parties with respect to the Note and Guaranty.


Dated as of:  October 5, 2005


**DEBTOR:**

**LIBERTY VILLAGE ASSOCIATES, LIMITED PARTNERSHIP**

By  *Jacob A Frydman*
      Jacob A. Frydman
      President, Savoy Senior Housing Corp,
      General Partner

# TABLE OF CONTENTS

**Page**

ARTICLE I     DEFINITIONS, RULES OF INTERPRETATION, COMPUTATION OF
TIME AND GOVERNING LAW ................................................................ 1

A.     SCOPE OF DEFINITIONS; RULES OF CONSTRUCTION ............................................ 1

B.     DEFINITIONS ................................................................................................................. 2

C.     RULES OF INTERPRETATION ................................................................................... 8

D.     COMPUTATION OF TIME ........................................................................................... 8

E.     GOVERNING LAW ........................................................................................................ 8

ARTICLE II     CLASSIFICATION AND TREATMENT OF CLAIMS AND
INTERESTS .................................................................................................. 9

2.1     Unclassified Claims .............................................................................................. 9

2.2     Classified Claims and Interests ........................................................................... 9

2.3     Classification and Treatment of Claims against Debtor ..................................... 10

2.4     Reservation of Rights Regarding Claims ............................................................ 11

ARTICLE III     ACCEPTANCE OR REJECTION OF THE PLAN ............................................ 12

3.1     Impaired Classes of Claims and Interests Entitled to Vote ................................ 12

3.2     Acceptance by an Impaired Class ....................................................................... 12

3.3     Presumed Acceptances by Unimpaired Classes ................................................. 12

3.4     Summary of Classes Voting on the Plan ............................................................. 12

3.5     Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code ................. 12

ARTICLE IV     MEANS FOR IMPLEMENTATION OF THE PLAN .......................................... 12

4.1     Funding of the Plan Fund on the Effective Date ................................................. 12

4.2     Sources for Plan Distributions ............................................................................ 13

4.3     Effectuating Documents; Further Transactions .................................................. 13

4.4     Section 1146 Exemption From Certain Transfer Taxes ...................................... 13

4.5     Injunction Related to Releases ............................................................................ 13

4.6     Preservation Of Rights Of Action ...................................................................... 14

ARTICLE V     TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED
LEASES ......................................................................................................... 14

5.1     Executory Contracts And Leases ........................................................................ 14

NYC/226873.7

# TABLE OF CONTENTS
## (continued)

Page

5.2    Rejection Claims ............................................................................... 14

ARTICLE VI   PROVISIONS GOVERNING DISTRIBUTIONS ............................................. 14

6.1    Distributions For Claims Allowed As Of The Effective Date ............................. 14
6.2    Interest On Claims ............................................................................. 14
6.3    Distributions by Disbursing Agent ...................................................... 15
6.4    Means Of Cash Payment ................................................................... 15
6.5    Delivery Of Distributions ................................................................. 15
6.6    Setoffs ........................................................................................... 15

ARTICLE VII  PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND
UNLIQUIDATED CLAIMS AND DISTRIBUTIONS WITH RESPECT
THERETO ...................................................................................... 16

7.1    Prosecution Of Objections to Claims .................................................. 16
7.2    Prosecution of Mechanics' Liens ....................................................... 16
7.3    Treatment of Disputed Claims ........................................................... 16

ARTICLE VIII  LITIGATION CLAIMS ..................................................................... 16

8.1    Prosecution of the Bank Litigation ..................................................... 16
8.2    Prosecution of Best/L.T. Falwell Litigation ......................................... 17
8.3    Distribution of Proceeds from the Best/L.T. Falwell Litigation ................ 17

ARTICLE IX   CONDITIONS PRECEDENT TO CONFIRMATION AND
CONSUMMATION OF THE PLAN ..................................................... 17

9.1    Conditions To Confirmation .............................................................. 17
9.2    Conditions To Effective Date ............................................................ 17
9.3    Waiver Of Conditions ...................................................................... 18

ARTICLE X    RETENTION OF JURISDICTION ....................................................... 18

ARTICLE XI  MISCELLANEOUS PROVISIONS ........................................................ 19

11.1    Professional Fee Claims .................................................................. 19
11.2    Administrative Claims Bar Date ....................................................... 20
11.3    Payment Of Statutory Fees .............................................................. 20

# TABLE OF CONTENTS
### (continued)

**Page**

11.4    Modifications and Amendments ........................................................................ 20

11.5    Conflicts .......................................................................................................... 20

11.6    Successors And Assigns .................................................................................... 20

11.7    Compromises and Settlements After Confirmation ............................................ 20

11.8    Discharge Of The Debtor .................................................................................. 21

11.9    Injunction ......................................................................................................... 21

11.10   Exculpation And Limitation Of Liability ........................................................... 22

11.11   Binding Effect .................................................................................................. 22

11.12   Effect of Non-Consummation ........................................................................... 22

11.13   Plan Exhibits .................................................................................................... 23

11.14   Notices ............................................................................................................. 23

11.15   Term of Injunctions or Stays ............................................................................. 23