THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

_____
                                                )
GENERAL CAPITAL PARTNERS, LLC    )
                                                )
            Plaintiff,                          )
                                                ) CIVIL ACTION
        v.                                     ) FILE NO. 1:07-CV-4089 (kmk/dfe)
                                                )
LIBERTY RIDGE, LLC (f/k/a AMERICAN )
HERITAGE COMMUNITY/LIBERTY      )
VILLAGE, LLC)                            )
                                                )
            Defendant                       )
_____)


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FOR IMPROPER VENUE
<u>AND/OR MOTION TO TRANSFER VENUE</u>**


BLEAKLEY PLATT & SCHMIDT LLP
*Co-Counsel for defendant Liberty Ridge, LLC*
One North Lexington Ave.
White Plains, NY 10601
Telephone:  914.287.6184


WILLIAMS MULLEN
A Professional Corporation
*Co-Counsel for defendant Liberty Ridge, LLC*
1021 E. Cary St., 17th Floor
P. O. Box 1320
Richmond, Virginia  23218-1320
Telephone: 804.643.1991

**TABLE OF CONTENTS**

**PAGE(S)**

I.    PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    A.    The Southern District of New York is an Improper Venue . . . . . . 3
            for This Matter Because No Part of the Dispute on Which
            the Complaint is Based Occurred or is Deemed to Have
            Occurred in This Judicial District

        1.    GCP has provided no facts which suggest that a . . . . . . . . . 4
               substantial part of the disputed events or omissions
               alleged in its Complaint which give rise to its claim
               occurred in this judicial jurisdiction.

        2.    The Transfer and Partnership Agreements between . . . . . . 7
               American Heritage Communities, Inc. and the Debtor
               do not establish venue in this judicial district for a
               dispute between Liberty Ridge and GCP.

            a.   Transfer Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

            b.   Partnership Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    B.    Assuming, Arguendo, That the Southern District of New York . . . 9
            is a Proper Venue for This Matter, This Court Should
            Nevertheless Transfer This Case to the Western District
            of Virginia, Lynchburg Division, for the Convenience of the
            Parties and Witnesses

III.  CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| GENERAL CAPITAL PARTNERS, LLC )<br><br>Plaintiff, )<br><br>v. )<br><br>LIBERTY RIDGE, LLC (f/k/a AMERICAN )<br>HERITAGE COMMUNITY/LIBERTY )<br>VILLAGE, LLC) )<br><br>Defendant ) | ) CIVIL ACTION<br>) FILE NO. 1:07-CV-4089 (kmk/dfe) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO DISMISS FOR IMPROPER VENUE
AND/OR MOTION TO TRANSFER VENUE**

**I.     PRELIMINARY STATEMENT**

Defendant's Motion to Dismiss for Improper Venue and/or Motion to Transfer Venue is based on the fact that General Capital Partners, LLC ("GCP"), a ***Colorado*** company, in an effort to recover a second $200,000 broker's commission allegedly promised to it by American Heritage Communities, Inc. ("AHC"), a ***Maryland*** company, is now suing Liberty Ridge, a ***Virginia*** company, in the Southern District of New York.[1]  Claiming that it was promised a $400,000 broker's commission in 2004, GCP has erroneously targeted Liberty Ridge, an entity which did not exist until June 2005. Liberty Ridge purchased the Virginia-based real estate assets of Liberty Village Associates Limited Partnership ("Debtor") for approximately

---

[1]     Liberty Ridge was formerly known as "American Heritage Communities/Liberty Village, LLC" ("AHC/LV LLC"). That limited liability company was authorized to transact business in Virginia on June 2, 2005. Exhibit 1 attached hereto.

$2,250,000 on or about July 14, 2006. As part of that July 2006 transaction, the Debtor, the only entity with any ties to New York, executed a general release in favor of AHC and Liberty Ridge.

Further, it is undisputed GCP was paid a $200,000 broker's commission at the July 14, 2006 closing. See Compl. Ex. N. This litigation does not involve the initial $200,000 brokerage fee (a 10% commission in favor of GCP). Rather, plaintiff's claim is that it is entitled to a second brokerage fee pursuant to a purported agreement between GCP and non-party AHC. The second $200,000 broker's fee that GCP now seeks was allegedly negotiated by electronic mail between GCP and AHC in July 2006. This second commission was never disclosed to Liberty University, the new managing member of the defendant LLC, even though Liberty was providing the funds to close the purchase transaction.

