

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GENERAL CAPITAL PARTNERS LLC,

                Plaintiff,

-v-

LIBERTY RIDGE, LLC (f/k/a AMERICAN
HERITAGE COMMUNITY/LIBERTY VILLAGE,
LLC),

                Defendant.

No. 07 Civ. 4089 (RJS)

OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

On May 25, 2007, plaintiff General Capital Partners LLC ("GCP") filed a complaint seeking to recover the unpaid balance of $200,000 on a $400,000 fee it alleges it is owed by defendant Liberty Ridge LLC ("Liberty Ridge") based on an agreement to act as a broker in the sale of a residential property known as Liberty Village (the "Property"). Defendant has moved (1) to dismiss the action for improper venue or (2) in the alternative, to transfer this action to the Western District of Virginia. For the reasons outlined below and stated on the record at the conference on October 3, 2007, the defendant's motion is denied in its entirety.

I. Background

This litigation arises out of the sale of the Property, which resulted from the Chapter 11 bankruptcy filing of Liberty Village Associates Limited Partnership ("LVA"), the former owner of the Property, on March 11, 2004 in the United States Bankruptcy Court, Southern District of New

York.[1] (Compl. ¶¶ 8, 22.) LVA had one general partner, Savoy Senior Housing Corporation ("Savoy"), and two limited partners, Savoy Liberty Village, LLC ("SLV"), and TRBC Ministries LLC. Jacob Frydman ("Frydman") is the principal of Savoy. (Compl. ¶ 28.)

The defendant is a Virginia company whose predecessor in interest, American Heritage Communities/Liberty Village LLC ("AHC/LV"), purchased the assets of LVA in July of 2006. (*See* Memorandum of Law in Support of Defendant's Motion to Dismiss for Improper Venue And/Or Motion to Transfer Venue ("Def.'s Mem.") at 1.) The plaintiff, GCP, is a Colorado investment bank specializing in advising buyers and sellers of assets in distressed markets, including those involved in Chapter 11 bankruptcy proceedings. (Compl. ¶¶ 2, 14-15.) On June 17, 2007, GCP was retained by Frydman to assist in brokering the LVA sale in exchange for a fee. (*Id.* ¶ 28, Ex. A.) This agreement was negotiated at least in part in New York and was executed by Frydman in New York. (*See* Compl. Ex. A; Letter from Christopher Giaimo to the Court dated Sept. 10, 2007 ("Sept. 10 Letter") at 3.) The obligation to pay GCP's brokerage fee allegedly passed to AHC/LV and subsequently to the defendant upon the signing of the Transfer Agreement and the Partnership Interest Purchase Agreement ("PIP Agreement"), which effectuated the sale of LVA to AHC/LV. (Compl. ¶¶ 41-51, Exs. E, F.)

Subsequent to the closing of the sale of LVA, GCP and AHC/LV allegedly agreed to restructure the $400,000 fee into two payments of $200,000. (Compl. ¶¶ 62-69.) On or about July 17, 2006, AHC/LV made a payment of $200,000 to GCP. (*Id.* ¶ 71.) GCP has not been paid the remaining balance of $200,000 it alleges is due. (*Id.* ¶ 73.)

---

[1] When evaluating a motion to dismiss for improper venue, the court "must accept the facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Cavu Releasing, LLC v. Fries*, 419 F. Supp. 2d 388, 394 (S.D.N.Y. 2005).

## II. Discussion

### A. The Southern District of New York is a Proper Venue For This Action

Under the venue statute, 28 U.S.C. § 1391, a diversity action may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. . . ." 28 U.S.C. § 1391(a)(2). The statute permits venue in multiple judicial districts provided that "a substantial part" of the underlying events took place in those districts. *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 356-57 (2d Cir. 2005) (citations omitted). As the Second Circuit noted in *Reliance Ins. Co. v. Polyvision Corp.*, 474 F.3d 54, 59 (2d Cir. 2007) (citations omitted), "courts are not, in general, required to determine the 'best venue,' but merely a logical one with a substantial connection to the litigation."

