THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GENERAL CAPITAL PARTNERS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> LIBERTY RIDGE, LLC (f/k/a AMERICAN HERITAGE COMMUNITIES/LIBERTY VILLAGE, LLC) <br><br> Defendant/ Third-Party Plaintiff, <br><br> v. <br><br> LIBERTY HERITAGE ASSOCIATES, INC. <br><br> Third-Party Defendant. | CIVIL ACTION <br> FILE NO. 1:07-CV-4089 (rjs/dfe) <br><br> *[RECEIVED stamp: OCT 31 2007 USDC-WP-SDNY]* |

## THIRD-PARTY COMPLAINT

Defendant and Third-Party Plaintiff, Liberty Ridge, LLC ("Liberty Ridge"), by counsel, for its third-party complaint against Liberty Heritage Associates, Inc. ("LHA"), states as follows:

1.  On May 25, 2007, General Capital Partners, LLC ("GCP") filed suit in the United States District Court for the Southern District of New York against Liberty Ridge seeking to recover $200,000.00 plus interest and attorneys' fees it alleges is owed by Liberty Ridge for brokering services provided to Liberty Ridge with respect to the project known as Liberty Village. To the extent such an obligation exists, it was incurred and is owed only by LHA.

### THE PARTIES

2.  Liberty Ridge is a Virginia limited liability company with its principal place of business in Lynchburg, Virginia. Liberty University is currently the majority member of Liberty Ridge, owning 85% of the interest therein.

3. Upon information and belief, LHA is a Virginia corporation with its principal place of business in Maryland. LHA is currently the minority member of Liberty Ridge, owning 15% of the interest therein.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter in this action pursuant to 28 U.S.C. § 1332(a)(1).

5. Venue in this district is conferred by 28 U.S.C. § 1391(a)(2).

## FACTUAL BACKGROUND

6. Liberty Village Associates Limited Partnership ("LVA") was an entity designed to develop Liberty Village, a senior retirement community to be constructed on approximately 140 acres of land near Lynchburg, Virginia (the "Project").

7. LVA's general partner was Savoy Senior Housing Corporation ("Savoy").

8. LVA obtained financing for the Project from Community National Bank (the "Bank") in the form of a secured promissory note. Following a dispute between the Bank and LVA, the Bank declared LVA in default and accelerated the payment obligations under the note.

9. As a result, LVA sought bankruptcy protection by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

10. Upon information and belief, Jacob Frydman, purportedly acting on behalf of LVA and in his capacity as "President of White Acre Equities, LLC," entered a retention agreement ("Retention Agreement") with GCP whereby GCP would market and advertise the Project for sale and identify potential third-party buyers. (GCP Compl., Ex. A.)

11. Upon information and belief, American Heritage Communities, Inc. ("AHC") is a Maryland corporation with its principal place of business at 3 College Avenue, Suite 3, Frederick, Maryland 21701.

12. Upon information and belief, GCP contacted AHC, a housing developer, in 2004 and received a confidentiality agreement from AHC on or about August 16, 2004. (GCP Compl., Ex. B.)

13. Upon information and belief, on or about September 13, 2004, GCP received a letter from AHC regarding the acquisition of the assets of LVA. A revised letter of intent was delivered to GCP from AHC on or about October 14, 2004. (GCP Compl., Ex. C.)

14. Upon information and belief, pursuant to the letter of intent, AHC agreed to purchase the Project for cash and other consideration, including the assumption of LVA's obligations under the Retention Agreement, Frydman's personal guaranty, and responsibility for "[p]ayment of the sales commission due to General Capital Partners, LLC, as their fees in connection with this sale in the amount of $400,000 in cash at closing." (Id. at 1.)

15. Upon information and belief, AHC formed American Heritage Communities/Liberty Village, LLC in Delaware ("AHC/LV-Delaware") on or about March 14, 2005.