Accordingly, the current dispute has nothing to do with the original New York agreements between the Debtor, GCP, and AHC. Instead, this dispute centers on Liberty Ridge's alleged responsibility to pay an <u>additional</u> $200,000 broker's fee post-closing, which payment was expressly conditioned upon Liberty Ridge obtaining additional funding. See Compl. Ex. L at 1, 3; Compl. Ex. O at 2. As such, GCP's present claim has virtually no ties to New York.

Ignoring the actual basis for its current claim, GCP attempts to establish venue in this judicial district through two separate means: (1) by reference to a bankruptcy proceeding that is not germane to the dispute alleged in the Complaint, and (2) through contractual venue provisions in two agreements to which GCP is neither a party nor a third-party beneficiary, despite its allegations to the contrary. Because venue is not proper in this District, this Court should dismiss this action pursuant to 28 U.S.C. § 1406(a). Alternatively, if it determines that it is "in the interest of justice" to transfer the case or that venue is proper in the Southern District of New York, the Court should transfer this matter to the Western District of Virginia, Lynchburg

division, where the majority of the non-party witnesses and party Defendants are located, rather than retain the case in New York, which is home to none of the parties.  28 U.S.C. § 1404(a).

## II.  ARGUMENT

### A.  The Southern District of New York is an Improper Venue for This Matter Because No Part of the Dispute on Which the Complaint is Based Occurred or is Deemed to Have Occurred in This Judicial District.

Because this action was brought in a judicial district that has no connection to the disputed events or omissions alleged in the Complaint, and GCP has failed to prove otherwise, this case should be dismissed pursuant to 28 U.S.C. § 1406(a).[2]  This statute provides that "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  A district court is to "transfer, rather than dismiss, when there is a defect in venue only if it is in the 'interest of justice.'"  14D Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3827 at 565 (3d ed. 2007) (emphasis added) (hereinafter "Wright, Miller & Cooper").  Because GCP will suffer no substantive harm if it is compelled to institute suit in a proper venue, this case ought to be dismissed.  If, however, the Court determines that a transfer is in the "interest of justice," Liberty Ridge requests that this matter be transferred to the Western District of Virginia, Lynchburg division.

GCP argues that venue in this district is conferred because the bankruptcy proceeding, which is not relevant to the disputed substantive allegations in the Complaint, constitutes "a substantial part of the events or omissions giving rise to the claim."  Second, GCP contends, despite explicit language to the contrary, that it is a third-party beneficiary of the Transfer

---

[2]  The burden to establish that venue is appropriate in the district is upon the plaintiff once the defendant raises an objection.  United Coal Co. v. Land Use Corp., 575 F. Supp. 1148 (W.D. Va. 1983) citing Bartholomew v. Virginia Chiropractors Ass'n., 612 F.2d 812, 816 (4th Cir. 1979); see also Wright, Miller & Cooper § 3826 at 558.  Under § 1406, the Court applies the law of the transferee court.  Wright, Miller & Cooper § 3826 at 554.

3

Agreement (Compl. Ex. E) and Partnership Agreement (Compl. Ex. F) between AHC and the Debtor. For the following reasons GCP is wrong on both points.

>   **1.    GCP has provided no facts which suggest that a substantial part of the disputed events or omissions alleged in its Complaint which give rise to its claim occurred in this judicial jurisdiction.**

GCP attempts to use a bankruptcy proceeding that took place in New York as its anchor for venue. Because that proceeding is not germane to the actual dispute set forth in the Complaint, venue is improper.

GCP's claim that "the events and omissions giving rise to the claim . . . arise from a federal bankruptcy court proceedings [sic] in the Southern District of New York" is unsupported. The allegations regarding the bankruptcy proceeding only arise as part of GCP's recitation of non-relevant facts. (Compl. ¶¶ 21-27.) Indeed, according to the express allegations in the Complaint, GCP and the Debtor sought approval of an Application for an Order Authorizing the Employment of GCP as Investment Bankers with the Bankruptcy Court (the "Retention Application"). (Compl. ¶ 25.) However, rather than complete this process, Plaintiff admits that the Debtor and GCP "did not ultimately seek approval of the Retention Application. Therefore, the Debtor did not retain GCP." (Compl. ¶ 27.) This recitation is the sum total of GCP's claimed "involvement" in the bankruptcy proceeding.