In a breach of contract action, the court should consider "a number of factors, including where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred." *PI, Inc. v. Quality Products, Inc.*, 907 F. Supp. 752, 757-58 (S.D.N.Y. 1995) (citations omitted). "Venue may be proper in the district where the contract was substantially negotiated, drafted, and/or executed, even if the contract was not to be performed in that district and the alleged breach occurred elsewhere." *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 425 (S.D.N.Y. 1998) (citing *PI, Inc.*, 907 F. Supp. at 757-58). Additionally, where a communication "is transmitted to or from the district in which the cause of action is filed," venue is appropriate in that district "given a sufficient relationship between the communication and the cause of action." *Sacody Techs. Inc. v. Avant, Inc.*, 862 F. Supp. 1152, 1157 (S.D.N.Y. 1994) (citations omitted); *see also U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 153 (2d Cir. 2001) (citing *Sacody* and holding that venue was proper in New York where communications giving rise to the

underlying agreement were directed to New York); *Largotta v. Banner Promotions, Inc.*, 356 F. Supp. 2d 388, 391 (S.D.N.Y. 2005) ("[T]he fact that [the defendant] was elsewhere during [negotiations] simply means that venue would also be proper in other locations, not that it is improper in New York.").

Here, the Court is satisfied that the Southern District of New York ("this District") is a proper venue for this action. First, the fact that the underlying contract was at least partially negotiated and executed in New York is, standing alone, sufficient for this action to proceed in this District. The underlying brokerage agreement between GCP and LVA was negotiated, at least in part, based on communications into New York, and there is no dispute that the key document underlying GCP's claim — the June 17, 2007 Letter Agreement between GCP and Frydman — was executed in the Southern District of New York. (*See* Compl. Ex. A; *see also* Transcript of Conference on October 3, 2007 ("Oct. 3 Tr.") 7:16-25.)

Second, the facts are sufficient to demonstrate that "a substantial part" of the events underlying this action took place in this District for purposes of section 1391. *See Gulf Ins. Co.*, 417 F.3d at 356-57. As noted above, the underlying agreement was negotiated and signed in this District. (*See* Compl. Ex. A.) Moreover, it must be noted that this dispute arose out of LVA's Chapter 11 bankruptcy, which also proceeded in this District. Indeed, it was the LVA bankruptcy that necessitated the sale of LVA and ultimately resulted in the brokerage fee allegedly owed to GCP. (*See* Compl. ¶¶ 1-22.) Multiple documents filed with the bankruptcy court support the assertion that there was an agreement between the buyer and seller that GCP would be paid a brokerage fee in exchange for its involvement in locating a buyer for LVA. (*See, e.g.*, Compl. Ex. H at 4; Ex. I.) In addition, the Transfer Agreement and PIP Agreement, which completed the LVA sale (subject to the

4

approval of the bankruptcy court), were executed in New York. (*See* Compl. Ex. E at 22; Ex. F at 12; Oct. 3 Tr. 7:16-25.) Accordingly, the Court is satisfied that a "substantial part" of the events giving rise to the dispute took place in this District. *Gulf Ins. Co.*, 417 F.3d at 356-57.

For these reasons, the Court finds that the Southern District of New York is a proper venue for this case.

### B. Transfer to the Western District of Virginia is Not Appropriate

The defendant also moves in the alternative to transfer this action to the Western District of Virginia for the convenience of witnesses. (*See* Def.'s Mem. at 9.) Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Motions for transfer lie within the broad discretion of the district court and the court should consider notions of convenience and fairness on a case-by-case basis. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) (citing *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992)). The burden of demonstrating that the action should be transferred to another district lies with the moving party. *Id.* In considering such a motion, the court must determine first whether the case could have been brought in the proposed transferee district. *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 56 (S.D.N.Y. 2001). The court must then determine, pursuant to a host of factors, whether transfer is appropriate. *D.H. Blair*, 462 F.3d at 106. These factors include: "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *Id.* at 106-07.