16. Upon information and belief, AHC/LV-Delaware is a wholly owned subsidiary of AHC.

17. On or about March 16, 2005, AHC/LV-Delaware entered into two agreements evidencing its acquisition of the Project: (1) a Transfer Agreement between LVA and AHC/LV-Delaware and (2) a Partnership Interest Purchase Agreement between AHC/LV-Delaware and Savoy as well as one of LVA's limited partners, Savoy Liberty Village, LLC.

18. The Transfer Agreement transferred LVA's interest in the Project to AHC/LV-Delaware, subject to approval of the Bankruptcy Court.

19. AHC/LV-Delaware agreed in Section 6.01 of the Transfer Agreement that it would "pay the fee due to [GCP] for the transaction (not to exceed $400,000)." (GCP Compl., Ex. E at 7.)

20. Upon information and belief, AHC guaranteed payment and performance of all of AHC/LV-Delaware's obligations under the Partnership Interest Purchase Agreement.

21. Upon information and belief, AHC/LV-Delaware remains in good standing in Delaware.

22. On or about June 2, 2005, American Heritage Communities/Liberty Village, LLC ("AHC/LV-Virginia" or "Liberty Ridge") filed its articles of organization with the Virginia State Corporation Commission and received a Certificate of Organization. Upon information and belief, the members of AHC/LV-Virginia at this time were affiliates of AHC.

23. Upon information and belief, on or about July 11, 2006, Liberty Heritage Associates, Inc. ("LHA") was incorporated in the Commonwealth of Virginia. The President of LHA, Bruce Boyer, and the Secretary, Herbert E. Kaiser, are both affiliated with AHC.

24. Upon information and belief, also on or about July 11, 2006, GCP issued an invoice to Kaiser for $200,000 related to the LVA transaction. Although the bill was purportedly delivered to "American Heritage Communities/Liberty Village, LLC," it was addressed to Kaiser at his AHC address, 3 College Avenue, Suite 3, Frederick, Maryland 21701. (GCP Compl., Ex. L.)

25. On or about July 14, 2006, Liberty University entered into an Operating Agreement of American Heritage Communities/Liberty Village, LLC ("Operating Agreement")

with LHA and assumed an 85% stake in AHC/LV-Virginia from LHA, which maintained a 15% position.

26. At the closing on that agreement (the "Closing"), Liberty University contributed $2,250,000 for its stake in Liberty Ridge.

27. Upon information and belief, prior to July 11, 2006, when LHA was formed, AHC or some other entity agreed to pay GCP $200,000 at Closing and an additional $200,000 post Closing.

28. At no point did LHA, AHC, or any of their employees or affiliates inform Liberty University of any agreement to pay GCP the additional $200,000 fee.

29. On or about July 13, 2006, John Mercer, counsel for Liberty University, specifically inquired to Lucille Karp, counsel for LHA and AHC, about the broker's commission to GCP. In his email, Mercer stated, "However, I do have a question about Section 7(b)(i) which says that AHC is responsible for 'bringing the Property out of Bankruptcy, including, without limitation, settlements with any unsecured creditors and the broker's commission to General Capital Partners, LLC.' Are these payments covered by the bankruptcy plan (and plan fund) or are these payments to be made out side of the bankruptcy fund? Please advise." (GCP Compl., Ex. M at 2.)

30. In response, counsel for the Bank responded that "these payments are part of the confirmed bankruptcy plan." (Id.)

31. Karp, in an email to counsel for the Bank with copies to Kaiser and Robert V. Gibbs of AHC, **but not to Mercer**, stated, "I have my client's [sic] here and we do not believe the below [statement from Bank's counsel in paragraph 30] is correct with regard to the broker. They are getting paid part of their fee now and the rest at a later date. We were going to have the

title co. wire directly to them." (Id. at 1.) This information was not relayed to Liberty University.

32. Upon information and belief, on or about July 17, 2006, Gibbs, purportedly in his capacity as "Manager" of "American Heritage Communities/Liberty Village, LLC," signed a Borrower's Statement that evidenced a $200,000.00 brokerage fee payment to GCP. The statement did not disclose any agreement to pay an additional $200,000.00 to GCP.

COUNT I – Breach of Duty

33. Liberty Ridge incorporates by reference paragraphs 1-32 of the Complaint as if fully set forth herein.

34. LHA and Gibbs did not have the right to bind Liberty Ridge to any payments to GCP following the effective date of the Operating Agreement without the consent of the majority of the managers or members.

35. LHA and Gibbs did not have the consent of the majority of the managers or members to obligate Liberty Ridge to GCP at any time after July 14, 2006.

36. LHA, individually and through its agents, breached its duties, including those of trust and loyalty, to Liberty Ridge and its managing member, Liberty University, if, by virtue of LHA's actions, Liberty Ridge becomes obligated to GCP in any amount.

37. As an agent of Liberty Ridge, LHA and its agents are liable for any loss caused by their breach of duty to Liberty Ridge.

COUNT II – Indemnity

38. Liberty Ridge incorporates by reference paragraphs 1-37 of the Complaint as if fully set forth herein.

39. By attempting to obligate Liberty Ridge to an additional $200,000.00 payment to GCP without the authorization or approval of the majority of the managers, as determined on a per capita basis, LHA is required to indemnify Liberty Ridge for any funds paid related to or resulting from GCP's complaint against Liberty Ridge.

## COUNT III – Breach of Contract

40. Liberty Ridge incorporates by reference paragraphs 1-39 of the Complaint as if fully set forth herein.

41. The Operating Agreement constitutes a binding contract between and among Liberty Ridge and its members.

42. LHA and Gibbs, as a member and manager, respectively, agreed to abide by the Operating Agreement.

43. By obligating or attempting to obligate Liberty Ridge to pay GCP an additional $200,000 without the consent or approval of the majority of the managers or members, LHA and/or Gibbs was in violation of the Operating Agreement, including but not limited to § 4.02(c).

44. Therefore, LHA and/or Gibbs breached the Operating Agreement.

45. To the extent that LHA's breach of contract has caused any loss to Liberty Ridge, LHA is liable to Liberty Ridge in the amount of such loss.

## COUNT – IV Willful Misconduct

46. Liberty Ridge incorporates by reference paragraphs 1-45 of the Complaint as if fully set forth herein.

47. The rights, duties, and powers of the minority manager and member are set forth in the Operating Agreement. Gibbs and LHA knew that they did not have the authority to act on

behalf of Liberty Ridge with respect to the disposal of its assets without the express consent of the majority of the managers.

48. By obligating or attempting to obligate Liberty Ridge to pay GCP an additional $200,000 without the consent or approval of the majority of the managers or members, LHA and/or Gibbs engaged in willful misconduct in the disposal of the assets of Liberty Ridge.

49. To the extent that LHA's willful misconduct has caused any loss to Liberty Ridge, LHA is liable to Liberty Ridge in the amount of such loss.

Wherefore, Third-Party Plaintiff Liberty Ridge, LLC demands that Third-Party defendant Liberty Heritage Associates, Inc. indemnify and hold Liberty Ridge harmless for any amounts deemed owing to GCP as a result of this litigation, as well as reasonable attorneys fees expended in this action and such other relief as this Court deems proper.

Respectfully submitted,
LIBERTY RIDGE, LLC

By: _____
  /Counsel

Matthew G. Parisi (MP 2188)
BLEAKLEY PLATT & SCHMIDT LLP
1 N. Lexington Ave.
White Plains, NY 10601
Telephone:   914.287.6184
Facsimile:   914.683.6956
mparisi@bpslaw.com
*Counsel for Defendants*

and

W. Scott Street, III (VSB No. 5949) (pending pro hac vice application)
A. Peter Brodell (VSB No. 23772) (pending pro hac vice application)
Samuel T. Towell (VSB No. 71512) (pending pro hac vice application)
WILLIAMS MULLEN
A Professional Corporation
1021 E. Cary St.
P. O. Box 1320
Richmond, Virginia 23218-1320
Telephone:   804.643.1991
Facsimile:   804.783.6507
*Of Counsel*

1517138v4