By admitting that GCP was not retained during the bankruptcy proceeding, GCP has conceded that the bankruptcy proceeding is not related to any disputed obligation on the part of Liberty Ridge to pay GCP the alleged second commission. By admitting that GCP and the Debtor failed to file the Retention Application with the bankruptcy court, Plaintiff has negated its own assertion of venue.

Further, Liberty Ridge (and its predecessor, AHC/LV LLC) did not even <u>exist</u> during the majority of the bankruptcy proceeding. The various correspondence relied upon by GCP to establish its brokerage agreement with AHC, (not the LLC) are all dated in 2004. <u>See</u> Compl. Ex. A, dated June 14, 2004; Compl. Ex. B dated October 8, 2004; Compl. Ex. C dated October 14, 2004; and Compl. Ex. D dated October 22, 2004. AHC did not even form its LLC (a *Virginia*-chartered company) for the purposes of acquiring the Virginia real property until June, 2005. (<u>See</u> Parisi Declaration, Exhibit 1, dated June 2, 2005.) Liberty Ridge, as it is currently constituted – with Liberty University as the 85% managing member and another Virginia corporation (an affiliate of AHC) as the remaining 15% member – was created on or about July 14, 2006. <u>See</u> July 14, 2006 Operating Agreement of AHC/LV LLC, Parisi Declaration, Ex. 2. As part of the overall transaction to purchase the Debtor's assets, the Debtor expressly effected a general release in favor of AHC and what is now Liberty Ridge. (<u>See</u> Parisi Declaration, Exhibit 3.)

It was during this "eleventh hour" July 11-14 timeframe that GCP and AHC allegedly negotiated the terms of the second commission payment. <u>See</u> Compl. Ex. L. The negotiations were apparently conducted via email through the two companies' electronic mail systems, which are presumably located in Colorado and Maryland as GCP's principal place of business is Colorado and AHC's principal place of business is Maryland.[3] Nevertheless, GCP claims that these negotiations have a New York connection because Herb Kaiser and Robert Gibbs are purportedly located in *New Jersey*. The connection to New York is even more tenuous given the fact that the exhibits both to and from Mr. Kaiser attached to plaintiff's complaint list a

---

[3] A review of the documents attached to plaintiff's complaint further demonstrates that New York is not the proper venue for this action. For instance, the notice provisions of the Transfer Agreement provide for mailing of notices to AHC (attention Bruce Boyer) in Maryland (with a copy to New Jersey) (Compl Ex. E, p. 15); the Partnership Interest Purchase Agreement provides for notice to New Jersey (Compl. Ex. F, p. 10); the Bruce Boyer letter to Worth Carter is sent from Maryland to Virginia (Compl. Ex. G).

5

Fredericksburg, Md. address for Mr. Kaiser. Compl. Ex. C, D. Similarly, the Non Circumvention & Confidentiality Agreement signed by Robert Gibbs on behalf of AHC lists a Maryland address. Compl. Ex. B, p. 3. Indeed, the disputed invoice was sent to AHC in Frederick, Maryland. Compl. Ex. L at 3. Further, when GCP issued its demand for payment in December of 2006, it was sent from Denver Colorado to Virginia.

GCP further claims that these negotiations involved *New Jersey* counsel Lucille Karp, Esq. and John Leonard, Esq. of McElroy, Deutsch, Mulvaney & Carpenter in support of its argument that New York is the proper venue. However, the two other parties involved in these negotiations, Liberty and Community National Bank were represented by Virginia counsel. In fact, Hunton & Williams attorneys Daniel Campbell, Tyler Brown, J. C. Chenault and Alison Moore and Williams Mullen attorneys Paul Bliley Jr. and John Mercer, each of whom were involved in some part of the email exchange upon which plaintiff's claims for the second $200,000 commission are based (Compl. Ex. M), are all located in Virginia.

GCP also relies on the residency of Debtor's principal Jacob Fryman to support New York venue. While Mr. Fryman may very well be a New York resident, he was not involved in the purported negotiation of the second commission payment. As such, his residency is irrelevant.

At no point during the timeframe of these negotiations did GCP or AHC communicate the terms of GCP's proposed commission structure to Liberty University or its Virginia counsel handling the closing transaction.[4] Further, pursuant to the express terms of that alleged agreement, GCP was not to be paid the additional $200,000 until Liberty Ridge obtained additional funding. Compl. Ex. L at 1, 3. To date, no such additional funding has been obtained.

---

[4]  Interestingly, AHC did communicate the alleged commission structure to Virginia counsel for Community National Bank, Tyler Brown of Hunton and Williams. See Compl. Ex. K. Only Liberty was kept in the dark.

6

It stretches credibility to suggest that, prior to July 11, 2006, GCP had earned a $400,000 commission (nearly 20% of the total value of the transaction) but then voluntarily deferred $200,000 of that commission for 180 days simply as an altruistic gesture.  As a factual matter, as of July 11, 2006, the second commission fee had not been earned.  Accordingly, the current dispute over whether the second payment is now due and owing involves events which occurred after the closing (i.e. whether additional funding could have been obtained, and, if so, which party was responsible to pursue and secure such financing) and is therefore centered in Virginia and has nothing to do with New York or any entity in New York.

    **2.  The Transfer and Partnership Agreements between American Heritage Communities, Inc. and the Debtor do not establish venue in this judicial district for a dispute between Liberty Ridge and GCP.**

GCP also asserts that the Transfer and Partnership Agreements (Compl. Ex. E and F) between AHC and the Debtor somehow allow GCP to bring suit in this Court.  These agreements, which were entered into in March of 2005, predate the June 2005 formation of AHC/LV LLC, the predecessor to Liberty Ridge.  Quite simply, in March 2005 there was no valid limited liability company for GCP to contract with.  Furthermore, these agreements, to which GCP is not a party or a third-party beneficiary, do not provide GCP standing to bring this matter in this Court.

    **a.  Transfer Agreement**

The Transfer Agreement performs only one function: it establishes the rights and obligations of AHC and the Debtor with respect to the transfer of 140 acres of land in Lynchburg, Virginia.  GCP is not the successor of either party or otherwise related to AHC or the Debtor; it is strictly a third party.  GCP admits as much when, in paragraph 51 of its Complaint, it claims that "GCP is a <u>third party beneficiary</u> of the Transfer Agreement . . . ." (emphasis

7

added.)  This contention, however, is entirely unsupported.  In fact, GCP has no rights under the Transfer Agreement, which expressly provides in paragraph 19.10 "**NO THIRD PARTY BENEFICIARIES**" that "There are no third party beneficiaries to this Agreement other than the guarantors of the Loan."  GCP is not, nor does it allege itself to be, a guarantor of any loans related to the Transfer Agreement.

Additionally, the venue provision in the Transfer Agreement upon which GCP relies is similarly inapplicable.  It provides, in relevant part that:

> For so long as Transferor is subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum **for the adjudication of any dispute between Transferor and Transferee** arising under or in connection with this Agreement, and consent to the jurisdiction of, the Bankruptcy Court.  After Transferor is no longer subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum **for the adjudication of any dispute between the Transferor and Transferee** arising under or in connection with this Agreement, and consent to the jurisdiction of, the Federal and state courts of the State of New York.

(Transfer Agreement ¶ 19.11 (emphasis added).)  By the very terms of that venue provision, it applies only to disputes between AHC (the "Transferee") and the Debtor (the "Transferor").  This dispute, between GCP and Liberty Ridge, is simply not encompassed by the Transfer Agreement's venue provision.

### b. Partnership Agreement

Likewise, the Partnership Agreement (Compl. Ex. F) does not confer any rights upon GCP.  Like the Transfer Agreement, the Partnership Agreement expressly states, in § 8.10 "**Limitation of Rights to Parties**," that:

> **Nothing in this Agreement, whether expressed or implied, is intended to confer any rights or remedies under or by reason of this Agreement on any persons other than the parties to it** and their respective successors, legal representatives and assigns . .

8

>. nor shall any provisions give any third persons any rights of subrogation or action over or against any party to this Agreement. Notwithstanding the foregoing, Jacob Fryman is a third-party beneficiary of this Agreement.

(Emphasis added.)  It is undisputed that GCP is not a party to the Partnership Agreement.  GCP admits as much in paragraph 51 of its Complaint when it alleges that it is a third-party beneficiary of the Partnership Agreement.  As with the Transfer Agreement, such a contention is entirely unsupported.

Not only is the Partnership Agreement devoid of language conferring third-party beneficiary status upon GCP, §8.10 does confer such status on Jacob Fryman.  If the parties had wanted to provide GCP with rights under this agreement, they were certainly familiar with the mechanism to do so.  Because GCP is not a party to the Partnership Agreement, it may not rely on the venue provision in § 8.3 to confer jurisdiction on this Court.

> **B.     Assuming, Arguendo, That the Southern District of New York is a Proper Venue for This Matter, This Court Should Nevertheless Transfer This Case to the Western District of Virginia, Lynchburg Division, for the Convenience of the Parties and Witnesses.**

Even if the Southern District of New York is determined to be a proper venue for this case, the Western District of Virginia, Lynchburg division is a far more convenient forum for the resolution of this matter.  Therefore, this Court should transfer this matter pursuant to 28 U.S.C. § 1404(a).

The convenience of parties and witnesses is considered "the essential criteria" under the venue statute, First City Federal Savings Bank v. Register, 677 F. Supp. 236, 237 (S.D.N.Y. 1988), and "the most significant factor," Nieves v. American Airlines, 700 F. Supp. 769, 773 (S.D.N.Y. 1988).  See also Cento Group, S.P.A. v. Oroamerica, Inc., 822 F. Supp. 1058, 1060 (S.D.N.Y. 1993).

9

Liberty Ridge is a company created for the sole purpose of developing a residential community on 140 acres of land atop Liberty Mountain in Campbell County, Virginia. In its Complaint and attached exhibits, GCP identifies several non-party institutions (and presumably their employees) that it claims have information about the dispute and thus may be called upon to testify about obligations GCP alleges it is owed. These institutions and individuals include: Ronald S. Godwin, TRBC Ministries, Inc.; Community National Bank; Worth Harris Carter Jr., President of Community National Bank; Tyler Brown, attorney for Community National Bank; AHC; and the principals at AHC.[5] None of these entities is located in the Southern District of New York. With the exception of the AHC principals, all of them are based in Virginia – all but Brown in the Western District. AHC's principal place of business is located in Maryland, making it more convenient for it to appear in the Western District of Virginia rather than the Southern District of New York. Requiring these individuals and various representatives of each of these non-party institutions to travel hundreds of miles to attend the trial of this matter would be a significant hardship. On the other hand, whether the forum is in New York or Virginia, GCP will already be required to travel to the East Coast from Colorado.

## III.    CONCLUSION

The Southern District of New York is an improper venue for this case. None of the parties are located in this judicial district. The bankruptcy of the Debtor, which did take place in this judicial district, is not relevant to GCP's claim for a "second" brokerage fee. The Transfer and Partnership Agreements do not provide a basis for GCP to establish venue here because the Plaintiff is neither a party nor a third-party beneficiary of the Agreements. For these reasons, the case should be dismissed pursuant to 28 U.S.C. § 1406(a). If, in the alternative, the Court determines that it is

---

[5]    Under § 4.01 of the Operating Argument, the initial managers of the limited liability company were Jerry Falwell, Jr. and Robert Gibbs. Herb Kaiser, the individual with AHC who allegedly authorized the "second" commission, was not authorized to act on behalf of the limited liability company. Ex. 2 at 7-8.

10

"in the interest of justice" to transfer the case or that venue is proper in the Southern District of New York, it should transfer this matter to the Western District of Virginia, Lynchburg division, for the convenience of the parties and non-party witnesses under 28 U.S.C. § 1404(a).

        Respectfully submitted,

        BLEAKLEY PLATT & SCHMIDT LLP

By:    /s/ Matthew G. Parisi
      Matthew G. Parisi (MP 2188)
      *Co-Counsel for defendant Liberty Ridge, LLC*
      One North Lexington Ave.
      White Plains, NY 10601
      Telephone: 914.287.6184

      W. Scott Street, III (pending pro hac application)
      A. Peter Brodell (pending pro hac application)
      Samuel T. Towell (pending pro hac application)
      WILLIAMS MULLEN
      A Professional Corporation
      *Co-Counsel for defendant Liberty Ridge, LLC*
      1021 E. Cary St.
      17th Floor
      P. O. Box 1320
      Richmond, Virginia 23218-1320
      Telephone:    804.643.1991