5

An additional factor to consider is the existence of a forum selection clause. In New York, forum selection clauses "are *prima facie* valid absent a showing they were signed as a result of fraud or overreaching, that they are unreasonable or unfair, or that enforcing them would contravene a strong public policy of the forum." *Orix Credit Alliance, Inc. v. Mid-South Materials Corp.*, 816 F. Supp. 230, 233 (S.D.N.Y. 1993) (citing *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)). Forum selection clauses are properly considered as an additional factor in a section 1404 analysis. *Id.* ("A motion to transfer under § 1404(a) is governed by the terms of the statute itself, and a court should consider the preferences of the parties, as embodied in a contractual forum selection clause, only to the extent that the federal statute itself permits."); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) ("The presence of a forum-selection clause such as the parties entered into in this case will be a significant factor that figures centrally in the district court's calculus [in deciding a motion to transfer].").

Here, the plaintiff concedes that the action could have been filed in a number of districts, including the Western District of Virginia, the District of New Jersey, or the District of Colorado. (*See* Sept. 10 Letter at 3.) However, the defendant has failed to establish that a change of venue is appropriate under the seven factors articulated in *D.H. Blair*. Liberty Ridge, which bears the burden of demonstrating that the action should be transferred, argues that the convenience of witnesses and parties necessitates transfer, but fails to address the other relevant factors, many of which demonstrate that this District is a more suitable venue than the Western District of Virginia. (*See* Def.'s Mem. at 9-10.) For example, the location of relevant documents and the relative ease of access to sources of proof, the convenience of several key witnesses in New York and neighboring New Jersey, the plaintiff's choice of this District as the forum for filing, and the locus of operative

facts (which, as noted *supra*, necessarily involves and implicates the LVA bankruptcy in the Southern District of New York) weigh in favor of keeping the action in the Southern District of New York. Moreover, it is not clear whether even the convenience of witnesses weighs in favor of transfer to the Western District of Virginia, since the plaintiff has stated that it does not plan to depose any witnesses who reside in Virginia. (*See* Oct. 3 Tr. 10:16-12:5.)

Additionally, the presence of forum selection clauses in some of the relevant agreements naming New York as an agreed-upon forum for disputes weighs in favor of keeping the action in this District. *Stewart Org., Inc.*, 487 U.S. at 29. Although the underlying June 17 Agreement between GCP and Savoy does not contain any venue or forum selection provision, the PIP Agreement between Liberty Ridge's predecessor (AHC/LV) and the sellers of the Property (Savoy Senior Housing Corporation and Savoy Liberty Village, LLC, partners of LVA) directs that any dispute "concerning any obligations, responsibilities, or rights assumed by any Party," should be brought in New York. (*See* Compl. Ex. F. § 8.3.) The Transfer Agreement between the same parties similarly directs that any dispute arising out of the sale and transfer of LVA must be litigated in New York. (*See* Compl. Ex. E § 19.11.) These agreements also explicitly provide that Liberty Ridge's predecessor (AHC/LV) was to assume the responsibility to pay the commission due to GCP. (*See* Compl. Ex. E § 6.01 and Ex. F § 2.2, 5.3.) Liberty Ridge has failed to show why the dispute over the fee allegedly owed to GCP, which is clearly a dispute "concerning any obligations, responsibilities, or rights assumed by any Party" as part of the LVA sale, should be litigated outside of New York. Accordingly, defendants have failed to carry the burden of demonstrating that this action should be transferred to the Western District of Virginia.

III. Conclusion

For the foregoing reasons, the Court finds that the Southern District of New York is a suitable and convenient district for adjudication of this dispute. Accordingly, the defendant's motion to dismiss the complaint for improper venue or, alternatively, to transfer this action to the Western District of Virginia is DENIED.

SO ORDERED.

Dated:      October 9, 2007
            New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE